UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JW GAMING DEVELOPMENT, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ANGELA JAMES, et al.,<br><br>    Defendants. | Case No. 3:18-cv-02669-WHO<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 6, 7, 15, 23 |

**INTRODUCTION**

From 2008 to 2011, Plaintiff JW Gaming, LLC ("JW Gaming") invested $5,380,000 in the Pinoleville Pomo Nation's casino project, believing that it was matching an investment in the same amount from the Canales Group, LLC ("the Canales Group"). JW Gaming now alleges that leaders and members of both Pinoleville Pomo Nation ("the Tribe") and the Canales Group were part of a years-long scheme to fraudulently induce its investment and to conceal that fraud. It brings suit alleging breach of contract, fraud, and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68.

Before me is a motion to dismiss brought by the Tribal Defendants (Angela James, Leona Williams, Lenora Steele, Kathy Stallworth, Michelle Campbell, Julia Maldonado, Donald Williams, Veronica Timberlake, Cassandra Steele, Jason Edward Running Bear Steele, and Andrew Stevenson) and joined the Canales Defendants (Michael Canales, Melissa Canales, Kelly Canales, Lori Canales, and the Canales Group) and John Tang. In addition, the Tribal Entity Defendants (the Pinoleville Gaming Commission, the Pinoleville Business Board, and Pinoleville Economic Development, LLC) move to dismiss the contract claim. Because the Tribal Defendants are not entitled to sovereign immunity and the other claims are properly pleaded, I

deny the motions.

**BACKGROUND**

JW Gaming brings this suit against the Tribe,[1] four tribal entities, eleven tribal leaders and members, the Canales Group, and five Canales Group leaders and members. *See* Compl. [Dkt. No. 1-1] ¶¶ 8–93. It asserts a breach of contract claim against the Tribe and Tribal Entity Defendants and alleges that the remaining defendants engaged in a scheme to fraudulently solicit a $5,380,000.00 investment in the Pinoleville Casino Project ("the Casino Project"). *Id.* ¶ 104. In emails from July 2008 to January 2009, Michael Canales and John Tang (also of the Canales Group) made repeated references to the $5 million investment that the Canales Group had made in the Casino Project, and James Winner (who would later form JW Gaming), agreed to "match" that investment. *Id.* ¶¶ 107–18. In an attachment to a January 30, 2009 email, John Tang provided JW Gaming with a copy of a promissory note ("the 2008 Canales Note") as proof of the Group's investment. *Id.* ¶¶ 118–20. Leona Williams, the chairperson of the tribal council and one of the Tribal Defendants, had signed the note, and Michael and Melissa Canales were included on the email. *Id.* ¶¶ 35, 121.

From August 2008 to April 2011, JW Gaming made a total of $5,380,000.00 in payments to the Tribe, the Canales Group, and John Tang. *Id.* ¶¶ 115–17, 163–64. Tribal Defendants Angela James and Leona Williams were the authorized signers on two banks where JW Gaming made $5 million in deposits. *Id.* ¶¶ 167–74.

JW Gaming later learned that the Canales Group had never made any investments in the Casino Project.[2] *Id.* ¶ 123. It alleges that the defendants used its payments for personal purposes, including, for example, a $95,000 transfer to a romantic partner, a $400,000 transfer to an organization over which two defendants have ownership interests, and a $1 million transfer to other defendants. *See id.* ¶¶ 16–23, 170, 174, 526, 555, Ex. 17.

In early 2011, JW Gaming requested that the Tribe provide an accounting of its use of the

---

[1] The Tribe is federally recognized and headquartered in California. Compl. ¶ 8.

[2] JW Gaming learned this information from Forster-Gill, Inc., which previously sued some of the defendants in this case. *See* Oppo. to Mot. to Dismiss 13.

2

company's investment. *Id.* ¶ 176. An accounting firm prepared the report ("the Accounting Report"), which was addressed to Leona Williams, and emailed it to her and Michael Canales in November 2011. *Id.* ¶¶ 179–82. Melissa Canales sent it to JW Gaming two days later. *Id.* ¶¶ 176–79. Subsequently, JW Gaming exchanged several emails about the Accounting Report with Michael Canales and Melissa Canales, some of which made reference to or were copied to Leona Williams. *See id.* ¶¶ 189–205.

