UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JW GAMING DEVELOPMENT, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ANGELA JAMES, et al.,<br><br>　　　　　Defendants. | Case No. 3:18-cv-02669-WHO<br><br>**ORDER ON MOTION FOR SUMMARY JUDGMENT, MOTION FOR JUDGMENT ON THE PLEADINGS, MOTION FOR JOINDER, AND MOTION TO STRIKE AND DISMISS**<br><br>Re: Dkt. Nos. 129, 136, 142, 144, 151 |

Before me are several disputes, chief among them two warring interpretations of the 2012 promissory note that memorialized plaintiff JW Gaming, LLC's $5,380,000 investment in the casino project of defendant Pinoleville Pomo Nation. No casino was ever constructed. Because the Tribe breached the note and unequivocally waived sovereign immunity, JW Gaming is entitled to judgment on the pleadings for breach of contract. It also brings claims for fraud and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against various individuals associated with the Tribe, who also move for summary judgment. For the reasons set forth below, I will enter judgment in favor of JW Gaming on the breach of contract claim, deny the defendants' motion for summary judgment on the fraud and RICO claims, deny a motion for joinder, and strike an untimely answer.

## BACKGROUND

### I.  FACTUAL HISTORY

The motions pending before me now involve only the following defendants, which I collectively refer to as "the Tribal Defendants": the Pinoleville Pomo Nation, the Pinoleville Gaming Commission, the Pinoleville Business Board, and Pinoleville Economic Development, LLC ("the Tribe"), and Angela James, Leona Williams, Lenora Steele, Kathy Stallworth, Michelle

Campbell, Julia Maldonado, Donald Williams, Veronica Timberlake, Cassandra Steele, Jason Edward Running Bear Steele, and Andrew Stevenson ("the Individual Tribal Defendants").[1] Neither side asserts that there are disputes of fact for purposes of the pending motions, which do not go to the merits of JW Gaming's fraud and RICO claims. My October 5, 2018 Order details the allegations in the complaint, which the Tribal Defendants admit "for purposes of [their] summary judgment motion only." Motion for Summary Judgment ("MSJ") [Dkt. No. 129] 3 n.2. Here I repeat only the facts necessary to understand the present motions.

In 2008, defendants Michael Canales and John Tang approached the late James Winner, who would later form JW Gaming, about an investment in the Pinoleville Casino Project. Compl. ¶ 104. During negotiations, Canales and Tang asked that Winner to match the $5,352,000.00 investment that the Canales Group had already made in the project, and Winner indicated his assent. *Id.* ¶¶ 106, 108. In August 2008, Winner made a payment to Tang in the amount of $280,000.00 as a "good faith deposit." *Id.* ¶¶ 115-17.

In March 2009, Winner, Michael Canales, and Tang formed a joint venture agreement for the purpose of facilitating development of the project. *Id.* ¶ 133. According to the agreement, JW Gaming's investment was pre-development funding, and permanent financing for the project would need to be secured. *Id.* ¶¶ 130, 134.

JW Gaming asserts that the Individual Tribal Defendants, the Canales Defendants, and Tang fraudulently induced it to invest a total of $5,380,000 in the casino project by falsifying documentation of a matching investment from the Canales Group, despite the fact that no investment ever existed. *Id.* ¶¶ 106, 123. According to JW Gaming, the Individual Tribal Defendants used its payments for personal purposes rather than putting the money toward the casino project. *See id.* at ¶¶ 16–23, 170, 174, 526, 555.

In early 2012, the Tribe contacted the joint venture to request continued funding because permanent financing had not yet been secured. *Id.* ¶¶ 210, 212. The parties did not reach an agreement on further investment; instead, the Canales Group and JW Gaming agreed to dissolve

---

[1] The remaining defendants in this case include the Canales Group, LLC, Michael Canales, Melissa Canales, Kelly Canales, Lori Canales, and John Tang.

2

their joint venture agreement. *Id.* ¶ 235. On July 10, 2012, the Tribe and JW Gaming signed a Promissory Note, wherein they agreed to certain terms of the investment and the Tribe provided a "Limited Waiver of Sovereign Immunity." *Id.* ¶ 239; Campbell Decl. Ex. H ("Promissory Note") [Dkt. No. 136-2]. The Tribe has not constructed a casino or other gambling operation.

