UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JW GAMING DEVELOPMENT, LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ANGELA JAMES, et al.,<br><br>　　　　　　Defendants. | Case No. 3:18-cv-02669-WHO<br><br>**ORDER ON MOTIONS TO RECONSIDER AND RECALL OR QUASH THE WRIT OF EXECUTION**<br><br>Re: Dkt. Nos. 286, 293 |

I previously entered judgment on the pleadings on a breach of contract claim brought by plaintiff JW Gaming Development, LLC ("JW Gaming") against two defendants. One of those defendants, the Pinoleville Pomo Nation ("PPN"), moves to reconsider the breach of contract determination and separately moves to recall or quash the writ of execution enforcing the judgment. Both motions are denied.[1] Over the course of briefing, the parties also disagreed over which of the many, related defendants were found liable for breach of contract: JW Gaming claimed that it is all entity defendants associated with PPN, while PPN believes only it is liable. Neither is correct. It is clear from the the subject Promissory Note and the briefing on the motion for judgment on the pleadings that JW Gaming sought, was entitled to, and obtained judgment against PPN and the Pinoleville Gaming Authority.

## BACKGROUND

**I.　FACTUAL BACKGROUND**

I have discussed the facts of this case in numerous previous orders on motions to dismiss, for summary judgment, judgment on the pleadings, and for leave to amend or reconsider. *See* Dkt.

---

[1] This matter is appropriate for decision without oral argument. Dkt. No. 304; Civ. L.R. 7-1(b).

Nos. 55, 178, 196, 236, 237, 278. I discuss only those facts relevant to the present dispute.

In brief, JW Gaming and several defendants were interested in facilitating the construction of a casino by PPN.[2] *See* Order on Motion for Summary Judgment, Motion for Judgment on the Pleadings, Motion for Joinder, and Motion to Strike and Dismiss ("JOP Order") [Dkt. No. 178] 2. JW Gaming eventually invested $5,380,000 in the casino project. *Id.* It alleged that it was fraudulently induced into doing so (a claim which was dismissed at its request so that judgment could be entered). *Id.* On July 10, 2012, PPN, the Pinoleville Gaming Authority, and JW Gaming agreed to a Promissory Note that superseded previous agreements, governed the terms of JW Gaming's loan, and provided a limited waiver of PPN's sovereign immunity. *Id.* 2–3; Promissory Note ("Note") [Dkt. No. 136-2, beginning at JW020011]. As explained in previous orders, the Note would become due and payable if PPN did not open a casino or gaming facility within three years of it going in to effect. *Id.* at 2. No such facility has been opened.

## II.   PROCEDURAL BACKGROUND

JW Gaming initiated this case in state court in March 2018 and the defendants removed it to federal court. Dkt. Nos. 1, 1-1. The case originally concerned fraud, Racketeer Influenced and Corrupt Organizations Act ("RICO"), and breach of contract claims. Even as threshold sovereign immunity issues on the fraud and RICO claims were litigated in the Ninth Circuit (and in an unsuccessful petition for a writ of certiorari), the breach of contract claim proceeded before me. On October 16, 2019, the Entity Defendants[3] moved for summary judgment on the breach of contract claim. Dkt. No. 129. On October 30, 2019, JW Gaming moved for judgment on the pleadings on that claim. Dkt. No. 1236. On November 12—the day before their opposition to the motion for judgment on the pleadings was filed—the Tribal Defendants[4] filed an amended answer.

---

[2] I use different shorthand to refer to some parties than in previous orders and than the parties use because of the dispute about which parties are liable for breach of contract.

[3] For purposes of this order, the "Entity Defendants" are PPN, the Pinoleville Gaming Authority ("Gaming Authority"), Pinoleville Gaming Commission ("Gaming Commission"), Pinoleville Business Board ("Business Board"), and Pinoleville Economic Development, LLC ("PED").

[4] For purposes of this order, the "Tribal Defendants" are the Entity Defendants and the "Individual Tribal Defendants," who are: Angela James, Leona Williams, Lenora Steele, Kathy Stallworth, Michelle Campbell, Julia Maldonado, Donald Williams, Veronica Timberlake, Cassandra Steele,

2

1    Dkt. No. 141.  JW Gaming moved to dismiss and strike it.  Dkt. No. 151.

2           At a hearing on December 4, 2019, I indicated my tentative view to deny the Tribal
3    Defendants' motion for summary judgment and grant JW Gaming's motion for judgment on the
4    pleadings on the breach of contract claim.  On January 7, 2020—more than a month after the
5    hearing and several weeks after the last briefs were submitted—the Tribal Defendants moved for
6    leave to file a sur-reply on JW Gaming's motion to address whether it waived sovereign immunity
7    in the Note and, therefore, whether I had jurisdiction over the breach of contract claim.  Dkt. No.
8    170.  As I wrote, "Despite my dismay at the timing of the motion, because the arguments in it
9    should have been made earlier, I granted leave because I found that the arguments merited a
10   response."  JOP Order 4.

