UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JW GAMING DEVELOPMENT, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ANGELA JAMES, et al.,<br><br>Defendants. | Case No. 18-cv-02669-WHO (RMI)<br><br>**ORDER RE: DEFENDANTS' MOTION TO QUASH OR MODIFY A SUBPOENA; AND FOR ATTORNEYS' FEES**<br><br>Re: Dkt. No. 324 |

On April 29, 2021, various matters pertaining to post-judgment discovery and enforcement of judgment issues were referred to the undersigned for resolution (*see* dkt. 328). Among those matters is a motion (hereafter, "Motion") to quash or modify a subpoena that Plaintiff and Judgment Creditor JW Gaming LLC served on WestAmerica Bank for various bank records, from 2016 to the present, and pertaining to the accounts of the Pinoleville Pomo Nation ("Tribe"), and certain subordinate entities, in order to aid JW Gaming in the execution of its $8.5 million judgment. *See* Pl.'s Opp. (dkt. 337) at 2. The Motion (dkt. 324) presents several overlapping arguments in support of its request to quash or modify the subpoena in question, coupled with a briefly articulated request for the award of an as-of-yet undetermined amount of attorneys' fees. *See id.* at 3-7. For the reasons described below, the Motion is denied.

## BACKGROUND

The pending dispute regarding the propriety of this subpoena is set against a backdrop that includes the following facts: (1) on January 21, 2020, the court awarded JW Gaming judgment on its breach of contract claim (*see* Order (dkt. 178) at 19); (2) on January 14, 2021, the court entered an order (dkt. 278) granting JW Gaming's motion for entry of final judgment in the amount of

1 approximately $8.5 million; and, (3) on January 22, 2021, Judgment (dkt. 279) was entered in
2 accordance with the two aforementioned orders. Thereafter, an Abstract of Judgment (dkt. 281)
3 and Writ of Execution (dkt. 288) were issued, both of which reflected the judgment amount as
4 $8,501,312.06. Then, in early March of 2021, "[a]fter the U.S. Marshal . . . levied six bank
5 accounts of the Tribe at WestAmerica Bank containing approximately $190,000 in all, the Tribe
6 on March 17 filed a claim of exemption," (*see* Pl.'s Opp. (dkt. 337) at 4) which has been referred
7 to the undersigned and which will be the subject of an evidentiary hearing set for July 1, 2021
8 (dkt. 349). Regarding the Tribe's claim of exemption ("COE") and the need for the
9 aforementioned evidentiary hearing, Judge Orrick found that the Tribe had not "provided any
10 documentary evidence in support of its argument that the accounts [in question] only contain
11 exempt funds other than [a] declaration" from the Tribe's Chief Financial Officer. *See* Order (dkt.
12 332) at 7. Accordingly, the COE dispute includes a factual dispute about "whether the Subject
13 Accounts actually contain such [exempted] funds and, if so, to what extent." *Id*. at 3.

14       A few weeks earlier, JW Gaming served the Tribe with a notice of its intent to serve a
15 subpoena. *See* Exh-1 to Defs.' Mot. (dkt. 324-1) at 2. The Notice itself was signed (by Plaintiff's
16 counsel), it was dated (April 6, 2021), and it informed the recipients "that on April 9, 2021, or as
17 soon thereafter as service may be effected [that] Plaintiff . . . intends to cause each of the
18 subpoenas enclosed herein to be served" on the custodian of records for WestAmerica Bank
19 ("Bank") located on Harbor Drive in Sausalito, California. *Id*. Attached to Plaintiff's Notice was a
20 copy of the subpoena itself, along with certain details and definitions specifying that records were
21 sought (from January 1, 2016, through the date of response) from seven specified accounts
22 belonging to the Tribe, and one account belonging to the Pinoleville Business Board. *Id*. at 3-8.
23 The attached subpoena commanded the bank to produce the above-described information at an
24 address in San Francisco no later than 11:00 am on April 27, 2021. *Id*. at 3. The only information
25 that had not been filled-in on the subpoena form when it was served on Defendants' counsel along
26 with the signed and dated Notice was Plaintiff's counsel's signature and the date. *Id*.

