UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

JW GAMING DEVELOPMENT, LLC,

    Plaintiff,

v.

ANGELA JAMES, et al.,

    Defendants.

Case No. 18-cv-02669-WHO   (RMI)

**ORDER RE: DISCOVERY DISPUTE**

Re: Dkt. Nos. 354, 355

    Now pending before the court are a pair of unilaterally-filed discovery dispute letter briefs (dkts. 354, 355) that can best be characterized as Plaintiff JW Gaming's motion to compel Defendant Pinoleville Pomo Nation ("Tribe") to provide responses and to tender production pertaining to the first sets of Plaintiff's post-judgment interrogatories and requests for production.[1] As stated below, Plaintiff's request to compel this discovery is granted and the Tribe's objections are overruled.

    As mentioned in a recent order (dkt. 352) denying the Tribe's request to quash a subpoena, on April 29, 2021, the presiding judge referred various matters pertaining to post-judgment discovery and enforcement of judgment to the undersigned for resolution (*see* dkt. 328). Plaintiff and the Tribe are at an impasse concerning 11 interrogatories (*see* (dkt. 354-3) at 3-4) and 13

---

[1] It should not go without mention that the currently pending letter briefs are not compliant with the provisions set forth in the General Standing Order of the undersigned. This is particularly disappointing because the Parties were specifically directed (*see* Order (dkt. 348) at 1) to take care to comply with those provisions. Apparently, counsel for the Tribe was for some unarticulated reason unable to meet the deadline for this filing, which caused the parties to have to file separately and which also caused counsel for the Tribe to take the liberty of singlehandedly exceeding the total combined page allowance for what would be a joint filing and that is set forth in the General Standing Order. The court will excuse these violations this time, however, let the Parties be forewarned that, going forward, the court will be less forgiving.

requests for production (*see* (dkt. 354-1) at 4-5). In short, the Tribe has refused to respond to any of the propounded interrogatories while refusing to produce any of the requested information, all on the basis of a number of generalized objections as well as thirteen "specific" objections that appear to be only applicable to the requests for production. *See generally* Def.'s Ltr. Br. (dkt. 355) at 1-8. By way of introductory statements, the Parties frame their respective positions in a manner that, by now, has become abundantly familiar to the court. Plaintiff submits that "[t]he Tribe is seeking to obstruct JW Gaming's enforcement of its $8.5 million judgment . . . by, among other things, refusing to produce any discovery . . . [while resting on] responses [that] consist of blanket, boilerplate objections declining to provide even basic information such as identifying the locations of the Tribe's bank accounts, entities in which the Tribe has any beneficial interest, and substantial assets that the Tribe has acquired since 2020." Pl.'s Ltr. Br. (dkt. 354) at 1. Further, Plaintiff submits that it has learned from certain bank records that it has gathered through the subpoena process that "the Tribe is actively moving money to new accounts at a small bank in Denver, Colorado, and moving money in and out of [] [the] 'Pinolevolle Pomo Nation Circle of Nations Lending Account,' . . . a vehicle the Tribe has formed to make high-interest consumer loans via the internet . . ." *Id*. Meanwhile, in addition to expressing certain concerns about the "temporal and substantive scope" of the discovery requests in question, the Tribe continues to reiterate its contention that it "has not waived, nor will it waive" its sovereign immunity. *See* Def.'s Ltr. (dkt. 355) at 1.

Of course, this argument has already been rejected several times in the course of this case. First, Judge Orrick held (in October of 2018) that that Defendants' motion to dismiss was due to be denied because, *inter alia*, "the Tribal Defendants are not entitled to sovereign immunity." *See Order Denying Defendants' Motion to Dismiss* (dkt. 55) at 1. Then, the Tribal Defendants took an interlocutory appeal but failed to upset that holding. *See* Mem. Op. (dkt. 123) at 2-3. Neither did the Tribal Defendants succeed in convincing the Supreme Court to upset that holding (*see* dkts. 165, 183). Thereafter, leaving no room for any doubt, in entering judgment in favor of Plaintiff's breach of contract claim, Judge Orrick held that "[t]he Tribe clearly and unequivocally waived its sovereign immunity with respect to the instant action." *See Order on Motion for Summary*