From December 2011 to April 2012, JW Gaming, tribal leadership, and the Canales Group engaged in negotiations, mostly via email, regarding the future of the Casino Project. *Id.* ¶¶ 206–36. In a promissory note dated July 10, 2012 ("the Note"), "The Tribe and/or the Gaming Authority" promised to repay JW Gaming its $5,380,000.00 investment plus interest. *Id.* ¶ 239, Ex. 26 [Dkt. No. 1-4] 1. Tribal Defendants Leona Williams and Angela James signed the note, which included a limited waiver of sovereign immunity. *Id.* ¶¶ 240, 255, Ex. 26 3. The Tribal Defendants and the Canales Group represented that they were entering into a separate note ("the 2012 Canales note") regarding the Canales investment. *Id.* ¶¶ 368–74.

After learning about the alleged fraud, JW Gaming brought suit in Mendocino County Superior Court on March 1, 2018. Defendants removed it to federal court on May 7, 2018. Notice of Removal [Dkt. No. 1]. Before me is a motion to dismiss[3] brought by the Tribal Defendants and the Tribal Entity Defendants and joined by the Canales Defendants and John Tang.

**LEGAL STANDARD**

**I. RULE 12(b)(1) MOTION TO DISMISS**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure is a challenge to the court's subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited

---

[3] The Tribal Defendants also moved to strike the Declaration of Tim Gill, which JW Gaming provided in opposition, on the grounds that it is responsive only to their 12(b)(6) motions, under which it is improper to consider evidence beyond the pleadings. Mot. to Strike [Dkt. No. 23]. Motions to strike are generally viewed with disfavor. If the evidence provided is moderately relevant, it can be included. I find this declaration relevant to challenge the Tribal Defendants' 12(b)(1) argument that this matter is merely an intra-tribal dispute, specifically the allegation that JW Gaming is a "proxy." *See* Mot. to Dismiss 16. The motion to strike is DENIED.

jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the authority to grant the relief requested. *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inference in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.

## II. RULE 12(b)(6) MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to

4

amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

# DISCUSSION

## I. RULE 12(b)(1) MOTIONS

The Tribal Defendants move to dismiss the fraud and RICO claims on sovereign immunity grounds and the fraud and RICO claims on intra-tribal dispute grounds. The Tribal Defendants, the Canales Defendants, and John Tang move to dismiss the RICO claims on standing grounds.

### A. Tribal Defendants Not Entitled to Sovereign Immunity

As sovereigns, Indian Tribes are generally immune from suit. *Lewis v. Clarke*, 137 S. Ct. 1285, 1288 (2017). Tribal officers sued in an official capacity share that immunity, but it does not always extend to tribal employees sued in their individual capacities. *See id.* Even when a tribal employee is sued for actions taken within the scope of her employment, a personal suit can proceed unless the court determines that "the sovereign is the real party in interest." *Id.* at 1290–91. Sovereign immunity bars individual-capacity suits when "the remedy sought is truly against the sovereign." *Id.* at 1290.

The Tribal Defendants argue that JW Gaming's suit primarily focuses on contractual recovery for alleged breach of the Note. Mot. to Dismiss 10. Because the Tribe, not its representatives, was party to the contract, it is the real party in interest. *See id.* JW Gaming counters that it is suing the tribal employees in their individual capacities for their own fraudulent conduct and that it asserts no claims of vicarious liability. Oppo. to Mot. to Dismiss 10.

The Supreme Court allowed a personal-capacity suit against a tribal employee who was acting within the scope of his employment because a judgment would not "operate against the [t]ribe" but was "simply a suit against [the employee] to recover for his personal actions." *Lewis*, 137 S. Ct. at 1291. The Court rejected the tribe's argument that the indemnification clause in the employment contract should permit the application of sovereign immunity. *Id.* at 1192. Instead, "[t]he critical inquiry [was] who may be legally bound by the court's adverse judgment, not who [would] ultimately pick up the tab." *Id.* at 1192–93.

Applying *Lewis* to the facts alleged here, I conclude that this suit is against the Tribal

5

Defendants in their individual capacities and that the Tribe is not the real party in interest. JW Gaming alleges that the individuals themselves engaged in fraud and that it suffered damages as a result. Oppo. to Mot. to Dismiss 10. In the event of an adverse judgment, the individual defendants—not the Tribe—will be bound. *See Lewis*, 137 S. Ct. at 1192–93.

**B. JW Gaming Has Standing**

The Tribal Defendants, the Canales Defendants, and John Tang argue that JW Gaming lacks standing to pursue its RICO claims because it cannot show that their activities proximately caused their injuries. Mot. to Dismiss 12. The alleged injury resulted from breach of the Note rather than the alleged wire fraud or money laundering. Mot. to Dismiss 13–14.