## II. PROCEDURAL HISTORY

JW Gaming initiated this case in state court on March 1, 2018. On March 7, the defendants removed it to federal court. Dkt. Nos. 1, 1-1. On October 5, 2018 I denied the defendants' motions to dismiss and motion to strike. Dkt. No. 55. The Individual Tribal Defendants filed an interlocutory appeal of my Order denying their assertion of tribal immunity for the fraud and RICO claims, and I denied the Tribal Defendants' motion to stay the breach of contract claim, which was not part of that appeal. *See* Dkt. Nos. 57, 85.

On October 25, 2018, the Tribal Defendants filed a partial Answer which responded only to the first cause of action for breach of contract. Partial Answer ("2018 Answer") [Dkt. No. 61]. The 2018 Answer generally asserts that the Promissory Note "speaks for itself," and thus the Tribal Defendants "deny any characterization or summary of that writing to the extent it does not accurately describe or recite the contents of the writing." *Id.* ¶¶ 279-303. It lists fourteen affirmative defenses, including waiver. *Id.* at 13-14.

Discovery proceeded on the pending breach of contract claim, and the parties presented several disputes to Magistrate Judge Robert M. Illman. *See* Dkt. Nos. 88,[2] 95, 96, 120, 139. The Tribe challenged various JW Gaming discovery requests, arguing that they improperly related to the causes of action that were stayed pending appeal rather than the breach of contract claim.

On October 2, 2019, the Ninth Circuit affirmed my Order denying the Individual Tribal Defendants' assertion of sovereign immunity, finding that I did not err in concluding that judgment in favor of JW Gaming would bind them as individuals rather than the Tribe itself. Dkt. No. 123. The mandate came down on October 28, 2019. The Tribal Defendants have given notice

---

[2] I addressed the dispute at Dkt. No. 88 prior to referring discovery to Judge Illman. *See* Dkt. Nos. 90, 98. The Tribal Defendants later filed a petition for a writ of mandamus in the Ninth Circuit, which was denied. *See* Dkt. Nos. 107, 117.

3

that they intend to seek review by the United States Supreme Court; their petition for a writ of certiorari is due January 30, 2020. *See* Dkt. No. 165.

On October 16, 2019, before the Ninth Circuit's mandate came down, the Tribal Defendants filed a motion for summary judgment. *See generally* MSJ. On October 30, 2019, JW Gaming filed a motion for judgment on the pleadings. Motion for Judgment on the Pleadings[3] ("MJP") [Dkt. No. 136]. On November 12, 2019 the Tribal Defendants moved for joinder of three individuals who allegedly served on the Tribal Council during the time period in question, but whom JW Gaming did not name. Motion for Joinder ("Mot. Joinder") [Dkt. No. 142].

Also on November 12, the day before opposing JW Gaming's motion for judgment on the pleadings, the Tribal Defendants filed an Amended Answer to JW Gaming's Complaint. *See* Amended Answer ("2019 Answer") [Dkt. No. 141]; Opposition to Motion for Judgment on the Pleadings ("Oppo. MJP") [Dkt. No. 145]. On November 26, 2019, JW Gaming filed a motion to dismiss and strike the 2019 Answer.[4] Motion to Strike, Motion to Dismiss ("MTS/MTD") [Dkt. No. 151].

Although the briefing for some of these motions had not yet concluded, I heard argument on December 4, 2019. Dkt. No. 158. I indicated my tentative view that I would deny the Tribal Defendants' motion for summary judgment and grant JW Gaming's motion for partial judgment on the pleadings of the first cause of action. Briefing on all of the pending motions concluded on December 23, 2019. *See* Dkt. No. 160.

On January 7, 2020, the Tribal Defendants moved for leave to file a sur-reply to JW Gaming's motion for judgment on the pleadings. *See* Motion for Leave to File Sur-Reply [Dkt. No. 170]; Proposed Sur-Reply [Dkt. No. 170-2]. Despite my dismay at the timing of the motion, because the arguments in it should have been made earlier, I granted leave because I found that the arguments merited a response. *See* Dkt. No. 170. JW Gaming responded on January 15, 2020. Response to Sur-Reply [Dkt. No. 177].

---

[3] That filing also includes JW Gaming's opposition to the Tribal Defendants' motion for summary judgment.

[4] That filing also includes JW Gaming's opposition to the Tribal Defendants' Motion for Joinder.