11          I issued an order on those motions on January 21, 2020.  In it, I struck the Tribal
12   Defendants' amended answer that asserted new counterclaims.  Despite Federal Rule of Civil
13   Procedure ("FRCP") 15(a)'s requirement that the Tribal Defendants obtain consent from JW
14   Gaming or leave of court to file, it did not.  JOP Order 17.  And even if the Tribal Defendants had
15   sought leave to amend, the factors governing that request would lead to denying it.  *Id.*  In
16   particular, the action "suggest[ed] bad faith, namely that the Tribe filed the counterclaims in the
17   2019 Answer in order to avoid an adverse ruling on JW Gaming's pending motion for judgment
18   on the pleadings."  *Id.*  Further, there was undue delay in amending and amendment would be
19   futile.  *Id.* 18–19.

20          I also ruled on the parties' cross-motions for judgment on the breach of contract claim.  As
21   noted, both parties believed that claim was ripe for determination as a matter of law.  I granted JW
22   Gaming's motion for judgment on the pleadings and denied the Tribal Defendants' motion for
23   summary judgment.  *Id.* 6–15.  The relevant reasoning of that Order is explained later in this one.

24          The case proceeded on the fraud and RICO claims after the Ninth Circuit affirmed my
25   denial of sovereign immunity and the Supreme Court denied review.  The Tribal Defendants
26   eventually replaced their lead counsel.  I denied JW Gaming's motion for summary judgment on

27

28   Jason Edward Running Bear Steele, and Andrew Stevenson.

the fraud and RICO claims in July 2020. Dkt. No. 237.

On November 5, 2020, as discovery on the fraud and RICO claims proceeded, the Tribal Defendants moved for leave to file a motion for reconsideration and for leave to amend their answer and counterclaims. Dkt. No. 251. Several days later, JW Gaming moved to enter judgment by certifying the breach of contract claim as final under FRCP 54(b) and dismissing its other claims. Dkt. No. 253.

I denied the Tribal Defendants' motion. *See* Order on Motions for Leave to File a Motion for Reconsideration, for Leave to Amend, and to Enter Judgment ("Prior Order") [Dkt. No. 278]. Their theory for seeking reconsideration was that they had discovered new evidence that supported recission of the Note based on misrepresentation. No such new evidence existed. *Id.* 8–12. And I granted JW Gaming's motion to enter judgment on the breach of contract claim and dismiss its other claims. *Id.* 14–18.

At the hearing on those motions, I explained that the Tribal Defendants had not meaningfully engaged with how much would be owed on the Note when judgment was entered (as I explain below, they lodged several evidentiary objections to JW Gaming's calculation spreadsheet and left it at that), so I *sua sponte* gave them leave to file a supplemental brief addressing JW Gaming's arguments. Over JW Gaming's objection, I extended the Triabal Defendants' time to file it. Dkt. No. 270. They filed their supplemental brief on December 31, 2020. My order entering judgment issued on January 14, 2021. I entered the judgment on January 22. Dkt. No. 279.

JW Gaming filed a proposed abstract of judgment on January 25. Dkt. No. 280. The Clerk issued the abstract the same day. Dkt. No. 281. The Clerk issued the writ of execution on February 23, 2021. Dkt. No. 288.

The present motion for reconsideration was filed on February 19 and the motion to quash was filed March 3.[5] PPN also filed a motion to shorten the time to hear the motion to quash or, in

---

[5] Although the motion for reconsideration was originally filed by the Entity Defendants, an errata states that it is only filed on behalf of PPN. Dkt. No. 298.

4

the alternative, to stay execution of the judgment until the motion could be heard. Dkt. No. 290. I granted the motion to expedite the briefing schedule over JW Gaming's objection. Dkt. No. 297.[6]

## LEGAL STANDARD

### I. MOTION FOR RECONSIDERATION

PPN brings its motion under Federal Rules of Civil Procedure ("FRCP") 59 and 60. As relevant here, FRCP 59 permits parties to file motions to "alter or amend a judgment." Fed. R. Civ. P. 59(e). "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (internal quotation marks omitted). "In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Id.*

Under FRCP 60, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b).

### II. MOTION TO QUASH OR RECALL THE WRIT OF EXECUTION

FRCP 69 governs execution of judgment and does not set a standard for quashing or

---

[6] After my order on that motion was sent for filing but before it was docketed, PPN filed a motion to strike JW Gaming's opposition. Because I ruled on the motion to expedite, that motion to strike is moot. (JW Gaming attempted to submit an opposition to *that* motion but the filing system was down and it emailed it to all counsel and my courtroom deputy.)