27       Two days after serving the Notice of this subpoena on counsel for the Tribe, Plaintiff's
28 counsel served written post-judgment discovery requests on the Tribe on April 8, 2021 (including

2

1 document requests and interrogatories) – however, this endeavor did not prove to be very fruitful

2 because, on May 8, 2021, "the Tribe responded with blanket objections and refused to provide *any*

3 substantive answers or documents," as a result of which, Plaintiff notes "the importance of JW

4 Gaming obtaining full and complete third-party records, like the WestAmerica [B]ank records at

5 issue here." Pl.'s Opp. (dkt. 337) at 5 n.2 (emphasis in original). Meanwhile, three days after

6 service of the aforementioned Notice on counsel for the Tribe, Plaintiff served its subpoena on the

7 Bank on April 9, 2021. *Id*. at 5. The following day, on April 10, 2021, the Bank sent

8 correspondence so as to inform the Tribe that "the Bank has been served with a subpoena, a copy

9 of which is attached . . . [and which] orders the Bank to disclose certain information about you

10 which may be contained in the Bank's records." *See* Exh-2 to Defs.'s Mot. (dkt. 324-2) at 1. As an

11 attachment to this letter, the Bank included a copy of the subpoena in question – which was signed

12 by Plaintiff's counsel and was dated April 9, 2021. *See id*. at 2-3. Thereafter, the Tribe took no

13 action regarding this subpoena until filing the instant motion on April 26, 2021, "seventeen days

14 after the subpoena was served on the bank and twenty days after JW Gaming served notice on the

15 Tribe . . . [m]eanwhile, Westamerica Bank had already produced the records to JW Gaming before

16 the [Motion to Quash] was filed." Pl.'s Mot. (dkt. 337) at 2, 5. Apparently, instead of seeking to

17 timely challenge this subpoena, the Tribe has been otherwise engaged in trying to seemingly undo

18 the judgment entered against it in this case by instituting a lawsuit in its own tribal court against

19 JW Gaming and its counsel and accusing them of securing an "invalid and void" judgment in this

20 court, while at the same time, "six individuals who control the Tribe have filed suit in Sacramento

21 County Superior Court against JW Gaming, two of its representatives [], and its law firm and

22 attorneys of record in this action . . . alleg[ing] JW gaming and its counsel maliciously prosecuted

23 the fraud and RICO claims before this court." *Id*. at 5, 6. In any event, the Tribe now seeks an

24 order quashing "the improper" subpoena wherein the court would order Plaintiff "to destroy or

25 return to the Bank all documents received prematurely from the Bank, while also awarding

26 attorney's fees to the moving parties by way of separate motion." Defs.' Reply (dkt. 338) at 2.

27 //

28 //

3

**DISCUSSION**

The Motion begins with an introduction, followed by a statement to the effect "that there are six primary issues to be resolved," following which, the Tribe asks six rhetorical questions that it contends "should be answered in the affirmative."[1] *See* Defs.' Mot. (dkt. 324) at 3-4. Those six questions ask: (1) whether a complete copy of the subpoena was served on all parties prior to service on the Bank; (2) whether Plaintiff can obtain privileged, confidential and private banking records regarding parties against whom there is no writ of execution; (3) whether the subpoena is overbroad and seeks confidential, privileged, and private financial banking records from the non-debtors as supposed affiliates and subordinates of the Tribe, even though such allegations against them were dismissed with prejudice; (4) whether the subpoena is overbroad and seeks privileged, confidential and private financial banking records regarding all of the moving parties for a period of five years, which is not reasonably calculated to determine the current assets of the judgment debtors; (5) whether Plaintiff and their counsel took reasonable steps to avoid imposing undue burden and expense on the moving parties through their shotgun subpoena that seeks records from dismissed non-debtors and records for such a large period of time; and (6) whether the moving parties should be awarded their attorney's fees and costs in obtaining the relief requested therein. *Id*.

By way of factual support for its arguments, not including the block-quoting of provisions from the subpoena, the Motion limits itself to just a few sentences, all but one of which describe the contents of documents that are part of the record in this case. *See id*. at 4-5. In the first four of such sentences, the Tribe briefly describes the Complaint, the Judgment, and the Writ of Execution. *See id*. at 4 (the gist of which is that judgment was entered against the Tribe and the Writ of Execution named only the Tribe). The next eight sentences describe the subpoena (the gist of which is that the subpoena seeks financial records from accounts belonging to both the Tribe and the subordinate entity known as the Pinoleville Business Board, and that the served subpoena was signed and dated by Plaintiff's counsel but the noticed copy was unsigned and undated). *Id*.