2

*Judgment* (dkt. 178) at 12. In similar fashion, the Tribe also suggests that "the Limitation of Recourse provisions [in the Promissory Note at issue in this case] plainly prohibit JW from discovering non-gaming revenue assets[] [a]nd since it is undisputed that there are no gaming revenues, because the Tribe has no casino, there are no assets to discover." *See* generally Def.'s Ltr. Br. (dkt. 355) at 3-5. However, the Tribe's interpretation of this contract provision has also been already litigated and rejected. In January of 2020, Judge Orrick found that the language of the Promissory Note in question and the undisputed facts "show that the Tribe has breached the parties' agreement." *Order on Motion for Summary Judgment* (dkt. 178) at 8. In that context, the Tribe argued (as is the case again here) that "there can be no liability for failure to make payment on the Note because there are no casino revenues from which to pay." *Id*. In rejecting this argument, Judge Orrick explained that in order "[t]o find that JW Gaming is entitled to payment only in the event that casino revenues exist would render meaningless the alternate maturity date and the 'immediately due and payable' language. The interpretation I adopt is the only one that gives effect to the Maturity Date provisions of the Note." *Id*. at 9. Accordingly, to the extent that the Tribe seeks to rely on objections based in already-rejected arguments for resisting the post-judgment discovery at issues here, such as its assertions of sovereign immunity, and its assertions regarding its already-rejected interpretation of the Promissory Note's Limitation of Recourse provisions, those objections represent nothing more than an attempt to replow the same ground (*see* Def.'s Ltr. Br. (dkt. 355) at 2-5) and are therefore **OVERRULED**. Additionally, since these are the only arguments upon which the Tribe specifically relies in refusing to answer the 11 propounded interrogatories, and since the undersigned's review of those interrogatories (*see* Exh-3 to Pl.'s Ltr. Br. (dkt. 354-3) at 2-4) leads the undersigned to independently conclude that the interrogatories are narrowly tailored and reasonably calculated to secure relevant and necessary information that would aid Plaintiff in searching for and tracing the Tribe's assets in its effort to execute the Judgment entered in its favor, Plaintiff's request to compel the Tribe to provide answers to the propounded interrogatories is **GRANTED** and the Tribe shall do so on or before

3

1   12:00 noon on Wednesday, June 16, 2021.[2]

2   As to Plaintiff's 13 requests for production ("RFP") (*see* Exh-1 to Pl.'s Ltr. Br. (dkt. 354-1) at 2-5), the Tribe has provided 10 point-for-point sets of undeveloped boilerplate objections in its letter brief (*see* Def.'s Ltr. Br. (dkt. 355) at 5-8) which the undersigned will address individually. However, at the outset, the undersigned will note that the Tribe has failed to lodge any specific objections to RFP Nos. 3, 4, and 11. *See generally id*. at 1-8. Accordingly, Plaintiff's requests to compel production of the materials[3] described in RFP No. 3 (documents reflecting indebtedness in excess of $50,000 as of January 1, 2021), RFP No. 4 (various financial and accounting records), and RFP No. 11 (certain types of audit reports) are **GRANTED** and those materials shall be produced on or before 12:00 noon on Wednesday, June 16, 2021.

As to the remainder, RFP No. 1 seeks communications between the Tribe and any creditors from January 1, 2020, up to the date of production – to which the Tribe objects by arguing that the request "is overbroad and improperly seeks private information." *Id*. at 5. The undersigned