To establish standing to sue under RICO, a party must show proximate cause: "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992). This requirement helps to "limit a person's responsibility for the consequences of that person's own acts." *Id.*

In *Anza*, the Supreme Court held that a plaintiff failed to show proximate cause when the direct victim of the alleged racketeering was the state, not the plaintiff. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006). The plaintiff alleged that the defendants defrauded the state tax authority and then used those saved funds to decrease their prices, thus causing the plaintiff's sales losses. *Id.* The Court noted that the asserted harms were caused by "a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Id.* The court identified a "second discontinuity" because both the lower prices and the lost sales could have had other, independent causes. *Id.* at 459.

In *Platten*, the First Circuit held that plaintiffs failed to show proximate cause because they did not allege reliance on the defendant's misrepresentations. *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 132 (1st Cir. 2006). In that case, plaintiffs had entered into an employment agreement to become part of a consulting partnership. *Id.* at 123–24. Upon leaving the partnership and joining other consulting groups, they were denied their full partnership shares. *Id.* at 124–25. They alleged that the defendant had misrepresented its interpretation of the non-competition clause as part of a scheme to withhold distributions. *Id.* at 125. But because plaintiffs

6

had not alleged that they relied on defendants' statements—instead they had signed the agreements as a condition of employment—defendants' fraud could not have caused their injuries. *Id.* at 132.

Here, JW Gaming properly alleged proximate cause between its injury and the racketeering activity. Defendants' attenuation arguments are unpersuasive. They assert that the Tribe's failure to repay the Note, not prior fraudulent activities, caused the alleged injury. But unlike *Patten*, where plaintiffs would have signed the employment agreement anyway, here there is evidence that the defendants' misrepresentations directly contributed to JW Gaming's decision to invest in the Casino Project. Throughout early negotiations, there were repeated references to the Canales Group investment, which creates the necessary direct relationship. Only years later did the Tribe and JW Gaming enter into the Note, after fraudulent misrepresentations, investment, and misappropriation of funds had already occurred.

I find that JW Gaming properly alleges proximate cause and thus has standing to sue under RICO.

**C. The Intra-Tribal Dispute Doctrine Does Not Apply**

The Tribal Defendants argue that the court lacks subject matter over this action because it was brought as a proxy for an internal tribal dispute over the leadership's decisions.

Indian tribes have the power to write and enforce their own laws governing internal matters. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55 (1978). Out of respect for tribal sovereignty, federal courts lack subject matter jurisdiction over disputes that are properly resolved in the internal forum, including, for example, membership and adoption. *See id.* at 71; *Fisher v. Dist. Court of Sixteenth Judicial Dist. of Montana, in & for Rosebud Cty.*, 424 U.S. 382, 383, 387–88 (1976). This doctrine prevents the federal government from taking actions that would "unsettle a tribal government's ability to maintain authority." *Santa Clara*, 436 U.S. at 60. It applies to cases that "present a genuine and non-frivolous question of tribal law," and not when there is a "mere suggestion" of such a dispute. *Miccosukee Tribe of Indians of Fla. v. Cypress*, 814 F.3d 1202, 1209 (11th Cir. 2015).

The Tribal Defendants argue that this dispute lies not with JW Gaming but with

7

disgruntled members of the Tribe. Mot. to Dismiss 16. They allege that JW Gaming "serves as a proxy for this fight," which is really a "disagreement with the tribal leadership's exercise of their power," as evidenced by the complaint's request for appointment of a receiver. *Id.*

I find that there is subject matter jurisdiction over this action because a judgment by this court would not interfere with the Tribe's ability to self-govern. It is more than merely a dispute between members about internal affairs because it involves plausible allegations of fraud perpetrated against a non-tribal entity. Neither the fact that Tribe members are involved nor the unsupported allegations about JW Gaming's motivation for filing suit brings this action under the intra-tribal dispute doctrine. The Tribal Defendants' concerns over the appointment of a receiver are properly addressed much later in the litigation.

## II. RULE 12(b)(6) MOTIONS

The Tribal Defendants, the Canales Defendants, and John Tang move to dismiss the fraud claims on the grounds that they lack the required particularity and the RICO claims on the grounds that JW Gaming did not sufficiently plead the required elements.