4

**LEGAL STANDARD**

**I. MOTION FOR SUMMARY JUDGMENT**

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding the motion, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**II. MOTION TO DISMISS**

In moving to dismiss counterclaims, "[t]he standards that apply to the complaint apply to the counterclaims as well." *Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*, No. 14-cv-0437-CW, 2016 WL 304764, at *2 (N.D. Cal. Jan. 26, 2016). Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss if a claim fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer

1 possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a claim must be supported by facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding a motion to dismiss for failure to state a claim, the court accepts all of the factual allegations as true and draws all reasonable inferences in favor of the non-moving party. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). But the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

Before me are the following: (i) the Tribal Defendants' motion for summary judgment on all claims, (ii) JW Gaming's motion for judgment on the pleadings of the breach of contract claim, (iii) the Tribal Defendants' motion to join three individuals as defendants, (iv) JW Gaming's motion to strike the 2019 Answer and dismiss the counterclaims therein. I will resolve the motions as set forth below.

### I. MOTIONS FOR SUMMARY JUDGMENT AND FOR JUDGMENT ON THE PLEADINGS

The Tribe and the Individual Tribal Defendants move for summary judgment. The Tribe asserts that JW Gaming's breach of contract claim fails because the parties' Promissory Note shows it has not breached it, while JW Gaming asserts that the opposite is true. The Individual Tribal Defendants assert that JW Gaming's fraud and RICO claims fail because it alleges no damages that stand separate and apart from damages for breach of the Note.

#### A. Cross-Motions on the Breach of Contract Claim

The Tribe argues that the Note expressly limits JW Gaming's recovery to revenues from a gaming operation, and because no such revenues exist, it has not breached by failing to pay. JW Gaming counters that the Note's maturity date expressly contemplates the possibility that a gaming operation would never come into being and indicates when the Note would become due and payable. Viewing the contract as a whole, I conclude that the parties intended that JW Gaming be able to recover on the Note in the event that no casino was ever built.

"Interpretation of a contract is a matter of law." *Beck Park Apartments v. U.S. Dep't of Hous. & Urban Dev.*, 695 F.2d 366, 369 (9th Cir. 1982). The correct interpretation is the one that gives effect to the "mutual intention" of the parties. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18, 900 P.2d 619, 627 (1995), *as modified on denial of reh'g* (Oct. 26, 1995) (citing Cal Civ. Code § 1636). The starting point for this analysis is always the language of contract itself. *Id.* "A written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations." *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California*, 813 F.3d 1155, 1170 (9th Cir. 2015). "'An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable.'" *Id.* at 1171 (quoting 11 Williston on Contracts § 32:5 (4th ed. 2015)). "Interpretation of a contract must be fair and reasonable, not leading to absurd conclusions." *ASP Properties Grp., L.P. v. Fard, Inc.*, 133 Cal. App. 4th 1257, 1269 (2005) (internal quotation marks omitted).

### B. The Provisions at Issue

The parties' dispute centers on three provisions of their Note. First, in the section entitled "Maturity Date and Payment of the Promissory Note," the parties agreed on a schedule and rate at which the Tribe would repay JW Gaming the principal and interest on the Note from revenues of the casino operation. Promissory Note 2. The section later provides an alternate maturity date, which would be triggered if no casino operation came into existence. That language reads, "If the Tribe fails to open a casino or other gaming facility within three years (3) of the date listed above, at the outside of this Promissory Note, then this Promissory Note will be immediately due and payable." *Id.*

Second, in a section entitled "Dispute Resolution," the Note includes a Limited Waiver of Sovereign Immunity provision. It reads in part,

> With respect to all Claims, the Tribe hereby irrevocably waives the sovereign immunity of all Tribal Parties and their Affiliates (including, without limitation, the Gaming Authority and the Gaming Commission), and all defenses based thereon, for the following purposes only: (i) the adjudication and enforcement of Claims in the United States District Court for the Northern District of California, and all courts to which appeals therefrom may occur . . . [listing other purposes].

*Id.* at 3. Finally, in the same Dispute Resolution section, the Note includes a Limitation of Recourse provision: "Notwithstanding any other provision in this Promissory Note, any award of judgment against a Tribal Party for money with respect to a Claim may be enforced and collected only as against the Revenues or the deposit or securities accounts into which the same have been deposited." Promissory Note 3. The Note goes on to define "Claim" as "any dispute between any Tribal Party or JW Gaming Development that is related to this Promissory Note." *Id.* at 6. The definition of "Revenues" is limited to all revenues from the Gaming Operation. *Id.* at 8.

### C. Liability and Recourse under the Promissory Note

The provisions detailed above present two key questions that are overlapping but distinct. First, did the Tribe breach the Note, which—as the Tribe frames it—requires deciding whether JW Gaming's recourse under the Note is limited to casino revenues? Second, has the Tribe unequivocally waived its sovereign immunity with respect to recourse beyond casino revenues? I will address each in turn.