1  recalling writs of execution. Both parties agree that courts have the power to do so. Motion to
2  Recall or Quash the Writ of Execution ("Quash Mot.") [Dkt. No. 293] 3; Opposition to the Quash
3  Mot. ("Quash Oppo.") [Dkt. No. 301] 2–3. FRCP 69 provides, among other things, that "[t]he
4  procedure on execution—and in proceedings supplementary to and in aid of judgment or
5  execution—must accord with the procedure of the state where the court is located, but a federal
6  statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1). California law is clear that
7  courts can quash and recall improper writs of execution. *Evans v. Superior Ct. of Los Angeles*
8  *Cty.*, 20 Cal. 2d 186, 124 P.2d 820 (1942). Federal courts appear to be in accord. *United States v.*
9  *Watson*, 29 F. App'x 455, at *1 (9th Cir. 2002) (reviewing decision not to quash a writ of
10  execution); *Moreno v. Ross Island Sand & Gravel Co.*, 2016 WL 3549453, at *1 (E.D. Cal. June
11  30, 2016), *aff'd on other grounds*, 704 F. App'x 716 (9th Cir. 2017) (collecting cases). Moreover,
12  there is no question that if I withdrew the underlying judgment, the writ of execution would be
13  void.

## DISCUSSION

15  Many of the arguments in the motion to quash are duplicative of the arguments in the
16  motion for reconsideration. I address those in my discussion of the latter motion.

17  **I.    MOTION FOR RECONSIDERATION**

18  The motion for reconsideration states that it raises six distinct issues. Motion for
19  Reconsideration ("Recon. Mot.") [Dkt. No. 286]. Its substantive argument, however, addresses
20  only three of them. In its errata, PPN explains that, due to technical issues when drafting the
21  motion, it deleted its other arguments. Dkt. No. 298.

22       **a. Improper Conversion Into Summary Judgment**

23  The first argument in the motion to reconsider—which is also referenced in the motion to
24  quash—is that the JOP Order effectively converted JW Gaming's motion for judgment on the
25  pleadings into a motion for summary judgment without notice. *See* Recon. Mot. 5–6; Quash Mot.
26  8.

27  FRCP 12(d) provides that, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside
28  the pleadings are presented to and not excluded by the court, the motion must be treated as one for

summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." However, "where the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter summary judgment sua sponte for the nonmoving party." *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014). Indeed, "district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). That principle has been codified in FRCP 56(f).

As a procedural matter, PPN should have objected at the time if it believed it lacked adequate notice about this evidence or that it needed to develop the record to fairly respond. It never objected. Nor did it raise the issue after the judgment on the pleadings was granted, including in its motion for leave to file a motion to reconsider. Instead, it sat on an argument that should have been raised at the time for more than a year, until after the writ of execution had already issued.

Substantively, I did not convert the motion for judgment on the pleadings into a motion for summary judgment and grant summary judgment *sua sponte*. PPN argues that JW Gaming submitted extrinsic evidence and that I granted its motion on the basis of that evidence. *See* Recon. Mot. 5–6. That is not true. *Both* parties moved for judgment on the issue. *See* Dkt. Nos. 129, 136. My decision on the Note was based on its terms and the pleaded and uncontested fact that no gaming facility had been opened. *See* JOP Order 6–10. (The Note was incorporated by reference into the Complaint. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).)

The only record evidence I referenced in my analysis is correspondence between the parties when negotiating the Note. *Id.* 10. It appears toward the end of my joint discussion of both motions; I said that it "*confirm[ed]* my reading of the contract." *Id*. (emphasis supplied). And in context, I was analyzing *the Entity Defendants'* summary judgment argument, which was that the limitation on recourse provision entitled them to summary judgment. *See id.* Because JW Gaming submitted a *joint brief* on its motion and its opposition to summary judgment, *see* Dkt. No. 136, it included record evidence to oppose the grant of summary judgement.

1  This aside, even if my JOP Order were interpreted as granting summary judgment to JW Gaming, it complied with the notice requirement. As noted, when JW Gaming submitted that correspondence, it was both in support of its motion and to oppose the Entity Defendants' summary judgment motion. Dkt. No. 136. PPN and the other Entity Defendants were then able to respond to that evidence both in their reply and in the opposition to JW Gaming's motion. *See* Dkt. Nos. 145, 146. The correspondence was, of course, well known to all parties. If PPN had some issue with it or felt there was other evidence that had to be submitted that rebutted it, it had ample opportunity to object, request discovery, and submit additional evidence or argument in or with either of the two briefs it used to respond to JW Gaming's brief. The defendants "had a full and fair opportunity to ventilate the issues involved in the matter," which is what the law requires. *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003). Indeed, PPN had more notice than many parties subject to *sua sponte* summary judgment, which often occurs when a party moves for summary judgment and it is instead entered *against* that party. *See, e.g.*, *id.* (upholding *sua sponte* summary judgment with no cross motion). Here, PPN's opponent also moved for judgment on the same issues; PPN "was fairly apprised," *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir. 1982), of the issues that needed to be addressed.