---

[1] The Tribe appears to mistaken as to the phraseology as to the first two of the six rhetorical questions because answering those two in the affirmative would lend support to the denial of the relief being sought.

4

Next, the Tribe block quotes certain provisions from the subpoena while using bold-faced typography for much of the quoted material. *Id*. at 4-5. The final sentence in the fact statement portion of the motion simply relates that counsel for the Tribe sent Plaintiff's counsel a meet and confer letter on April 27, 2021. *Id*. This is the entirety of the factual allegations that form the foundation for the Tribe's "six primary issues to be resolve by the Court in deciding this motion." *See id*.

The argument section of the Motion is similarly underdeveloped, and consists essentially of seven numbered sentences which are contended, in conclusory fashion, to constitute "seven instances of violations of Rule 45," but without any substantive argument, explanation, or so much as a single citation to any authority other than Rule 45 itself. *See id*. at 5-7.[2] The first of these supposed instances where the Notice and service of this subpoena is alleged to have violated Rule 45 rests on the Tribe's contention that the Notice, served on counsel for the Tribe on April 6, 2021, was defective because the attached subpoena, although complete in all respects, lacked the signature of Plaintiff's counsel and a date. *See* Defs.' Mot. (dkt. 324) at 5. For starters, it cannot be reasonably contended that the April 6th Notice did not in fact impart notice to the Tribe regarding the imminent service of this subpoena simply because the attached subpoena did not include Plaintiff's counsel's signature and a date when the Notice included both a date and a signature, as well as the date on which the subpoena would be served. While <u>*actual*</u> abuse of the subpoena process harms both opposing counsel and public confidence in the judicial system, it is important to note that the purpose behind Rule 45's notice requirement is to provide opposing counsel an

---

[2] The Motion's passing references to these seven numbered assertions of error, devoid of any substantive argument, support, or citation to authority technically do not merit any findings and holdings because these assertions could very well be deemed as abandoned. *See e.g.*, *United States v. Loya*, 807 F.2d 1483, 1487 (9th Cir. 1987) (stating that issues raised in a brief which are not supported by legal argument are deemed abandoned); *United States v. Lecroy*, 822 F. App'x 968, 974 n.6 (11th Cir. 2020) ("Because a passing reference in a brief without substantive legal argument is insufficient to preserve an issue, LeCroy has abandoned this argument."). Further, any suggestion that this maxim is only applicable in the appellate context would be incorrect. *See e.g.*, *Lias v. Cnty. of Alameda*, No. C 05-00317 SI, 2006 U.S. Dist. LEXIS 101376, at *19 n.5 (N.D. Cal. Jan. 2, 2006) ("the Court concludes that to the extent Lias ever asserted such discrimination, she has abandoned it by failing to advance any legal argument in support this claim."); *Diamond Pleasanton Enter. v. City of Pleasanton*, No. 12-cv-00254-WHO, 2014 U.S. Dist. LEXIS 29782, at *6 (N.D. Cal. Mar. 6, 2014) ("Diamond's opposition brief does not respond to Pleasanton's argument and Diamond's as-applied challenge is therefore abandoned."). That said, the undersigned will nevertheless address the merits of each of these unsupported assertions of error.

opportunity to object to the subpoena. Neither in the Motion, nor at oral argument, did counsel for the Tribe even suggest that he lacked either notice, or an opportunity to object – instead, at oral argument and in the Motion, counsel for the Tribe has suggested that since Rule 45 requires attachment of a copy of "the" subpoena to the notice, any deviation whatsoever from what would be an exact facsimile, however immaterial, somehow invalidates the subpoena. Instead, the undersigned finds that when opposing counsel has notice and sufficient time to object, counsel is not prejudiced by even a real violation of Rule 45's requirement of notice prior to service, let alone a trumped up "violation" that is no violation at all.