---

[2] It should be noted that the Tribe presented more specific objections directly to Plaintiffs when it refused to answer the interrogatories that were propounded. *See generally* Exh-4 to Pl.'s Ltr. Br. (dkt. 354-4) at 2-4. However, in its unilaterally filed letter brief (dkt. 355) the Tribe abandoned those objections and focused its opposition to answering Plaintiff's letter brief (at least as to the interrogatories) in more general terms that focus on its assertions that seek to re-litigate its sovereign immunity and "Limitations of Recourse" arguments (*see generally id*. at 1-8). It is well established that in evaluating a motion to compel, the court does not simply look to and rely on objections raised only in the response to the original discovery request. *See e.g., Olmos v. Ryan*, No. CV-17-3665-PHX-GMS (JFM), 2020 U.S. Dist. LEXIS 67701, at *4-5 (D. Ariz. Apr. 17, 2020). Instead, "[w]hen ruling upon a motion to compel, the court generally considers those objections which have been timely asserted and relied upon <u>in response to the motion</u> . . . [and] generally deems objections initially raised but not relied upon in response to the motion as abandoned. It deems objections not initially raised as waived." *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999) (emphasis supplied); *Hupp v. San Diego Cnty.*, 2014 U.S. Dist. LEXIS 52741, 2014 WL 1404510, at *7 (S.D. Cal. Apr. 10, 2014) (same); *Bryant v. Armstrong*, 285 F.R.D. 596, 604 (S.D. Cal. 2012) (addressing only the objections raised in a party's opposition to a motion to compel where the party raised multiple boilerplate objections in its initial responses to discovery requests, but did not support or explain those objections in its opposition to a motion to compel); *Dolquist v. Heartland Presbytery*, 221 F.R.D. 564, 568 n.16 (D. Kan. 2004) ("objections initially raised but not relied upon in response to a motion to compel are deemed abandoned"); *In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2010 U.S. Dist. LEXIS 130884, 2010 WL 4942645, at *3 (C.D. Cal. July 29, 2010) (same). In this regard, despite the fact that the Tribe has clearly abandoned the objections presented in its response to the interrogatories by failing to include them in its unilaterally filed letter brief (*compare* dkt. 354-4 at 2-4, *with* dkt. 355 at 1-8), the undersigned has nevertheless reviewed and considered those objections and finds them to be wholly unpersuasive and due to be overruled even had they not been so clearly abandoned.

[3] For a full description of RFP Nos. 3, 4, and 11 – *see* Exh-1 to Pl.'s Ltr. Br. (dkt. 354-1) at 4, 5.

disagrees. As recently explained, the scope of post-judgment discovery is "very broad" and there is a presumption in favor of full discovery of any and all matters that are even arguably related to Plaintiff's efforts to find or trace the Tribe's assets and to otherwise enforce its judgment. *See Order* (dkt. 352) at 9) (citing *United States v. Conces*, 507 F.3d 1028, 1040 (6th Cir. 2007); *Comerica Bank v. Esshaki*, 314 F. Supp. 3d 832, 833 (E.D. Mich. 2018); *Gen. Star Nat. Ins. Co. v. Administratia Asigurarilor de Stat*, 713 F. Supp. 2d 267, 286 n.9 (S.D. N.Y. 2010); and, *Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 431 n.9 (8th Cir. 1998)). Neither is the undersigned persuaded by the Tribe's bare mention of its privacy rights as any such concerns are adequately addressed by the protective order that was previously entered in this case (*see* dkts. 102, 104, 106). Therefore, the Tribe's objection as to RFP No. 1 is **OVERRULED**.

RFP No. 2 seeks all bank statements for each and every account owned, controlled, or held by the Tribe that are dated between January 1, 2020, and the date of production. Def.'s Ltr. Br. (dkt. 355) at 6. The Tribe responds to the effect that this request "is now overbroad and unduly burdensome as oppressive as JW's counsel has already received the banking information from WestAmerica Bank for which Tribe should not have to needlessly repeat the exercise." *Id*. Plaintiff's unilaterally filed letter brief does not seem to address this particular contention (*see* Pl.'s Ltr. Br. (dkt. 354) at 1-4) – which is precisely the reason that this court imposes a joint filing requirement for the presentation of discovery disputes (such as to foster a narrowing of the issues), however, the acrimony between these parties has reached such a fever pitch that they are unable to even coordinate their arguments to address contentions raised by one another. Thus, the Tribe's objection in this regard is **SUSTAINED in part** but only to the extent that the Tribe will not have to produce the documents from WestAmerica Bank that Plaintiff has already received through the subpoena process. In all other respects (that is, as to any *other* bank statements that have not already been received by Plaintiff as part of the WestAmerica Bank subpoena), the Tribe's objection is **OVERRULED**. In order to identify those documents already received, such as to avoid a duplication of effort and labor on the Tribe's part in producing bank statements under this RFP that Plaintiff does not already possess, counsel for the parties are **ORDERED** to meet and confer forthwith in the spirit of professionalism and collegiality that this court expects from all

1    counsel who are permitted to practice here. In this regard, and given the history of the ever

2    deepening acrimony involved in this case, counsel are encouraged to consult and faithfully

3    implement the Guidelines for Professional Conduct found on the Court's website.[4]

4          RFP No. 5 (resolutions generated, enacted, or adopted by the Tribe between January 1,

5    2017 and the date of production), RFP No. 6 (all of the Tribe's laws and ordinances), and RFP No.