### A. Fraud Pleaded with Particularity

The defendants argue that JW Gaming's fraud pleadings lack particularity because they do not allege when, how much, and at whose direction the loans were converted to personal use. Mot. to Dismiss 17. JW Gaming counters by pointing to two promissory notes, falsified accounting with amounts, emails with falsified documents attached, and testimony from another suit that affirms their falsity. Oppo. to Mot. to Dismiss 15.

Rule 9(b) of the Federal Rules of Civil Procedure requires plaintiffs to plead fraud with particularity. FED. R. CIV. P. 9(b). The complaint must identify "the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Bosse v. Crowell Collier & MacMillan*, 565 F.2d 393, 397 (9th Cir. 1973). The information should include "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). While allegations of specific falsities by each defendant are not necessary, the plaintiff must identify each one's role in the scheme. *Swartz v. KPMG LLP*, 476

8

F.3d 756, 764–65 (9th Cir. 2007).

I find that JW Gaming pleaded fraud with the particularity Rule 9(b) requires, including naming the roles particular individuals played. It states the identities of the defendants who were involved in early negotiations and who created and presented it with an allegedly fraudulent promissory note in January 2009. Compl. ¶¶ 305, 307, 311, 490, 494. It states the identities of the defendants who created and presented them with the allegedly falsified Accounting Report in November 2011, including names of individuals who were part of email communications. *Id.* ¶¶ 328–29, 334. It provides a detailed breakdown of the amounts stated in the Accounting Report and compares them to amounts provided during Forster-Gill's litigation with defendants. *Id.* ¶¶ 341–48. Throughout the complaint, JW Gaming names specific roles that each defendant played in the alleged scheme.

Contrary to defendants' argument, JW Gaming also specifically identifies their conversion of loan money to personal use. It alleges that two defendants were the only names on bank accounts where loan checks were deposited, that some checks went directly to individual defendants, that one defendant's partner received $95,000 of the loan proceeds, that $400,000 went to an organization over which two have ownership interests, and that $1 million was paid to other individuals. *See id.*; Compl. ¶¶ 16–23, 116–17, 170, 174, 555, Ex. 17.

**B. Elements of RICO Sufficiently Pleaded**

The defendants argue that JW Gaming's complaint does not state a plausible claim for relief under the RICO statute. Mot. to Dismiss 19. The elements of a RICO claim are: (i) the conduct of (ii) an enterprise that affects interstate commerce (iii) through a pattern (iv) of racketeering activity or collection of unlawful debt. 18 U.S.C. § 1962(c); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

**i. Predicate Acts**

The defendants argue that JW Gaming has not sufficiently alleged predicate acts supporting its RICO claim. Mot. to Dismiss 21. JW Gaming concedes that its complaint does not properly plead bank fraud because none of the allegedly false statements were communicated to financial institutions. *See* Oppo. to Mot. to Dismiss 18 n. 14; *Loughrin v. United States*, 134 S. Ct.

9

2384, 2394 (2014). I find that JW Gaming properly pleads wire fraud and money laundering.

### a. Wire Fraud

Wire fraud includes "any scheme to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises." *Carpenter v. United States*, 484 U.S. 19, 27 (1987). Claims under 18 U.S.C. section 1343 require three elements: (i) the formation of a scheme to defraud; (ii) the use of the mails or wires in furtherance of that scheme; and (iii) the specific intent to defraud. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). A plaintiff satisfies the specific intent requirement by pleading the alleged scheme in detail. *Best Deals on TV, Inc. v. Naveed*, No. C 07-1610 SBA, 2007 WL 2825652, at *10 (N.D. Cal. Sept. 26, 2007).

JW Gaming states a claim for wire fraud. It asserts with great detail that defendants were part of a coordinated scheme to induce it to invest $5,380,000 in the Casino Project. The complaint provides dates, excerpts from email correspondence, and amounts of transactions. JW Gaming alleges that the misrepresentations began at the beginning and continued until the end of its dealings with the defendants. The detailed scheme it lays out is enough to clear the specific intent hurdle at the pleading stage.

### b. Money Laundering

Claims of money laundering under 18 U.S.C. section 1957 require four elements: (i) the defendant knowingly engaged in a monetary transaction; (ii) he knew the transaction involved criminal property; (iii) the property's value exceeded $10,000; and (iv) the property was derived from a specified unlawful activity. *United States v. Rogers*, 321 F.3d 1226, 1229 (9th Cir. 2003).