#### 1. Whether the Tribe breached the Note

The language of the Promissory Note and the undisputed facts show that the Tribe has breached the parties' agreement. Its argument to the contrary rests on the Note's Limitation of Recourse provision: it asserts that there can be no liability for failure to make payment on the Note because there are no casino revenues from which to pay. I disagree. The most reasonable reading of the contract shows that the parties intended for the Tribe to repay JW Gaming its investment in the event that no gambling operation was constructed by July 10, 2015. As described in more detail below, the Tribe's proposed interpretation would render the alternate maturity date and the "immediately due and payable" language meaningless. *See Pauma*, 813 F.3d at 1170 (favoring reasonable interpretations).

The Tribe relies on one case in which a bankruptcy court applied a provision that limited one party's recourse to capital contributions that did not exist. *In re Integrated Resources, Inc.*, 123 B.R. 181, 185 (Bankr. S.D.N.Y. 1991). In that case, a limited partnership borrowed money from multiple banks under promissory notes that obligated the partnership to pay the principal balance of the loans on demand. *Id.* at 183. The terms of the notes also provided that "[i]f the

8

promisor refused or was unable to pay on demand, the promisee's recourse was explicitly limited to capital contributions." *Id.* at 185. But the limited partnership had never created a capital contributions fund. *Id.* at 185. The banks argued that the partnership had breached its obligation to create the capital contributions fund, but the court found that the notes had created no such obligation, either express or implied. *See id.* at 185-86. With the express limitation on the banks' recourse, and without the existence of that fund, the partnership had no obligation to pay. *Id.* at 187, 188; *see also Durment v. Burlington Ins. Co.*, No. 14-cv-01231, 2014 WL 12599787, at *4-*5 (C.D. Cal. May 16, 2014) (finding that a limited recourse provision prevented the plaintiffs from alleging damages against one set of defendants where the agreement served to insulate the plaintiffs from precisely the damages they alleged).

The Note here is materially distinct. In *Integrated Resources*, the contract did not have a provision accounting for the possibility that the capital contributions fund might not exist. *See Integrated Resources*, 123 B.R. at 185 ("The Notes do not state that capital contributions do or will exist."). By contrast, the Note between the Tribe and JW Gaming shows that the parties clearly contemplated the possibility that no casino operation would ever come into existence, and, accordingly, that no gaming revenues would exist. They agreed to terms that would govern in that scenario; namely, the Note would become "immediately due and payable." To find that JW Gaming is entitled to payment only in the event that casino revenues exist would render meaningless the alternate maturity date and the "immediately due and payable" language. The interpretation I adopt is the only one that gives effect to the Maturity Date provision of the Note.

I am not persuaded by the Tribe's arguments to the contrary. *See* MSJ 10-11. According to its theory, the Note indeed became "immediately due and payable" on July 10, 2015, and JW Gaming had the right to request repayment at that time. But when it refused to pay, a Dispute arose under the Note. Because recourse for Disputes is limited to gambling Revenues, and no such Revenues exist, the Tribe cannot be liable for declining to repay JW Gaming.

In so arguing, the Tribe concedes that the Note is currently "immediately due and payable" but characterizes the decision of whether or not to make repayment as entirely within its own discretion. Indeed, the Tribe essentially asserts that it cannot be liable for declining to return the

9

money voluntarily even though the Note is "immediately due and payable." This interpretation would strip all meaning from "immediately due and payable" and lead to an absurd result. *See Pauma*, 813 F.3d at 1170 (noting that preference should be given to reasonable interpretations). The question is not what the Tribe could have done out of the kindness of its heart when the Note became "immediately due and payable"; the question is what it was *obligated* to do under the terms of the parties' agreement in the event that no gambling operation (or associated revenues) existed. I conclude that the parties intended for the Tribe to be obligated to make payment.

The extrinsic evidence confirms my reading of the contract because, by contrast with the Limitation of Recourse provision, the Maturity Date provision was the subject of a great deal of back-and-forth between the parties. *See Seagate Tech. LLC v. Dalian China Express Int'l Corp.*, 169 F. Supp. 2d 1146, 1157 (N.D. Cal. 2001) ("[S]eparately negotiated or added terms are given greater weight than standardized terms or other terms not separately negotiated.") (internal quotation marks omitted). Starting on March 28, 2012, the parties began exchanging drafts of the Promissory Note. *See* Campbell Decl. Exs. A-F [Dkt. Nos. 136-2]. From the beginning, the maturity date was a subject of discussion. *See, e.g.*, Campbell Decl. Ex. E (May 21, 2012 email from Melissa Canales) ("Additionally, I added a clause that will come into play if a gaming enterprise is never opened. We agreed that the note would be due and payable 3 years from this promissory note if a gaming facility is not opened."). By contrast with these express negotiations, the Limitation of Recourse provision was imported directly from the Development Agreement and remained unchanged from the first draft. *Compare* Promissory Note *with* Campbell Decl. Ex. A.