The primary concern of improper conversion without notice is using *potentially disputed* facts to rule against a party. *Buckingham v. United States*, 998 F.2d 735, 742 (9th Cir. 1993). No one disputed the contents of the correspondence leading up to the Note. Even today, PPN does not argue that some disputed *fact* about that correspondence was resolved against it (though it of course maintains the interpretation of the Note was wrong). And PPN does not point to any case in which a situation like this was deemed to be a *sua sponte* summary judgment or, if it was, found to lack adequate notice.[7] Its argument is not well-taken.

---

[7] While this does not affect my analysis, PPN has not indicated what evidence it could have or would have introduced or, more fundamentally, what dispute *about the correspondence* it could have raised that it did not. It seems unlikely there would be any evidence or dispute on these facts as the Entity Defendants themselves moved for summary judgment with full knowledge of the correspondence at issue.

8

### b. Post-Judgment Enforcement

PPN next argues that I should "clarify . . . that [I] did not intend for the []JOP Order and Judgment to adjudicate unripe post-judgment collection and enforcement issues not alleged in the Complaint." Recon. Mot. 7. The thrust of the argument is that all that was at issue in that Order was *whether Note was breached*, not whether or how JW Gaming *could collect on that judgment*. *See id.* 7–9. In other words, PPN argues that the "Limitation on Recourse" provision prevents JW Gaming from getting an enforceable judgment or writ of execution on that judgment. This argument has two forms: that the JOP Order did not as a factual matter adjudicate this issue and that, if it did, it was improper.

The JOP Order did adjudicate this issue, in large part because the Entity Defendants chose to litigate it. The Entity Defendants' primary argument in support of the summary judgment motion and in opposition to the judgment on the pleadings was that the "Limitation in Recourse" provision meant that the failure to pay was not a breach of the Note. *See* Dkt. No. 129 at 10–17 (summary judgment motion focusing entirely on the limitation on recourse clause); Dkt No. 145 at 5–8 (judgment on the pleadings opposition arguing that the limitation on recourse clause bars granting judgment); Dkt. No. 146 at 8–12 (summary judgment reply).

Unsurprisingly, that contention was the major focus of the interpretive part of the JOP Order. As I noted, the primary question was "did the Tribe breach the Note, which—as the Tribe frames it—*requires deciding whether JW Gaming's recourse under the Note is limited to casino revenues*?" JOP Order 8 (emphasis added). I explained that the Entity Defendants' "argument [against finding breach] rests on the Note's Limitation of Recourse provision: it asserts that there can be no liability for failure to make payment on the Note because there are no casino revenues from which to pay. I disagree." *Id.* I went on to explain why.

Further, the Entity Defendants argument was that,

> the Note indeed became "immediately due and payable" on July 10, 2015, and JW Gaming had the right to request repayment at that time. But when it refused to pay, a Dispute arose under the Note. Because recourse for Disputes is limited to gambling Revenues, and no such Revenues exist, the Tribe cannot be liable for declining to repay JW Gaming.

*Id.* 9. I will not repeat every aspect of my finding to the contrary, but I explained that this

9

interpretation "would strip all meaning from 'immediately due and payable' and lead to an absurd result." *Id.* 10. Consequently, "I conclude[d] that the parties intended for the Tribe to be obligated to make payment." *Id.* The result, as I wrote in the Conclusion section of the JOP Order, was that "JW Gaming's motion for judgment on the breach of contract claim is GRANTED without limitation on recourse, and judgment shall be entered accordingly." *Id.* 19. The JOP Order settled that JW Gaming was entitled to judgment in its favor on that claim without limitation on recourse.

The second aspect of PPN's argument is that, if the JOP Order settled this issue, doing so was improper. It contends that that issue was not encompassed in the pleadings and so could not be adjudicated. Recon. Mot. 8–9; Reply in Support of the Recon. Mot. ("Recon. Reply") [Dkt. No. 299] 11–13.[8] I have not found, and neither party has pointed to, a case with any authority that supports PPN's argument.