In response, Plaintiff contends that any error or violation of the strictures of Rule 45 in this context was harmless and non-prejudicial because the Tribe received the notice mandated by the rule, and because the Tribe had ample time to object to the subpoena. *See* Pl.'s Opp. (dkt. 337) at 8. The Tribe replies by stating that "Plaintiff cites no authority to support its 'harmless error' argument that sounds like the rule of appellate procedure that allows courts of appeal to disregard harmless errors below." Defs.' Reply (dkt. 338) at 3. Of course, this assertion is incorrect because the necessity of showing prejudice or harm as a prerequisite for being eligible for any number of a veritable constellation of remedies in district courts permeates our jurisprudence.[3] The Tribe then

---

[3] *See, e.g.*, *Fujikura Ltd. v. Finisar Corp.*, No. 15-mc-80110-HRL (JSC), 2015 U.S. Dist. LEXIS 135871, at *12 (N.D. Cal. May 14, 2015) ("Here, Nistica has suffered no prejudice from any technical violation of Rule 45(b)(1). Nistica received notice of the subpoenas concurrently with Finisar's first attempt at service—in any event, before the subpoenas' existence was communicated to Fujikura."); *see also Carrillo v. B&J Andrews Enters.*, No. 2:11-cv-01450-MMD-CWH, 2013 U.S. Dist. LEXIS 10210, 2013 WL 310365, at *2 (D. Nev. Jan. 24, 2013). Thus, "when opposing counsel have notice and sufficient time to object, they are not prejudiced by a violation of Rule 45 notice requirement." *Vondersaar v. Starbucks Corp.*, No. C 13-80061 SI, 2013 U.S. Dist. LEXIS 65842, at *5-6 (N.D. Cal. May 8, 2013) ("The Court finds that Starbucks has suffered no prejudice from the violation of Rule 45(b)(1). It was served notice of the subpoenas only a few days after the service of the subpoenas on the third parties. The production date was set for February 1, 2013, allowing defendants ample time to object to the subpoena."); *see also Butler v. Biocore Med. Technologies, Inc.*, 348 F.3d 1163 (10th Cir. 2003) (finding that plaintiffs' receipt of notice allowing them 10 days to object to the subpoena was sufficient); *United States v. Santiago-Lugo*, 904 F. Supp. 43, 47 (D.P.R. 1995) ("This precautionary measure has been inserted in the rule to prevent *ex-parte* abusive and illegal use of the subpoena power. The purpose of this notice is to afford other parties, including the government in the civil forfeiture action, the opportunity to object to the production or inspection."); *Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 667 (D. Kan. 1998) ("the purpose behind the notice requirement is to provide opposing counsel an opportunity to object to the subpoena"). Therefore, contrary to counsel's contention that harmlessness is a concept whose application is limited to the appellate context, in the absence of prejudice, courts in this District have declined to quash a subpoena based on assertions of inconsequential violations of Rule 45's notice requirements. *See e.g.*, *Miller v. Ghirardelli Choc. Co.*, No. C 12-4936, 2013 U.S. Dist. LEXIS 179917, 2013 WL 6774072, at *5

adds a puzzling suggestion in positing that maybe the subpoena "was not signed and dated so that [JW Gaming] could alter it if it chose," however, this contention is rendered meaningless by the fact that the Bank corresponded with counsel for the Tribe on the day after the subpoena was served (April 10, 2021), attaching the copy of Plaintiff's subpoena (which was unaltered, properly signed, and properly dated); and, the period of time between the date the subpoena was served (April 9, 2021) and when compliance was due (April 27, 2021) afforded counsel for the Tribe ample opportunity to object – an opportunity that counsel chose to forgo until the tardy filing of this Motion weeks later. Accordingly, even with the most liberal construction, the undersigned can find no merit in the Tribe's suggestion that there is any error, let alone a consequential error, in the omission of a signature and date on the subpoena form that was attached to the Notice served on April 6, 2021.

The Tribe's second assertion of error (Notice was served only on Debtors, not the non-Debtors) and the fourth assertion of error (subpoena seeks information related to both Debtors non-Debtors), which involve substantial overlap, are supported with neither factual support nor legal argument; instead, these assertions merely contend that Plaintiff "served the Notice on the Debtors only through counsel[,] not any of the Non-Debtors, though all parties whose accounts are being subpoenaed should have been served under Rule 45(a)(4)." Defs.' Mot. (dkt. 324) at 6. Since the subpoena sought account records for the Tribe's accounts, as well as one account belonging to the Pinoleville Business Board, Plaintiff responds that the April 6th Notice was in fact served on both Eduardo Roy as well as Padraic McCoy (who was later granted leave to withdraw from the case), and because the two aforementioned attorneys were counsel of record for all tribal Defendants (and Mr. Roy reportedly continues to represent all tribal Defendants), Plaintiff submits that there is no merit to the Tribe's second assertion of error. *See* Pl.'s Opp. (dkt. 337) at 8. In reply, counsel for the Tribe (Mr. Roy) states that "when Plaintiff served the notice and Subpoena on Mr. Roy, he had effectively ceased representing the dismissed Non-Debtors