6    13 (all minutes of each meeting of the Tribal Council from January 1, 2019 to the present) are

7    opposed by the Tribe based on the repeating of the same boilerplate objection relied upon in

8    resisting RFP No. 1 – that is, an assertion that the request is overbroad and seeks private

9    information. *See* Def.'s Ltr. Br. (dkt. 355) at 6, 7-8. Initially, due to the lack of any development

10   or explanation in these boilerplate objections, it is difficult to imagine how the promulgation of a

11   law or an ordinance might constitute "private information" as the Tribe suggests; nevertheless, for

12   the reasons described above, the undersigned finds that these requests are not overly broad and

13   that they fall well within the "very broad" scope of post-judgment discovery in that each request

14   appears calculated to finding or tracing the Tribe's assets, or that they are otherwise useful in

15   enforcing the Judgment. Further, any privacy concerns, legitimate or otherwise, would be

16   adequately addressed by the protective order mentioned above. Accordingly, the Tribe's

17   objections to producing material responsive to RFP Nos. 5, 6, and 13 are **OVERRULED**.

18         In opposing RFP Nos. 7 and 8 (seeking documents related to two particular

19   "reconveyances" including the associated escrow files, communications with the creditor(s), all

20   associated billing statements, and evidence of payment of the debt(s) affiliated with that

21   transaction), as well as RFP Nos. 9 and 10 (seeking a similar series of documents related to a

22   particular grant deed transaction and a short form deed of trust and assignments of rents

23   transaction, including all the associated escrow files, certain communications involved in those

24   transactions, promissory notes, evidence of indebtedness, billing statements, evidence of

25   associated payment(s), and evidence of other conveyance(s) of value made as consideration for

26   said grant deed), the Tribe simply repeats, verbatim, the same boiler plate objection again and

---

[4] *See* https://www.cand.uscourts.gov/forms/guidelines-for-professional-conduct/

6

1  again. *See id*. at 6-7. The gist of this objection is simply to contend that while the underlying
2  conveyance documents are within the scope of discovery, the request "is overbroad as to the entire
3  escrow and all communications [because] [t]he discovery should seek assets not all
4  communications and escrow documents that violate the Tribe's and third-party rights of privacy."
5  *Id*. at 6-7. The undersigned disagrees. As mentioned, the scope of post-judgment discovery is
6  "very broad" and encompasses all materials that can even arguably be suggested to be relevant to
7  the finding or tracing of assets, or to the enforcement of the judgment. Nothing in the Tribe's rote
8  reiteration of its boilerplate objection undermines the contention that the information sought in
9  RFP Nos. 7 through 10 falls within that scope. Nor has the Tribe developed its privacy contention
10 through cogent argument that might convince the undersigned that the protective order in place in
11 this case is somehow inadequate in addressing the Tribe's assertions of privacy. Accordingly, as to
12 RFP Nos. 7 through 10, the Tribe's objections are **OVERRULED**.

13 Lastly, RFP No. 12 seeks all documents relating to "financial progress reports" submitted
14 to the federal government by the Tribe in connection with the Tribe's receipt of funds under the
15 Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). *Id*. at 7. In this regard, the
16 Tribe objects to the following effect: "This category is overbroad as it has no time frame and seeks
17 information that could potentially go back decades and which is not within the proper scope of
18 discovery." *Id*. This single sentence objection is confusing – given that the CARES Act was
19 embodied in a bill passed by the 116th Congress and signed into law by the President on March
20 27, 2020, it is unclear why the Tribe suggests that financial progress reports submitted by the
21 Tribe relating to funds received under this 14-month old enactment "could potentially go back
22 decades." Contrary to the Tribe's contention that RFP No. 12 seeks information "that has no time
23 frame" and "could potentially go back decades," this objection is meritless and is **OVERRULED**.
24 //
25 //
26 //
27 //
28 //

7

**CONCLUSION**

Accordingly, in accordance with the rulings described above, the Tribe is herewith **ORDERED** to produce responsive documents and materials related to the above-discussed RFPs and responsive answers to each of Plaintiff's propounded interrogatories, on or before 12:00 noon on Wednesday, June 16, 2021.

**IT IS SO ORDERED.**

Dated: June 11, 2021

ROBERT M. ILLMAN
United States Magistrate Judge