The defendants challenge this predicate act only on the basis that JW Gaming did not plead a "specific unlawful activity." As a court in this district held, misappropriated funds from a business can be considered "proceeds of some form of unlawful activity" even if the business itself was not engaged in unlawful activity. *Best Deals*, 2007 WL 2825652, at *8. Here, JW Gaming alleges that defendants misappropriated funds meant for the Casino Project and used them for individual purposes. It states a claim for money laundering.

**ii. Pattern**

A pattern is more than "two isolated acts of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14 (1985). Instead, the events must have overlapping goals, outcomes, people, or methods and show a "threat of continuing activity." *Id.* at 496 n. 14, 528. A pattern does not require multiple schemes, and so, "if a defendant commits two or more predicate acts that are not isolated events, are separate in time, and are in furtherance of a single criminal scheme, then RICO's pattern requirement is satisfied." *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 193 (9th Cir. 1987).

JW Gaming's complaint alleges facts that show a pattern. It alleges two or more predicate acts as detailed above. The events are not isolated but share common actors (the defendants), a common victim (JW Gaming), and a common purpose (to defraud JW Gaming and to conceal that fraud). The events are separate in time, occurring between 2008 and 2012. As alleged, fraud imbued the earliest interactions between JW Gaming and the defendants and continued for years. Contrary to the defendants' arguments, JW Gaming need not show more than one scheme to show a pattern. *See* Mot. to Dismiss 20–21; *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 193 (9th Cir. 1987).

**C. The Tribal Entity Defendants Are Proper Parties to the Contract Claim**

The Tribal Entities argue that the contract claim against them should be dismissed because only the Tribe is a party to the 2012 Note. JW Gaming counters by noting that the Gaming Authority is expressly included as a party to the contract and is bound by its terms. In addition, the Note defines the Gaming Authority with reference to its "successors and assigns," which JW Gaming argues includes the Gaming Commission, the Business Board, and the Pinoleville Economic Development Commission. Defendants did not counter this assertion in their reply. JW Gaming states a claim as to the Tribal Entity Defendants.

**III. INTERLOCUTORY APPEAL**

JW Gaming asks me to certify as frivolous the Tribal Defendants' likely appeal of my denial of the tribal sovereign immunity defense. Supp. Brief [Dkt. No. 53] 1. The Tribal Defendants oppose. Response [Dkt. No. 54] 3, 8.

When a district court denies "a substantial claim of absolute immunity," that order is appealable before final judgment. *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985). Such an appeal automatically divests the court of jurisdiction pending its resolution. *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992). If a district court certifies that an appeal would be frivolous or has been waived, it can maintain jurisdiction and proceed to trial. *Id.* "'An appeal is frivolous if the results are obvious, or the arguments of error are wholly without merit.'" *Todd v. LaMarque*, No. C 03-3995-SBA, 2008 WL 205591, at *2 (N.D. Cal. Jan. 24, 2008) (quoting *In re George*, 322 F.3d 586, 591 (9th Cir. 2003)).

JW Gaming acknowledges that no district court has certified as frivolous an appeal based on tribal sovereign immunity. Supp. Brief 4 n. 4. It nonetheless asks that I apply *Chuman* here because rather than acting for the benefit of the Tribe, the individual defendants committed fraud that in fact hurt the Tribe. *Id.* at 9. As such, there is no way to view the Tribe as the real party in interest. *Id.* at 6.

I cannot agree. Although JW Gaming sues the defendants in their individual capacities, they were acting in their roles as members and leaders of the Tribe during the course of their allegedly fraudulent dealings with JW Gaming. This case is not so clear-cut that an appeal would be frivolous. I decline JW Gaming's request to certify it as such.[4]

## IV. DISCOVERY

JW Gaming asked that I address discovery in this order. As noted above, this court will be divested of jurisdiction in the event that the Tribal Defendants file an appeal of this denial of the sovereign immunity defense. I will address a schedule for discovery at the Case Management Conference on November 13, 2018.

## CONCLUSION

For the foregoing reasons, the motions to dismiss are DENIED and defendants shall

---

[4] Because I decline to certify the appeal as frivolous, there is no need to address the Tribal Defendants' argument that the plaintiff's request is premature and must await actual filing of the appeal. Response 3–4; *see Kendrick v. Cty. of San Diego*, No. 15CV2615, 2018 WL 3361354, at *1 (S.D. Cal. July 10, 2018) (addressing a request for *Chuman* certification made after the appeal had been filed).

answer within twenty days of the date of this Order.  The motion to strike is also DENIED.

**IT IS SO ORDERED.**

Dated: October 5, 2018


William H. Orrick
United States District Judge