For all of these reasons, the Promissory Note became due and payable in June 2015. As described below, the Tribe's remaining arguments against judgment in favor of JW Gaming also fail.

### 2. Whether the Tribe unequivocally waived its sovereign immunity

In the late-filed Sur-Reply, the Tribe argues that I lack jurisdiction to award damages from anything beyond casino revenues because it did not unequivocally waive sovereign immunity for anything beyond such revenues. Sur-Reply 2-4.

"As a matter of federal law, an Indian tribe is subject to suit only where Congress has

authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998). "There is a strong presumption against waiver of tribal sovereign immunity." *Demontiney v. U.S. ex rel. Dep't of Interior, Bureau of Indian Affairs*, 255 F.3d 801, 811 (9th Cir. 2001). "To relinquish its immunity, a tribe's waiver must be clear." *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 412 (2001) (internal quotation marks omitted); *see Quinault Indian Nation v. Pearson for Estate of Comenout*, 868 F.3d 1093, 1098 (9th Cir. 2017) ("We demand clarity that the tribe gave up its immunity."); *Allen v. Gold Country Casino*, 464 F.3d 1044, 1047 (9th Cir. 2006) (noting that "waivers of tribal sovereign immunity may not be implied"). "Where a tribe gives such consent, any conditional limitation imposed thereon must be strictly construed and applied." *Lawrence v. Barona Valley Ranch Resort & Casino*, 153 Cal. App. 4th 1364, 1369 (2007).

In *Nordic Village*, the Supreme Court determined that one subsection of the bankruptcy code did not provide an "unequivocal expression" waiving the sovereign immunity of the United States with respect to monetary relief.[5] *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 34 (1992). While the subsection at issue did waive sovereign immunity, that waiver did not clearly extend to monetary claims because it was "susceptible of at least two interpretations that [did] *not* authorize monetary relief." *Id.* (emphasis in original); *see id.* at 35-37 (describing the two interpretations). Although these interpretations "were not the only readings," they were "plausible ones." *Id.* at 37. As a result, unequivocal waiver requirement was not met.[6] *Id.*; *see also Allen v. Gold Country Casino*, 464 F.3d 1044, 1047 (9th Cir. 2006) (finding no "unequivocal" waiver where general references to compliance with applicable state and federal laws included no language "clearly contemplating suits against the Casino").

In *White Mountain*, the Supreme Court addressed sovereign immunity waivers that were located in different statutes than the substantive rights that plaintiffs sought to enforce. *See United*

---

[5] The Ninth Circuit has cited *Nordic Village* in a case involving tribal sovereign immunity. *See Quinault Indian Nation*, 868 F.3d at 1098.

[6] The Court also noted that legislative history had no bearing on the waiver question, because an unequivocal express had to be in the statutory text. *Nordic Vill.*, 503 U.S. at 37.

11

*States v. White Mountain Apache Tribe*, 537 U.S. 465, 472-73 (2003). The Court noted that statutes and regulations conferring substantive rights do not need to provide a second waiver of sovereign immunity, "nor need they be construed in the manner appropriate to waivers of sovereign immunity." *Id.* at 472-72 (quoting *United States v. Mitchell*, 463 U.S. 206, 218–19, (1983)). Instead, they can create rights grounded in the separate waiver if they can "fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Id.* at 472. "A fair inference will do." *Id.* at 473. In *Gomez-Perez* the Court applied *White Mountain* to different subsections of the same statute: "That the waiver in § 633a(c) applies to § 633a(a) claims does not mean that § 633a(a) must surmount the same high hurdle [of unequivocal expression] as § 633a(c)." *Gomez-Perez v. Potter*, 553 U.S. 474, 490-91 (2008).

There is no question that the provision at issue here is unequivocal: the Tribe "irrevocably waive[d] the sovereign immunity of all Tribal Parties and their Affiliates" and "all defenses based thereon." Promissory Note 3. The Tribe's argument that the waiver was *not* unequivocal relies on the distinct Limitation of Recourse provision. But as the cases above state, that provision need not provide a second waiver, nor must it meet the strict rules of interpretation that are applied to waiver provisions themselves. The Tribe clearly and unequivocally waived its sovereign immunity with respect to the instant action.