To be sure, PPN cites cases. But they all stand for the general principle that claims and theories of liability are framed by pleadings. *See Klein v. Boeing Co.*, 847 F. Supp. 838, 844 (W.D. Wash. 1994); *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 641 (3d Cir. 1993). The classic situation that would violate this rule is pressing a claim at summary judgment that was never pleaded. But it is unclear how these principles were violated here. PPN's argument appears to be that JW Gaming's claim for breach of contract does not cover the damages that would be owed from a breach and that JW Gaming was required to seek a specific declaratory judgment that the Limitation on Recourse provision did not stand in the way of enforcement. Recon. Mot. 9. The reason that provision came up previously, PPN now says, is only that it was useful to interpret the meaning of the maturity date provision. *Id.* But the first claim for relief in the Complaint was for breach of contract on the Note and the theory of liability was breach due to the failure to pay according to obligations. The Entity Defendants' primary response was that the Note meant that it

---

[8] JW Gaming thinks that PPN made an argument based on the "ripeness" justiciability doctrine. *See* Recon. Oppo. 10–12. While I understand why—PPN used the word "ripe" many times and its actual argument is somewhat related—that is not how I understand it. In its Reply, PPN confirms that my understanding is correct, disclaiming any argument about ripeness as a justiciability doctrine. *See* Recon. Reply 13 n.11.

10

did not have to pay because there was limitation on recourse. I determined to the contrary. Accordingly, JW Gaming is entitled to relief on that breach of contract claim and it is not limited in recourse.

PPN insists that litigating the limitation on recourse must "await another day," Recon. Mot. 9, but it never specifies when that could be. Even if this issue had not been properly settled in the JOP Order, if there were any time to raise it after that, it was surely when JW Gaming moved to enter judgment and stated how much it calculated was owed on that judgment. Yet no defendant did. The Tribal Defendants' initial brief on that motion raised a series of barebones evidentiary objections to the spreadsheet that described JW Gaming's calculations. Dkt. No. 256 at 5–7. Not only did PPN never challenge the actual figure owed, it never challenged the more fundamental understanding that *a* figure was owed—that is, that JW Gaming was entitled to damages. At the hearing, I *sua sponte* permitted the defendants to file a supplemental brief to address how much would be entered on the judgment. *See* Dkt. Nos. 270, 271. Even this supplemental brief never hinted that PPN believed it did not owe anything on the Note. To the contrary, PPN explicitly stated how much interest it believed was owed on the Note. Dkt. No. 274. Its brief reserved PPN's rights, claims, and defenses related to its previous motion for leave to file a motion to reconsider, *id.* at 1 n.2, but that motion argued only that new evidence warranted reconsideration.

In sum, PPN did not raise this issue in response to a motion to enter judgment that included the figure owed, did not raise this issue in the supplemental brief I permitted it to file on that issue, and did not raise it in it motion for leave to file a motion to reconsider. Its argument does not hold water.

### c. Interpretation of the Note

As noted, several issues appear only in the Recon. Motion's "issues presented" or "Introduction" and PPN disclaimed them in its errata. In spite of this, PPN's *Reply* includes a lengthy discussion of one of those arguments: that the Note is ambiguous and the JOP Order therefore erred in interpreting it. PPN attempts to justify the argument as a response to JW Gaming's brief and says it is making it "in an abundance of caution." Recon. Mot. 8 n.10.

Because it previously attempted to make this argument but faced internal technical difficulties that prevented it, its attempt to frame the argument as a response to JW Gaming is not particularly credible. And new arguments in replies are impermissible; PPN has waived it. *Roe v. Doe*, No. C 09-0682 PJH, 2009 WL 1883752, at *5 (N.D. Cal. June 30, 2009). Further, it is the same sort of meritless argument that PPN made at summary judgment and judgment on the pleadings: that the two provisions of the Note can only be read in harmony based on the Entity Defendants' interpretation. It is an improper argument to make on a motion to reconsider. The JOP Order adequately addresses the interpretative issues PPN raised at the time. To the extent the motion to quash separately raises this issue, it is (1) intertwined with its argument that the issue was not procedurally ready for determination, which I reject above, and (2) is adequately addressed by the JOP Order.

### d. Interest

PPN's next argument is that I erred in determining how much interest would be owed on the Note. As explained, this is now its third effort to address how much is owed, and its argument is essentially a rehash of the one that appeared in its supplemental brief.

"Interpretation of a contract is a matter of law." *Beck Park Apartments v. U.S. Dep't of Hous. & Urban Dev.*, 695 F.2d 366, 369 (9th Cir. 1982). The correct interpretation is the one that gives effect to the "mutual intention" of the parties. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18, 900 P.2d 619, 627 (1995), *as modified on denial of reh'g* (Oct. 26, 1995) (citing CAL CIV. CODE § 1636). The starting point for this analysis is always the language of contract itself. *Id.* "A written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations." *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California*, 813 F.3d 1155, 1170 (9th Cir. 2015). "An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable." *Id.* at 1171 (internal quotation marks omitted). "Interpretation of a contract must be fair and reasonable, not leading to absurd conclusions." *ASP Properties Grp., L.P. v. Fard, Inc.*, 133 Cal. App. 4th 1257, 1269 (2005) (internal quotation marks omitted).