---

(N.D. Cal. Dec. 20, 2013); *see also Vondersaar*, 2013 U.S. Dist. LEXIS 65842, 2013 WL 191546, at *2 (declining to quash subpoenas where notice was not given until 3 days after service because defendant suffered no prejudice due to the fact that defendant independently learned of the subpoenas soon after they were issued).

7

months earlier[,] [a]nd Plaintiff has provided no evidence showing that Mr. Roy agreed to accept service for these dismissed parties . . . [and thus] [t]he improperly served Subpoena should be quashed for this additional reason." Defs.' Reply (dkt. 338) at 4. However, with these arguments, counsel for the Tribe has boxed himself into a corner because it is well established that he cannot ordinarily assert the rights of parties that he claims not to represent (absent specific circumstances not present here). This is so because it is well established that in order to have standing to bring a claim in federal court a party must have a personal stake in the outcome. *See, e.g., Hollingsworth v. Perry*, 570 U.S. 693, 705-06 (2013). This prerequisite applies with equal force to discovery disputes. *See Am. Broadcasting Cos., Inc. v. Aereo, Inc.*, No. 12-mc-80300 RMW (PSG), 2013 U.S. Dist. LEXIS 51894, 2013 WL 1508894, at *2 (N.D. Cal. Apr. 10, 2013). Thus, for example, "a party moving to quash a non-party subpoena has standing when the party has a personal right or privilege in the information sought to be disclosed." *Knoll, Inc. v. Moderno, Inc.*, No. 12-mc-80193 SI, 2012 U.S. Dist. LEXIS 138497, 2012 WL 4466543, at *2 (N.D. Cal. Sept. 26, 2012). Conversely, "[a] party does not have standing to quash a subpoena on the basis that the non-party recipient of the subpoena would be subjected to an undue burden when the non-party has failed to object." *Kremen v. Cohen*, No. 11-cv-05411 LHK (HRL), 2012 U.S. Dist. LEXIS 84328, 2012 WL 2277857, at *3 (N.D. Cal. June 18, 2012). That said, courts have recognized a limited exception to this rule, allowing individuals to assert the rights of others when the party asserting the right has a close relationship with the person who possesses the right <u>and</u> there is a hindrance to the possessor's ability to protect his or her own interests. *See Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). Here, counsel for the Tribe does not argue these points (i.e., that there is such a close relationship with the other parties in question, <u>and</u> that they are unable to protect their own interests). Accordingly, there is no merit to these assertions of error.

Regarding the breadth, scope, and reach of this subpoena – as challenged in the Tribe's third, fifth, and seventh assertions of error, as well as being mentioned in the fourth – the Tribe submits that the subpoena is improper because the Writ of Execution named only the Tribe but the subpoena seeks records related to the Tribe's accounts, as well as those of the Pinoleville Business Board, and that the reach of the subpoena is too broad because it inquires about debts, loans, and