### D. The Tribe's Remaining Arguments

The Tribe raises two additional arguments in opposition to JW Gaming's motion for judgment on the pleadings. First, JW Gaming's motion is procedurally improper because it was filed before the close of the pleadings. Oppo. MJP 1-3. Second, I must accept as true the 2019 Answer, where it "denied JW Gaming's allegation that the parties intended the Note to be a general-recourse obligation of the Tribe, and the Tribe raised the affirmative defense of waiver." Oppo. MJP 3-4 (citing 2019 Answer ¶ 254). JW Gaming counters that the pleadings are closed "for purposes of its motion" because the 2018 Answer addressed the first cause of action for breach of contract. Reply MJP 6-7; *see* Answer [Dkt. No. 61]. In addition, I should strike the 2019 Answer because it was filed well outside of time and without leave to amend.

### 1. Procedural argument

A motion for judgment on the pleadings may be filed "after the pleadings are closed." Fed. R. Civ. P. 12(c). Under Rule 7, the complaint, answer, counterclaims, and cross-claims are considered pleadings. Fed. R. Civ. P. 7(a). "[T]he pleadings are closed for the purposes of Rule 12(c) once a complaint and answer have been filed, assuming . . . that no counterclaim or cross-claim is made." *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005) (denying a motion as premature where the government had not filed an answer).

As far as the timeliness of JW Gaming's motion, neither party cites authority addressing the unique situation pending before me.[7] The pleadings related to the breach of contract claim closed on October 25, 2018, when the Tribe filed an Answer that did not include a counterclaim. I have always retained jurisdiction over the breach of contract cause of action, which was not part of the interlocutory appeal of my Motion to Dismiss Order. The appeal divested me of jurisdiction over the fraud and RICO causes of action, and the Ninth Circuit's mandate on that appeal came down only two days before JW Gaming filed the instant motion. *See* Dkt. Nos. 132, 136. If the mandate had *not* yet come down, I cannot imagine that the same motion from JW Gaming would have been premature; to find otherwise would strip power from the jurisdiction I undisputedly maintained. The pleadings related to the breach of contract claim had been closed for more than a year before JW Gaming filed its motion; I find that the motion was timely.

### 2. The Tribe's waiver defense

The Tribe also asserts that JW Gaming waived its right to enforce the "immediately due and payable" provision by waiting until nearly three years after the Maturity Date to attempt to collect on the Note. *See* Oppo. MJP 7-10. Neither party asserts that there are disputes of fact relevant to this defense: the Note matured on July 10, 2015, and JW Gaming filed suit on March 1, 2018. The question is whether this passage of time means that JW Gaming has waived its right to repayment.

As the Tribe's own cases demonstrate, the Maturity Date provision at issue here is not an

---

[7] The Tribe argues that Rules 7 and 12(c) require that *all* the pleadings be closed prior to any motion for judgment on the pleadings, but the cases it cites do not support this proposition. *See* Oppo. MJP 2-3.

13

acceleration clause. Acceleration clauses give creditors the option of immediately collecting the principal balance and interest in the event that a debtor defaults on payment. *See, e.g.*, *Belloc v. Davis*, 38 Cal. 242, 249 (1869); *Holland v. Paddock*, 142 Cal. App. 2d 534, 536 (1956). The provision at issue here does not give JW Gaming the "option" to convert a long-term repayment schedule into an immediately due balance. Instead, the Maturity Date expressly provides the date upon which the loan as a whole became due and payable.[8] The Tribe cites no authority suggesting that JW Gaming's purported delay in exercising its right to payment—which fell within the statute of limitations—eliminates its right to repayment of a $5.38 million loan. Accordingly, the balance remains due.

### E. The Fraud and RICO Claims

Finally, the Individual Tribal Defendants argue that they are entitled to summary judgment on the fraud and RICO claims because JW Gaming has failed to allege damages that stand apart from its damages for breach of contract. MSJ 17-20.

"The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004). "The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) (internal quotation marks omitted).

JW Gaming characterizes its fraud and RICO damages as follows: "JW Gaming was damaged by the defendants' fraudulent conduct when, because of its reliance on the defendants' misrepresentations, JW Gaming loaned more than $5 million to the Tribe." MJP 32. But the

---

[8] Even if the Maturity Date provision could be construed as an acceleration clause, there are no facts suggesting that JW Gaming took action that would constitute waiver. *See Belloc*, 38 Cal. at 251 (holding that a creditor waived the ability to exercise an acceleration clause by accepting late payment of interest after default rather than pursuing forfeiture). Given the absence of "option" language, mere delay is not enough.