12

1    The supplemental brief took issue with two aspects of JW Gaming's approach to the
2    interest owed.  JW Gaming contended that interest should be compound; PPN said it should be
3    simple.  And JW Gaming argued that interest began to accrue when the Note was entered into;
4    PPN argued it began to accrue three years later, when the Note came due.  In the Prior Order, I
5    agreed with PPN that the Note required it to pay simple interest and agreed with JW Gaming that
6    interest accrued from the date into which the Note was entered.

7    In the "Loan Terms" section of the Note, the "Interest Rate" provision states, "The
8    Principal balance of the Interim Tribal Loan shall bear interest, adjusted as of the first day of each
9    month to a rate equal to the prime rate or reference rate last reported from time to time in the
10   'Money Rates' Section of the Wall Street Journal, plus three (3) percent payable when all principal
11   on the Interim Tribal Loan is payable."  Under that provision's plain meaning, the principal shall
12   bear interest.  There is no indication that the principal shall bear interest *only starting at some*
13   *point in the future*.  Interest on this loan was to work as it does on most loans: it begins to accrue
14   on the principal when the principal comes into existence by being loaned.

15   PPN's proposed interpretation disregards this plain meaning, is not anchored in any
16   contractual provision, and would lead to absurd results.  PPN contends that because the entire
17   Note came due three years after it was entered into (because no facility had been opened), interest
18   only began to accrue then.  That contention finds no support in the contract or common sense.
19   While the last clause provides that it is *payable* when the principal is payable, that does not mean
20   that interest began to *accrue* on that date.  Under PPN's interpretation, if it were able to pay back
21   the entirety of the loan prior to the three-year date (for example, if the casino did well or it
22   received other funding and wanted to pay back the loan), it would not owe any interest on the
23   Note—despite its provision that the principal would bear interest—and JW Gaming would not
24   have made money from its venture.  While the parties could have agreed to such a loan, they did
25   not here.

26   To support its argument to the contrary, PPN relies almost entirely on *Fitz Fresh, Inc. v.*
27   *Mondragon*, No. C-08-02407 RMW, 2008 WL 4811457 (N.D. Cal. Nov. 5, 2008), which I cited in
28   the Prior Order.  PPN mistakenly reads that case to hold parties can only get agreed-to interest

13

from the breach forward. But what the parties have debated here is interest that (1) accrued from the terms of the contract regardless of the breach and (2) is part of JW Gaming's damages. California provides that "[a]ny legal rate of interest stipulated by a contract *remains* chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation." Cal. Civ. Code § 3289(a) (emphasis supplied). The Note itself provided that the principal bore interest. For the reasons explained above, as a matter of contract interpretation the interest accrued from the date the Note was entered into.[9]

### e. The Parties Subject to Liability

Over the course of their briefing on these motions, it became clear that the parties dispute who is liable for the breach of contract. The present uncertainty seems to stem from varying uses of the phrase "Tribe" across this litigation. The parties have often defined the phrase "Tribe" for purposes of briefing to mean what I in this Order have called the Entity Defendants. *See, e.g.*, Dkt. No. 129 at 1 (Tribal Defendants using that classification). Consequently, I often used "Tribe" in this way when referring to the arguments each party made. I have used different terms in this Order. As I explain, that definitional dispute is irrelevant.

The basic dispute is over whether only PPN, only PPN and the Gaming Authority, or all Entity Defendants were found liable for the breach of contract claim. JW Gaming contends all Entity Defendants are; PPN argues (if anyone is) only it is.

The breach of contract claim, as pleaded, alleges that it is against PPN, the Gaming Authority, Gaming Commission, Business Board, and PED. *See* Complaint [Dkt. No. 1-1] at 37.

---

[9] PPN also argues, "[p]arenthetically," that I never ruled on its evidentiary objections to the exhibit that supported JW Gaming's interest calculations. Recon. Mot. 10. But its own supplemental brief—and its current motion—treated the issue as one of contract interpretation; the amount could be derived from the Note itself, so the objections were of no moment. Moreover, PPN took issue only with (1) the interest type and (2) the first accrual date. Once those issues were settled, PPN had no argument on the actual *amount* owed based on a given methodology. If PPN's evidentiary objections were correct, its own proposed figures would be inadmissible because, even though JW Gaming filed a declaration supporting its math, PPN filed nothing to support its figures aside from assertions in its briefs. (Previously, PPN attempted to insert a new expert into the case to provide calculations; I struck that expert's declaration but permitted PPN to put forward the ultimate figures reached. It represents that it "assert[s] no error in regard to the Court's striking of the expert opinions that went beyond the calculations." Recon. Mot. 12. In its current motion, it proffers the same figures, which are not supported by any declaration [because I struck the expert's].)