credit lines in addition to tangible assets. *See* Defs.' Opp. (dkt. 324) at 6. In this regard, the Tribe conflates the use of a subpoena in service of gathering information in the post-judgment context, with the actual execution of a judgment through the levying of an account. The Tribe then complains that Plaintiff is "seeking to subpoena bank records without a Writ of Execution having been issued against any of the moving parties except the Tribe . . . [thus] improperly seeking to enforce the Judgment without having obtained a proper writ of execution except as to the Tribe," and that the "other parties listed in the Subpoena are not subject to a writ of execution and enforcement of judgment." *Id*. (citing Fed. R. Civ. P. 69). However, the Tribe's reliance on Rule 69 is misplaced as it clearly provides that "[i]n aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery <u>*from any person*</u> – including the judgment debtor – as provided in these rules . . ." Rule 69(a)(2) (emphasis added). Therefore, contrary to the Tribe's characterization, "[t]he rules governing discovery in postjudgment execution proceedings are quite permissive." *Republic of Arg. v. NML Capital, Ltd.*, 573 U.S. 134, 138-39 (2014). "The purpose of the postjudgment proceedings is to discover assets that might be available to satisfy the judgment, and, following discovery, to execute on those assets." *JPMorgan Chase Bank, N.A. v. Asia Pulp & Paper Co., Ltd.*, 707 F.3d 853, 868 (7th Cir. 2013); *see also Ryan Investment Corp. v. Pedregal de Cabo San Lucas*, 2009 U.S. Dist. LEXIS 118337, 2009 WL 5114077, at *1 (N.D. Cal. Dec. 18, 2009) (post-judgment discovery may be used "to identify assets that can be used to satisfy a judgment" and "to discover concealed or fraudulently transferred assets"). It is for this reason that courts routinely and repeatedly stress that the scope of post-judgment discovery is "very broad." *See e.g., United States v. Conces*, 507 F.3d 1028, 1040 (6th Cir. 2007) (quoting *Federal Deposit Ins. Corp. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995)); *see also Comerica Bank v. Esshaki*, 314 F. Supp. 3d 832, 833 (E.D. Mich. 2018); *see also Gen. Star Nat. Ins. Co. v. Administratia Asigurarilor de Stat*, 713 F. Supp. 2d 267, 286 n.9 (S.D. N.Y. 2010). Therefore, not only is the scope of this category of discovery "very broad," but "the presumption should be in favor of full discovery of any matters arguably related to [the creditor's] efforts to trace [the debtor's] assets and otherwise to enforce its judgment." *Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 431 n.9 (8th Cir. 1998). In light of this, "the

9

1  judgment creditor must be given the freedom to make a broad inquiry to discover hidden or
2  concealed assets of the judgment debtor." *Caisson Corp. v. County West Building Corp.*, 62
3  F.R.D. 331, 334 (E.D. Pa. 1974). As explained by Judge Seeborg, even though Rule 69 discovery
4  may resemble the proverbial fishing expedition, "a judgment creditor is *entitled* to fish for assets
5  of the judgment debtor." *Ryan Inv. Corp.*, 2009 U.S. Dist. LEXIS 118337, 2009 WL 5114077, *4
6  (N.D. Cal. Dec. 19, 2009) (emphasis in original). In light of these standards, the Tribe's arguments
7  to the contrary are unpersuasive.

As to the sixth assertion of error, the Tribe contends that the subpoena's temporal scope is also too broad in that it seeks records "going back almost five and a half years now even though the Judgment they are seeking to enforce was just entered on January 22, 2021 as to current assets, rendering the categories impermissibly broad." Defs.' Mot. (dkt. 324) at 6. Notably, the Tribe cites no authority that tethers permissible post-judgment discovery to the date on which the judgment was entered. Meanwhile, Plaintiff notes that "[t]he timeframe, and records requested, will permit JW Gaming to, among other things, examine how the Tribe may have disposed of its assets before being sued by JW Gaming and compare that with any dispositions after this suit was commenced and after judgment was entered, which may help JW Gaming identify potentially fraudulent transfers and assets the Tribe may be concealing." Pl.'s Opp. (dkt. 337) at 9. In response, the Tribe largely reiterates the notion that "the five-and-a-half-year period is excessive, and the types of documents sought are not reflective of current assets but other irrelevant matters." Defs.' Reply (dkt. 338) at 6-7. The undersigned disagrees and, as Judge Seeborg put it, Plaintiff is "entitled" to go on a fishing expedition in this context and the law does not limit Plaintiff to merely inquiring into the Tribe's current state of tangible assets; instead, Plaintiff "must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor." *Caisson Corp.*, 62 F.R.D. at 334.

//
//
//
//

**CONCLUSION**

Accordingly, for the above-stated reasons, the Tribe's Motion to Quash or Modify Plaintiff's Subpoena (dkt. 324) is **DENIED**. As to its request for attorneys' fees for bringing this Motion, the Tribe submits that Plaintiff's failure to address the fee request issue amounts to "a tacit or implied concession that fees should be awarded if the Subpoena is quashed, as it should be." Defs.' Reply (dkt. 338) at 8. However, given that the Tribe was unsuccessful in that endeavor, the request for fees is herewith **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: June 7, 2021

ROBERT M. ILLMAN
United States Magistrate Judge