14

later-executed Note memorialized that loan; accordingly, there is no distinction between the $5.38 million loaned as a result of the Individual Tribal Defendants' fraudulent conduct and the $5.38 million that JW Gaming is owed under the Note.[9] At the hearing, counsel for JW Gaming conceded that the harm is identical, but raised that it has the potential to seek treble damages under the tort causes of action.

JW Gaming's damages for all its causes of action stem from the $5.38 million it loaned to the Tribe; it cannot recover that money more than once. At the hearing, JW Gaming reaffirmed its request for judgment on the breach of contract claim, notwithstanding the potential impact that choice might have on its fraud and RICO claims. As for whether the remaining claims are impacted, I will address those issues after the parties have fully briefed them.

## II.     MOTION FOR JOINDER

Under Federal Rule of Civil Procedure 19, a "required party" must be joined as a party in a case if joinder is "feasible." Fed. R. Civ. P. 19. A party is required if "in that person's absence, the court cannot accord complete relief among existing parties." Rule 19(a)(1)(A). While the question of whether an individual or entity is "necessary" depends on the context of the case, "necessary parties have been described generally . . . as those persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it." *CP Nat. Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 912 (9th Cir. 1991) (internal quotation marks and citation omitted).

The Tribal Defendants move to join as defendants Nancy Williams, Teresa Williams, and Alicia Williams-Webb, who were members of the Tribal Council during the time periods specified in the complaint. The individuals they propose adding "voted on and approved resolutions that endorsed actions that, according to JW Gaming's Complaint, were undertaken by the Tribe for fraudulent or racketeering purposes." Mot. Joinder 1. Thus, according to the Tribal Defendants, I

---

[9] JW Gaming's arguments based on my prior Order are unpersuasive. *See* MJP 32. I did not conclude that the fraud and RICO claims allege injuries that are distinct from the breach of contract claim; instead I determined that JW Gaming had alleged a sufficiently direct relationship between the alleged conduct and the alleged damages. *See* MTD Order 7.

15

1 will not be able to afford complete relief without their addition as defendants. *Id.*

2 The Tribal Defendants have not persuaded me that these individuals are necessary parties under the first section of Rule 19(a). The mere fact that they were members of the Tribal Council is not sufficient.[10] Even if they were in fact joint tortfeasors, that would not make them necessary parties. *See Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015) ("'It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit.'") (quoting *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990)). The Tribal Defendants make only general and conclusory assertions that they could be subject to inconsistent obligations without these three individuals. In short, this action can proceed without these three individuals; the motion for joinder is DENIED.

### III. MOTION TO STRIKE ANSWER AND DISMISS COUNTERCLAIMS

The Tribe answered the complaint on October 25, 2018. *See generally* 2018 Answer. On November 12, 2019—after the Ninth Circuit's mandate came down—the Tribal Defendants collectively filed a second answer that, in addition to responding to the fraud and RICO claims, newly included counterclaims brought by the Tribe. *See generally* 2019 Answer. JW Gaming now moves to strike the 2019 Answer in its entirety. While it agrees that the Individual Tribal Defendants were entitled to file an answer after their claims returned to this court, it asserts that the Tribe was not.

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleadings once as a matter of course within 21 days after serving it, with the opposing party's written consent, or with the court's leave. Fed. R. Civ. P. 15(a). Courts can exercise their discretion to strike counterclaims that fail to comply with Rule 15(a). *See United States v. Hom*, No. 13-cr-03721-WHA, 2014 WL 1028769, at *1 (N.D. Cal. Mar. 16, 2014) (striking an amended answer and counterclaim that was filed without leave almost four months after the original answer).

---

[10] JW Gaming avers that there remain other individuals who were members of the Tribal Council during the relevant period, but whom the Tribal Defendants have not moved to join. MJP 23. The Tribal Defendants counter that JW Gaming failed to *establish* this fact. Oppo. MTS/MTD 16. Whether or not JW Gaming's assertion is true, it correctly notes that under the Tribal Defendants' theory, all members of the Tribal Council over the course of years could be considered necessary defendants. As indicated above, they are not all necessary parties.