14

However, the Note itself states at the top that the loan is from JW Gaming to PPN. Note at 1. In the "Loan Terms," it says that the "Tribe and/or the Gaming Authority promises to pay [JW Gaming], the Interim Tribal Loan, together with interest thereon…" *Id.* at 2. "Tribe" for purposes of the Note "means the Pinoleville Pomo Nation." *Id.* at 8. Gaming Authority is defined as "an unincorporated authority or enterprise formed by the Tribe under the laws of the Tribe to operate a gaming facility on behalf of the Tribe, together with its successors and assigns." *Id.* at 7. The Maturity Date and Payment provision states that "[t]he Tribe shall repay [JW Gaming] the principal and interest due under this Promissory Note" according to its terms. *Id.* at 2. The Note also provides that the loan may be prepaid (with interest) "by a Tribal Party at any time" and defines "Tribal Party" to mean PPN "or the Gaming Authority." *Id.* at 8. PPN granted JW Gaming a security interest in certain casino proceeds. *Id.* at 2–3. Later, in the "Binding Obligation" section, the Note proves that it has been "duly executed and delivered by the Tribe and is a legal, valid and binding obligation of the Tribe" and enforceable against it according to its terms. *Id.* at 3. It also provides that "[e]ach of this Promissory Note [sic] executed by the Gaming Authority on or before the Assumption Date has been duly executed by the Gaming Authority and is a legal, valid, and binding obligation of the Gaming Authority" and enforceable against it according to its terms, with limitations neither party relies on (such as bankruptcy). *Id.*

JW Gaming's motion for judgment on the pleadings asked that it be awarded against "defendants Pinoleville Pomo Nation ("Tribe") and Pinoleville Gaming Authority" on the breach of contract. Dkt. No. 136 at 2. Its motion identified the Note as being between it and "promisors Pinoleville Pomo Nation ("Tribe") and Pinoleville Gaming Authority." *Id.* at 8; *see also id.* at 10 ("JW Gaming, the Pinoleville Pomo Nation, and the Pinoleville Gaming Authority (along with Canales Group LLC and John Tang) agreed to the Note."). JW Gaming also expressly represented:

> The Note expressly binds the Pinoleville Pomo Nation and the Pinoleville Gaming Authority. Note at 2, 3. They both executed the Note. Note at 10. *JW Gaming does not presently seek judgment on the pleadings as to the other Tribal entity defendants (the Pinoleville Gaming Commission, Pinoleville Business Board, and Pinoleville Economic Development, LLC), sued as "successors and assigns" of the Gaming Authority*.

15

*Id.* at 17 n.7 (emphasis added). And when it sought to certify judgment under FRCP 54(b), JW Gaming moved to enter judgment "against defendants Pinoleville Pomo Nation and Pinoleville Gaming Authority on the first cause of action for breach of contract, while simultaneously dismissing with prejudice JW Gaming's other claims." Dkt. No. 253 at 2; *see also id.* at 3.

In short, not all Entity Defendants were held liable in the JOP Order. JW Gaming only sought judgment against PPN and the Gaming Authority. That makes sense as the other Entity Defendants were sued as successors and assigns, and whether they are or not would need to be litigated.

That JOP Order frequently referenced "the Tribe" as including all Entity Defendants, and JW Gaming's argument is based on that. But the JOP Order did so only to discuss the parties' arguments, because that is how they lined up their motions and responses. It was not to declare them all liable. That Order did not and could not have decided the liability of those against whom JW Gaming did not seek to enter judgment—namely, any Entity Defendant except PPN and the Gaming Authority. The Prior Order entering judgment under FRCP 54(b) did only that. And the Judgment did so "in favor of plaintiff JW Gaming on its cause of action for breach of contract as stated in the order filed January 21, 2020 (Dkt. No. 178) and the order filed January 14, 2021 (Dkt. No. 278), entering judgment and dismissing claims." Dkt. No. 279.

As a result, neither party's position now is correct. In its motion for judgment on the pleadings on the breach of contract claim, JW Gaming did not seek to hold any party except PPN or the Gaming Authority liable. And PPN is incorrect that the Gaming Authority's liability was not adjudicated. Judgment on the pleadings was sought against it and entered. There was no argument at the time that it would not be liable along with PPN. The Entity Defendants' attempts to show otherwise are post-hoc attempts to relitigate that liability; they depend on substantive interpretations of the Note. Those arguments are settled and there is nothing warranting reconsideration. As the provisions of the Note make clear, the Note was obligatory on and enforceable against the Gaming Authority. In fact, the Entity Defendants' argument on this front essentially admits this, as it highlights over and over that the PPN and Gaming Authority—but not other Entity Defendants—were those adjudicated to be liable. *See* Recon. Reply 4–6.