16

Because I denied the motion to stay, the Tribe has always had an active claim in this Court. Indeed, it answered the complaint in 2018, and it included no counterclaims at that time. And yet, in the midst of pursuing its own motion for summary judgment and defending JW Gaming's motion for judgment, the Tribe filed the 2019 Answer with new counterclaims. It does not claim that it sought consent from JW Gaming or from me. Instead, it asserts that JW Gaming implicitly consented to the amendment during the parties' discussions over a deadline for responsive pleadings following the mandate from the Ninth Circuit. Oppo. MTS 3 [Dkt. No. 159] ("Although the parties did not explicitly discuss amendment of the previously-filed Partial Answer, they discussed at length the filing of responsive pleadings on behalf of all defendants. Tribal Defendants interpreted Narvaez's statements during these discussions as consent to file an amended answer on the contract claim, as well as answering the tort and RICO claims . . . ."). Not only is this interpretation clearly inaccurate, but the Tribe cites no authority that the opposing party's consent to amendment—which Rule 15(a) requires to be written—can be implied in correspondence about other matters. Its Answer was impermissible.

Even if the Tribe had sought leave to amend, the factors do not favor the request. "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the [party] has previously amended the [pleading]." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Most significantly, the circumstances here suggest bad faith, namely that the Tribe filed the counterclaims in the 2019 Answer in order to avoid an adverse ruling on JW Gaming's pending motion for judgment on the pleadings. Other than putting forth its own interpretation of the Note, the Tribe primarily relied on the *mere fact* of pending counterclaims as a reason for denying JW Gaming's motion. *See Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) (finding no abuse of discretion in denying leave to amend based in part on a finding that the motion "was brought to avoid the possibility of an adverse summary judgment ruling"); *U.S. Bank Nat. Ass'n v. Wayman*, No. 13-cv-02203, 2015 WL 5772730, at *9 (S.D. Cal. Sept. 30, 2015) (finding it "significant" that the party moving for leave to file counterclaims had waited until after the opposing party's summary judgment motion).

I also find that there was undue delay for three reasons. First, the circumstances surrounding the new counterclaims date back more than ten years, well before the execution of the Note that is primarily at issue here. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("[A] district court does not abuse its discretion in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally."). Although the Tribe attempts to blame its delay on the parties' disagreement over the scope of discovery related the breach of contract claim, it entirely fails to explain what discovery would have been necessary to raise these counterclaims. *See* Oppo. MTS 6. In fact, according to JW Gaming the Tribal Defendants refused to produce discovery related to the J2M Gaming Development, LLC on the grounds that the information was "not relevant to the First Cause of Action." Reply MJP 9 n.3.

Second, before the 2019 Answer, both parties had filed dispositive motions, and briefing on those motions was well underway; clearly, the parties agreed that undisputed facts made the breach of contract claim appropriate for resolution on the merits without additional discovery. The argument that no dispositive motions had been *decided* is not persuasive. *See* Oppo. MTS 6.

Third, while there is time left in discovery, that does not excuse the Tribe from its obligation to file prompt pleadings with the information known to it. *See id.* It offers no persuasive reasons why its delay is excusable. Oppo. MTS 11-12.

Finally, amendment would be futile because the counterclaims are barred by the statute of limitations and because set-off under California Code of Civil Procedure section 431.70 is not applicable. *See Nunes v. Ashcroft*, 348 F.3d 815, 818 (9th Cir. 2003) ("Futility alone can justify the denial of a motion to amend."). Section 431.70 "provide[s] partial relief from the statute of limitations" and can permit defendants to "defeat the plaintiff's claim in whole or in part." *See Constr. Protective Servs., Inc. v. TIG Specialty Ins. Co.*, 29 Cal. 4th 189, 195, 198 (2002), *as modified* (Nov. 14, 2002). But "[i]t is elementary that a set-off may not be invoked unless the parties and the debts are mutual and that the doctrine of mutuality requires that the debts be due to and from the same persons in the same capacity." *Petersen v. Lyders*, 139 Cal. App. 303, 306 (1934). Neither Donna Winner nor J2M Gaming brings claims against the Tribe, and so no set-off

18

counterclaims can proceed against them. The Tribe fails to present a plausible theory under which JW Gaming could be liable for J2M's obligations.

Because the factors disfavor amendment in this case, I would have denied leave if the Tribe had requested it. I will strike the Tribe's 2019 Answer and dismiss the counterclaims it asserted. JW Gaming does not, however, provide an independent reason why the Individual Tribal Defendants—who undoubtedly had not answered the fraud and RICO claims against them—should have to refile their answer. I decline to strike the 2019 Answer in its entirety.

## CONCLUSION

For the reasons set forth above, the Tribal Defendants' motion for summary judgment is DENIED. The Tribal Defendants' motion for joinder is DENIED. The motion to strike and dismiss is GRANTED as related to the Tribe and DENIED as related to the Individual Tribal Defendants. JW Gaming's motion for judgment on the breach of contract claim is GRANTED without limitation on recourse, and judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: January 21, 2020

William H. Orrick
United States District Judge