Since it appears to be necessary, I clarify that PPN and the Pinoleville Gaming Authority were found liable for the breach of contract. The liability of the other Entity Defendants, such as of alleged successors and assigns, was not litigated—nor was their status as successors or assigns.[10]

The motion for reconsideration is DENIED.

## II.     MOTION TO QUASH OR RECALL THE WRIT OF EXECUTION

Two of the three arguments in the motion to quash or recall the writ of execution repeated those in the motion to reconsider: (1) the Limitation on Recourse provision prohibits collection and (2) determining otherwise was beyond the scope of what was at issue and pleaded. For the reasons explained above and in the JOP Order, I reject those arguments.

The remaining argument is that the writ is invalid because it is directed "[t]o the sheriff or marshal of the County of: US District for the Northern District of California" and informs "any registered process server: You are authorized to serve this writ only in accordance with CCP 699.080 or CCP 715.040." Dkt. No. 288. PPN contends that federal law only permits the U.S. Marshals Service ("USMS"), not sheriffs or process servers, to execute the writ.

FRCP 69 governs execution of judgment. Among other things, it provides that "[a] money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1).

PPN points to 28 U.S.C. § 566 as a "federal statute [that] governs" under FRCP 69. That statute establishes the powers and duties of the USMS and falls into a set of provisions that establish and govern the USMS itself. *See* 28 U.S.C. §§ 561, *et seq.* The provision PPN relies on states, "[e]xcept as otherwise provided by law or Rule of Procedure, the United States Marshals

---

[10] After that, JW Gaming moved (twice) to certify the judgment as final and moved to dismiss its other claims. The abstract of judgment is only against PPN and the Gaming Authority. Dkt. No. 281. The writ of execution was issued only against PPN. Dkt. No. 288. Accordingly, it does not appear that JW Gaming has attempted to use those enforcement mechanisms against parties that were not adjudicated to be liable.

17

1  Service shall execute all lawful writs, process, and orders issued under the authority of the United
2  States, and shall command all necessary assistance to execute its duties." 28 U.S.C. § 566(c).

3  The first clause in the writ to which PPN points does not even arguably violate Section
4  566(c). It states that it is directed to the "Marshal *or* Sheriff" and it lists the "County" as this
5  judicial district. *Id.* (emphasis added).[11] The Northern District of California has no sheriff, but it
6  does have a United States Marshal. *See* 28 U.S.C. § 561(c); *see also* 28 U.S.C. § 564 ("United
7  States marshals, deputy marshals and such other officials of the [USMS] as may be designated by
8  the Director, in executing the laws of the United States within a State, may exercise the same
9  powers which a sheriff of the State may exercise in executing the laws thereof."). As a result, the
10 writ *is* directed to the USMS to execute.

11 The second clause—about process servers—does not mean the writ violates Section 566(c)
12 (or FRCP 69) because it states that registered process servers may "serve this writ only in
13 accordance with" California Code of Civil Procedure Sections 699.080 and 715.040. Those
14 provisions govern the conditions under which a process server (instead of a marshal or sheriff)
15 may lawfully serve or levy a writ of execution. A registered process server may enforce the
16 writ—and may only enforce the writ—in accordance with California state law. As FRCP 69
17 makes clear, state law governs execution. And as 28 U.S.C. § 566(c) says, the USMS executes
18 writs "[e]xcept as provided by law or Rule of procedure." Accordingly, because process servers
19 may serve the writ under conditions provided by state law, the writ does not contradict Section
20 566(c).

21 The motion to quash or recall the writ of execution is DENIED.

## CONCLUSION

23 The motions for reconsideration and to quash or recall the writ of execution are DENIED.
24 To the extent any prior order or the judgment requires clarification about which parties are liable,
25 they are CLARIFIED as follows: Judgment on the breach of contract claim was entered only

---

[11] PPN passingly argues that the writ is invalid because it lists a federal judicial district rather than a state county next to "County." Quash Mot. 5. The form is issued by the state Judicial Council for state court use and "County" refers to the state court's county of jurisdiction; in federal court, jurisdiction is by district. This argument is borderline frivolous.

against the Pinoleville Pomo Nation and the Pinoleville Gaming Authority, not other parties.

**IT IS SO ORDERED.**

Dated: March 26, 2021

William H. Orrick
United States District Judge