UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JW GAMING DEVELOPMENT, LLC,

Plaintiff,

v.

ANGELA JAMES, et al.,

Defendants.

Case No. 3:18-cv-02669-WHO

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PRELIMINARY INJUNCTION, TO SHOW CAUSE, AND RESOLVING APPEAL OF DISCOVERY DISPUTE

Re: Dkt. Nos. 333, 359, 360

## INTRODUCTION

Plaintiff JW Gaming Development, LLC ("JW Gaming") obtained a judgment in this Court that defendant Pinoleville Pomo Nation ("PPN"), a federally recognized tribe, and an associated entity were liable for breaching a loan agreement by failing to pay. The matter is now on appeal and JW Gaming is attempting to enforce its judgment.

JW Gaming now seeks to enjoin a case that PPN has launched in its own Tribal Court. This type of motion is common enough; there is a robust body of caselaw in which federal courts examine the circumstances under which they may enjoin tribal court proceedings. But the underlying facts are, as far as I can tell, unprecedented.

Shortly after judgment was entered in this case, PPN constituted its Tribal Court for the first time; there is no evidence that it ever existed in any meaningful way until then. Days after the newly appointed judge issued standing orders, PPN filed a civil complaint in that Tribal Court that seeks to (1) declare the judgment issued in this case invalid, (2) limit and control—indeed, vitiate—the scope of enforcement of that judgment, and (3) impose roughly eleven million dollars in liability on JW Gaming for alleged fraud stemming from the same loan agreement here. The lawsuit names not only JW Gaming but its attorneys in this matter and the bank at which PPN

maintains accounts that was recently subpoenaed in the course of enforcement of the judgment. It is the first (and, as far as the record shows, only) case brought in the Tribal Court. Remarkably, up until the eve of the hearing on a temporary restraining order ("TRO") against the proceeding, which I ultimately denied, JW Gaming could not find publicly available information about how appear in that proceeding (despite being served with a summons), who the judge was, or what the rules were.

JW Gaming moved for an order to show cause why an injunction should not issue, which I denied. It then moved for the TRO, which I converted into a motion for a preliminary injunction once PPN's counsel committed to placing the Tribal Court proceeding on hold. That motion is now ripe for decision.

It is critical that federal courts respect tribal sovereignty and tribal court jurisdiction. Tribes are sovereign nations. Their ability to govern themselves and enjoy the full benefits of sovereignty is unquestioned. Tribal courts, as arms of the tribe, are entitled to substantial comity and deference under established federal law. I previously denied JW Gaming's motion for an order to show cause why an injunction should not issue out of these concerns. I remain vigilant about the compelling interest that PPN has in maintaining its sovereignty.

Those concerns, however, do not prevent an injunction against a Tribal Court proceeding that seeks to invalidate or interfere with the judgment entered in this Court. There are compelling interests in ensuring that enforcement of valid federal-court judgments is not interfered with, that JW Gaming is not required to litigate a lawsuit precision-engineered to invalidate and interfere with this one, and that third parties are not exposed to court orders or liability for simply enforcing a judgment or attempting to comply with the procedures for enforcing it. To the extent the lawsuit seeks to invalidate the judgment or interfere with enforcement, it is unquestionably meritless: a tribal court lacks authority to invalidate a federal court's judgments or to dictate the scope of executing that those judgments. JW Gaming has shown it is entitled to a preliminary injunction to the extent that the Tribal Court proceedings attempts to invalidate, interfere with, or thwart the judgment entered here. I possess jurisdiction to enter this injunction to protect and effectuate the judgment. The doctrine of tribal court exhaustion does not apply because PPN exercised its

sovereign power to clearly, expressly, and unequivocally waive it.

The Tribal Court proceeding also seeks to hold JW Gaming liable for fraudulently inducing PPN to enter into the contract at the heart of this dispute. I will not today enjoin the Tribal Court proceeding to the extent it seeks to litigate that claim because it is not an attempt to invalidate the judgment or thwart enforcement. Although the fraud claim is clearly related and likely improper, I do not possess jurisdiction now to enjoin it on that basis. If it still seeks to enjoin that aspect of the proceeding, JW Gaming must file a new complaint to give me jurisdiction to consider if injunctive relief is appropriate on that claim.

The motion for a preliminary injunction is granted in part and denied in part as described below. PPN and the Tribal Court are **PRELIMINARILY ENJOINED** from taking any actions in furtherance of litigating five of its six claims, as delineated in the full terms of the injunction at the end of this Order.

This Order also overrules PPN's objections to the resolution of a discovery dispute by the magistrate judge supervising post-judgment discovery.

## BACKGROUND

### I.       THE UNDERLYING DISPUTE

On January 21, 2020, I settled the parties' cross-motions for judgment on a breach of contract claim by JW Gaming. Dkt. No. 178 ("JOP Order"). In brief, I denied PPN's motion for summary judgment and granted JW Gaming's motion for judgment on the pleadings. *Id.* That issue came down to the parties' dueling interpretations of a loan agreement embodied in a Promissory Note that they entered into to fund a casino project that was never opened. *Id.* 6. JW Gaming argued that PPN breached the agreement by failing to pay when a casino was not opened within three years; PPN argued that it was only required to pay out of casino revenues. *Id.*

A year later, as the case was proceeding on other claims, I granted JW Gaming's motion to enter judgment on the breach claim and dismiss the other claims with prejudice. Dkt. No. 278. Accordingly, I entered judgment in favor of JW Gaming on January 22, 2021. Dkt. No. 279. Later, I denied PPN's motions to quash or recall the writ, reconsider, and vacate the judgment. *See* Dkt. Nos. 306, 312.

## II.     THE TRIBAL COURT ACTION[1]

PPN's Constitution provides that its Tribal Council may establish a judicial branch with judges appointed in a manner that Council selects. Dkt. No. 347-4 at 10.[2]  An ordinance issued by the Council in October 2008 describes how a tribal court would operate. *Id.* at 13–27.  It states that judges are appointed by the Tribal Council for two-year terms based on qualification. *Id.* at 17.  No tribal court was ever convened and, as far as the record indicates, no judges were appointed until this matter arose.

PPN is silent about the precise circumstances under which the Tribal Court was created. The record does show that, at some recent point, Jack Duran, Jr., an attorney with a license to practice in California, was appointed chief judge of that court.[3]  On March 17, 2021, less than two months after judgment was entered here, Chief Judge Duran adopted rules of civil procedure for the Court.  Dkt. No. 347-2.  On March 31 and April 1, Chief Judge Duran adopted standing orders. Dkt. No. 347-3.

PPN filed its complaint in the Tribal Court three days after the final standing order was adopted, April 4, 2021. *See* Dkt. No. 347-1 at 1–19 ("Tribal Court Compl.").  The complaint names as defendants JW Gaming, JW Gaming's attorneys and law firm in *this* case, and WestAmerica Bank ("WestAmerica"), the bank at which PPN maintains accounts that have been levied upon to execute the judgement in this case. *See* Dkt. No. 332 (order examining those accounts), *id.* at 1.  It is labelled the first Tribal Court case of 2021.

The Tribal Court Complaint contains six causes of action described in greater detail below. As a general matter, it asks for (1) declaratory judgment that various property, finances, and lands of PPN are exempt from being used to satisfy the judgment in this case; (2) declaratory judgment that the writ of execution and abstract of judgment in this case are invalid because the judgment in this matter is invalid; (3) injunctive relief against JW Gaming and its attorneys from executing the

---

[1] The facts in this section are drawn from the sworn declarations or authenticated exhibits submitted by the parties in connection with this motion.

[2] References to exhibits are to those documents' ECF-generated page numbers.

[3] I take judicial notice of Chief Judge Duran's bar status. *See* Fed. R. Evid. 201.

"invalid" judgment against PPN's assets; (4) breach of contract against JW Gaming alleging that it breached the Promissory Note at issue in this matter by enforcing the judgment; (5) fraud against JW Gaming based on alleged misrepresentations that induced it to enter into the Note; and (6) an unfair business practices claim that mirrors the breach claim. The Tribal Court Complaint requests declaratory and injunctive relief as described and eleven million dollars in damages. I refer to this proceeding as the "Tribal Court Action."[4]

On April 16, I denied a motion from PPN to vacate the judgment. Dkt. No. 312. That day, PPN served a summons in the Tribal Court Action on JW Gaming; it served JW Gaming's law firm on April 19, and JW Gaming's attorneys on April 21. Dkt. No. 314-1 ¶ 4. The Tribal Court summons to JW Gaming said that it must respond by May 6, 2021. JW Gaming represents that, despite searching, it could not find any publicly available information about the Tribal Court, its website, the identity of its judge(s), its rules of procedure, or how or where to appear.

### III.    MOTIONS FOR RELIEF

In a dispute over the bank accounts at WestAmerica that was recently before me, JW Gaming's reply brief requested an order to show cause why the Tribal Court Action should not be enjoined. I denied the request, explaining,

> Although JW Gaming's allegations about this complaint raise serious questions, I will not issue an order to show cause now. Issuing an injunction would implicate important issues of tribal sovereignty and tribal court jurisdiction. *See, e.g.*, *Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 857 (1985) (holding that, in some circumstances, an issue must be exhausted in tribal court before a district court may enjoin proceedings). JW Gaming has made no effort to address the legal basis for the injunction in its brief argument and I will not shift the burden to PPN to show why it and its court should *not* be enjoined.
>
> If JW Gaming believes an injunction is warranted by the law and facts, it should seek one properly. And if the tribal court issues an order purporting to impose liability for enforcing my judgment or purporting to enjoin enforcement of that judgment, JW Gaming is not foreclosed from requesting temporary emergency relief to preserve the status quo and ensure that it or third-parties are not wrongfully harmed simply for following federal court orders.

Dkt. No. 332 at 8.

---

[4] The Tribal Court Action is captioned *Pinoleville Pomo Nation v. JW Gaming Development, LLC, et al.*, PPNTC-CIV-21-0001.

On May 6, 2021, JW Gaming moved for a TRO to restrain the Tribal Court Action. *See* Motion for a Temporary Restraining Order ("Mot.") [Dkt. No. 333]. I held a hearing attended by counsel for both parties on May 7. Dkt. No. 336. As the minute entry records,

> Counsel for [PPN] represents and commits that no actions will be taken in the PPN Tribal Court proceeding against JW Gaming and its counsel for 60 days (except for the possible filing of an amended complaint) so that the status quo can be maintained pending a ruling on injunctive relief. The Court underscores the serious nature of the allegations in the motion. The Court accepts PPN's counsel's representation and, on that basis alone, will not issue the requested TRO because there is no threat of irreparable injury. The representation covers all acts in furtherance of the Tribal Court proceeding aside from filing an amended complaint, including (but not limited to) discovery.

*Id.* I then determined that I would treat the motion for a TRO as a motion for a preliminary injunction to which PPN could respond. *Id.* Due to PPN's counsel's personal circumstances, I partially granted its motion to extend the briefing schedule. Dkt. No. 341. PPN filed its opposition brief on May 28. Opposition to the Mot. ("Oppo.") [Dkt. No. 347]. JW Gaming filed its reply on June 7. Plaintiff's Reply ISO Mot. ("Reply") [Dkt. No. 353]. I held a hearing on June 17, 2021, attended by counsel for both parties.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs preliminary injunctions. A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. at 22. The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

## DISCUSSION

The parties both take an all-or-nothing approach: JW Gaming argues that I should enjoin the Tribal Court Action in its entirety based on uniform arguments; PPN argues that I am without

jurisdiction or authority to issue any injunction and, even if I were not, an injunction is unwarranted based on uniform arguments. The parties gloss over the reality that the motion requests two different types of relief that implicate distinct interests and legal doctrines. One is the request to enjoin the Tribal Court Action to the extent it seeks to declare the judgment I entered invalid and interfere with enforcement of it; five of the claims seek to do so. The other is the request to enjoin the civil fraud claim against JW Gaming that seeks to impose monetary liability on it for its actions in the underling dispute; that claim does not seek to invalidate the judgment or constrain the scope of its enforcement. Because the analyses are different, I address each type of relief in turn.

## I.    INJUNCTION AGAINST INVALIDATING OR INTERFERING WITH THE FEDERAL JUDGMENT

The first type of relief that JW Gaming seeks is to enjoin PPN from pursuing, and the Tribal Court from maintaining, the Tribal Court Action to the extent it seeks to invalidate the judgment entered in this matter. As the Tribal Court Action is pleaded, five of the six claims fall into this category.

The first count requests an order declaring that the abstract of judgment and writ of execution may not be enforced against what it calls "tribal assets," which encompass tribal land, funds from grant programs, Revenue Sharing funds, and funds for tribal governmental functions, including the accounts at WestAmerica. Tribal Court Compl. ¶¶ 35–40. In short, it seeks an order purporting to dictate what can and cannot satisfy the judgment in *this* case.

The second count seeks declaratory judgment that the judgment I entered "violates the Tribe's sovereign immunity" (an argument I already rejected and on which the Ninth Circuit denied mandamus relief) and therefore cannot be executed on. *Id.* ¶¶ 42–45. Relief on this claim would not only invalidate the writ of execution and abstract of judgment, but necessarily entail a determination about the validity of the judgment itself.

The third count seeks injunctive relief against JW Gaming and its attorneys that would prohibit them from "proceed[ing] with their actions to execute the invalid foreign judgment against any and all Tribal Assets." *Id.* ¶¶ 46–52. It further seeks an injunction against

WestAmerica to release the funds currently levied pursuant to the writ of execution. *Id.*

The fourth count alleges that JW Gaming breached the Promissory Note at issue in this dispute "by enforcing a judgment against Tribal Assets other than gaming revenues." *Id.* ¶¶ 54–58. This was PPN's substantive argument that I rejected when it moved for summary judgment and opposed judgment on the pleadings. It seeks to impose civil liability on JW Gaming for enforcing the judgment.

The sixth count alleges that JW Gaming engaged in unfair business practices that mirror the breach claim. *Id.* ¶¶ 67–74.

## A. Exhaustion

First, I must determine whether JW Gaming is required to exhaust its remedies in the Tribal Court prior to seeking relief here. It need not because in the Promissory Note PPN clearly and unequivocally waived reliance on or use of that doctrine.

"Federal law has long recognized a respect for comity and deference to the tribal court as the appropriate court of first impression to determine its jurisdiction." *Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc.*, 715 F.3d 1196, 1200 (9th Cir. 2013) (citations omitted). One manifestation of this respect is the tribal court exhaustion rule. *See e.g.*, *Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 856–57 (1985); *Burlington N. R. Co. v. Crow Tribal Council*, 940 F.2d 1239, 1245 (9th Cir. 1991). Under that rule, absent an exception, the movant must first exhaust its remedies in tribal court before a district court entertains a motion to enjoin that tribal court's proceedings. *Nat'l Farmers*, 471 U.S. at 856–57. The Supreme Court has explained that the rule furthers the policies of "supporting tribal self-government and self-determination," developing a clear factual record in the tribal court, minimizing procedural issues, permitting tribal courts to rectify their own errors, and fostering development of tribal courts. *Id.*

The requirement of tribal court exhaustion is not absolute. There are several exceptions, and under those exceptions the movant need not exhaust tribal court remedies before seeking or obtaining injunctive relief in federal court. *Nat'l Farmers*, 471 U.S. at 856; *Grand Canyon*, 715 F.3d at 1200. The Ninth Circuit describes those exceptions as follows:

(1) an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in

bad faith; (2) the action is patently violative of express jurisdictional prohibitions; (3) exhaustion would be futile because of the lack of adequate opportunity to challenge the court's jurisdiction; or (4) it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by *Montana*'s main rule.

*Burlington N. R. Co. v. Red Wolf*, 196 F.3d 1059, 1065 (9th Cir. 1999), *as amended on denial of reh'g* (Jan. 6, 2000) (citations omitted).

The Promissory Note in the underlying dispute includes a waiver of tribal court exhaustion, among other things. Whether the doctrine applies here comes down to two questions. Can exhaustion be waived in this case? And if it can be, has it been waived here? The answer to both is "yes."

### i. Can Exhaustion be Waived?

The Supreme Court has made clear that a tribe, as a sovereign, can "waive[] the right to exercise one of its sovereign powers." *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 148 (1982). It explained that there are "established principles for determining whether other governmental bodies have waived a sovereign power through contract." *Id.* at 147. There is no reason to think that PPN cannot waive exhaustion of tribal court remedies, just as any sovereign may waive similar defenses. The foundation stone of the exhaustion rule, after all, is respect for the sovereignty of the tribe. *Nat'l Farmers*, 471 U.S. at 856. In this way, tribal court exhaustion is like many doctrines closely connected to sovereignty. Take, for example, sovereign immunity, which generally shields unconsenting sovereigns from suit. *See, e.g.*, *United States v. Mitchell*, 463 U.S. 206, 212 (1983). It is well-established that federal, state, and tribal governments can waive that immunity. *Id.*; *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 509 (1991). More broadly, the Court has frequently examined the conditions under which governments may surrender any number of their sovereign powers via contract. *See generally, e.g.*, *United States v. Winstar Corp.*, 518 U.S. 839 (1996) (assessing numerous such sovereign contractual defenses). It would be anachronistic and illogical to think that tribal governments, the federal government, and state governments can waive all number of other sovereign powers and protections but that PPN, as a sovereign, cannot waive exhaustion of tribal court remedies when it voluntarily chooses.

9

The conclusion that tribes can waive exhaustion of tribal court remedies is bolstered by the Supreme Court and Ninth Circuit's repeated holding that "[e]xhaustion is prudential; it is required as a matter of comity, not as a jurisdictional prerequisite." *Evans v. Shoshone-Bannock Land Use Pol'y Comm'n*, 736 F.3d 1298, 1302 (9th Cir. 2013); *accord Strate v. A-1 Contractors*, 520 U.S. 438, 451 (1997) ("[T]he exhaustion rule stated in *National Farmers* was 'prudential,' not jurisdictional." (citation omitted)); *Boozer v. Wilder*, 381 F.3d 931, 935 (9th Cir. 2004) (same).[5] Typically, limitations on a federal court's subject matter jurisdiction cannot be waived. But exhaustion is not such a limitation.

PPN does not contest that exhaustion can be waived. At most, it argues that no waiver occurred. (As discussed below, it actually argues, incorrectly, that questions about exhaustion are irrelevant.) *See* Oppo. 8. Accordingly, there is no dispute on this point.

### ii. Has Exhaustion Been Waived Here?

When the Supreme Court and Ninth Circuit have discussed waiver of sovereign powers in contracts, including by tribes, they have uniformly laid out the standard as requiring the power be "expressly waived in unmistakable terms within the contract" at issue. *Grand Canyon*, 715 F.3d at 1205; *accord Merrion*, 455 U.S. at 148. That standard aligns with the more general standard for waiving sovereign powers, like sovereign immunity, which requires that waiver be "clear and unequivocal" or "unmistakable." *See, e.g.*, *Oklahoma Tax Comm'n*, 498 U.S. at 509; *Winstar*, 518 U.S. at 860. As I previously found when it came to PPN's sovereign immunity, *see* JOP Order at 10–12, PPN expressly, clearly, and unequivocally waived reliance on exhaustion of tribal court remedies.

The Promissory Note at the heart of this dispute provides: "<u>Waiver of Exhaustion of Tribal</u>

---

[5] The Ninth Circuit has elsewhere said that the "[w]e have interpreted *National Farmers* as determining that tribal court exhaustion is not a jurisdictional bar, but rather a prerequisite to a federal court's exercise of its jurisdiction." *Grand Canyon*, 715 F.3d at 1200. Read in a certain light, that statement might seem to contradict the holdings just quoted in the body of this Order. *Compare id.* (exhaustion is a prerequisite to jurisdiction), *with, e.g.*, *Evans*, 736 F.3d at 1301 (exhaustion is not a jurisdictional prerequisite). The better reading of *Grand Canyon*'s statement is simply that exhaustion must either occur or not be required before a federal court exercises its authority. Reading it another way would put it into conflict with *Evans* (which was issued later), other Ninth Circuit cases, and the Supreme Court's unambiguous holding.

Remedies. In connection with any Claim, *the Tribe expressly waives the application of doctrines of exhaustion of tribal remedies*, abstention, or comity and all other rights of any Tribal Party that might otherwise require that a Claim be heard in a tribal court or other dispute resolution forum of the Tribe, whether now existing or hereafter created." Dkt. No. 1-4 at 12–13 (italics added). And it defines a "Claim" to be "any dispute between any Tribal Party [for purposes of that Note, PPN and the Pinoleville Gaming Authority] or JW Gaming Development that is related to this Promissory Note, whether arising during or after the expiration of the Development Agreement or the maturity of any Interim Tribal Note." *Id.* at 15–17.

This provision is just the sort of express, clear, and unequivocal waiver courts require. *See, e.g.*, *A.K. Mgmt. Co. v. San Manuel Band of Mission Indians*, 789 F.2d 785, 786 (9th Cir. 1986) (holding sovereign immunity was waived by a provision that read, the tribe "waives sovereign immunity with respect to any action which may be brought by Manager to enforce or interpret this Agreement"). It is clearer than some other waivers. *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 419 (2001) (holding that an arbitration clause in a contract waived the tribe's sovereign immunity). It is nothing like the alleged waiver that the Supreme Court rejected in *Merrion*, which was that by merely entering into the contract, the sovereign power to tax was waived. *Merrion*, 455 U.S. at 148.

PPN makes several points that could be construed as counterarguments, but they are meritless. First, it argues that "the alleged waiver of Tribe's sovereign immunity or exhaustion of remedies is not implicated through the Tribal Court proceedings *brought by the Tribe*." Oppo. 8 (emphasis in original). It does not elaborate on why that would be so. In any event, its argument is contradicted by the plain text of the Note, which defines a "claim" to include "*any* dispute *between*" PPN and JW Gaming "related to" the Note. Dkt. No. 1-4 at 15–17 (emphasis added). Not only does the Note *not* limit its waiver to cases brought by JW Gaming, it expressly applies to any dispute "between" the parties, which plainly includes cases brought by PPN. Next, PPN argues that "Plaintiff fails to identify specific terms stating the Tribe waived its right to bring its own claims in a Tribal Court, or that any claims of the Tribe must be brought in this or any other court." Oppo. 8. In other words, it asserts that there was no waiver *of the right to bring claims* in

Tribal Court. That is not the issue here. The question is whether PPN waived *exhaustion* of tribal remedies.

PPN barely engages with exhaustion in its brief. It appears to believe that the issue is not worth addressing because of its view that this is the wrong posture for a motion of this sort. Oppo. 8 ("Plaintiff's waiver arguments/defenses might have had some relevance if (1) Plaintiff had filed suit to stop Tribe's claims; and (2) Tribe had asserted the defense of sovereign immunity and/or exhaustion of remedies in response to that suit."). In any event, PPN does not dispute that exhaustion of tribal court remedies can be waived and has no meritorious counterargument to the finding that it has been.[6]

### B. Jurisdiction

PPN contends that I lack jurisdiction to issue an injunction because JW Gaming needs to file a new complaint seeking this relief. *See* Oppo. 4–9. Even if PPN had not raised the issue, I would examine it *sua sponte* to ensure that I possessed jurisdiction.

### i. Basis for Jurisdiction

Federal cases seeking to enjoin tribal court proceedings occur with enough frequency to have developed a body of caselaw. In those cases, the complaint itself seeks relief against the tribe and tribal court; the case is about whether to enjoin the proceeding. *See, e.g.*, *Nat'l Farmers*, 471 U.S. at 847–49. Those cases are often premised on federal question subject matter jurisdiction because whether the tribal court has authority is usually "answered by reference to federal law and is a 'federal question' under [28 U.S.C.] § 1331." *Id.* at 852–53. Or they are sometimes premised on diversity subject matter jurisdiction under 28 U.S.C. § 1332 as when, for example, the plaintiff seeks an adjudication of the same legal issue proceeding in tribal court. *See, e.g.*, *Iowa Mut.*, 480 U.S. at 11–13. Even then, however, the complaint still seeks relief in the form of an injunction against the tribal suit.

This case is different because it long predated the Tribal Court Action; the complaint here

---

[6] I note that PPN also does not contest JW Gaming's argument that the bad faith and lack of jurisdiction exceptions to the exhaustion rule apply. I need not reach whether those exceptions apply because the exhaustion question is settled by the clear waiver.

did not (and could not) reference any tribal court proceeding because none existed. Accordingly, PPN argues that I lack jurisdiction because JW Gaming needed to file suit that itself sought to enjoin the Tribal Court Action. Oppo. 4–6. Neither I nor the parties have found a case addressing this posture.

When it comes purely to enjoining the proceeding *to the extent it seeks to invalidate my judgment or interfere with execution of it*, I possess jurisdiction to adjudicate the motion for an injunction without a new complaint being filed. Subject matter jurisdiction was proper *in this case*. I had jurisdiction to fully adjudicate the breach of contract claim under supplemental jurisdiction and to enter judgment in the breach of contract dispute. It follows from all this that I have jurisdiction to enforce and protect that judgment. *Riggs v. Johnson Cty.*, 73 U.S. 166, 187, *aff'd sub nom. U. S. ex rel. v. Council of Keokuk*, 73 U.S. 518 (1867) ("[T]he jurisdiction of a court is not exhausted by the rendition of the judgment, but continues until that judgment shall be satisfied."); *Sukumar v. Direct Focus Inc.*, 224 F. App'x 556, 559 (9th Cir. 2007) ("Just as the district court had jurisdiction to decide the dispute, it also had jurisdiction to enforce its judgment."); *cf. Stein v. Wood*, 127 F.3d 1187, 1189 (9th Cir. 1997) (holding that district courts retain jurisdiction pending appeal to enforce judgments). As the Supreme Court has explained, "[w]ithout jurisdiction to enforce a judgment entered by a federal court, the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) (internal quotation marks and citation omitted). Indeed, under the All Writs Act, courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

To be sure, there are special interests at play when a tribal court is involved. But those interests are weighed through tribal jurisdiction caselaw—the exhaustion requirement discussed above, for example. The mere fact that the actor potentially invalidating the judgment is the Tribal Court does not change the *basis* of jurisdiction. Under PPN's argument, no federal court would ever have jurisdiction to protect its judgments from proceedings that did not exist when the complaint was filed. It is no surprise, then, that all of PPN's cases on this issue deal with

13

situations in which courts lacked jurisdiction over *claims* not pleaded in complaints. *See* Oppo. 5–6.

In short, no stand-alone follow-on case is necessary for this portion of the request for relief because I retain jurisdiction to enforce and protect the judgment I entered.[7]

### ii. Appellate Divestiture

PPN also briefly argues that I lack jurisdiction now that it has appealed some of my orders on the underlying dispute. *See* Oppo. 6–7. It is incorrect.

The Supreme Court has held that "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Despite this, the Ninth Circuit has indicated that subsequent Supreme Court cases mean that the rule is more in the nature of a mandatory claims-processing rule. *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 790–91 (9th Cir. 2018). The rule seeks to "avoid confusion or waste of time resulting from having the same issues before two courts at the same time." *Id.* at 790 (internal quotation marks and citation omitted).

But, as here, "[a] district court may retain jurisdiction [under the divestiture rule] when it has a duty to supervise the status quo during the pendency of an appeal, *Hoffman v. Beer Drivers*, 536 F.2d 1268, 1276 (9th Cir. 1976), or in aid of execution of a judgment that has not been superseded. *In re Thorp*, 655 F.2d 997, 998 (9th Cir. 1981)." *Stein*, 127 F.3d at 1189. That approach is sensible for many reasons; one is that unless the district court or court of appeals stays it, enforcement of judgment proceeds even after appeal has been taken. *See* Fed. R. Civ. P. 62. As

---

[7] At several points, PPN tosses the phrase "due process" into its argument that a new complaint needs to be filed. *See* Oppo. 1, 4. Its substantive argument, however, is the same just rejected. It never elaborates on its due process arguments, so it is too undeveloped to merit full analysis. *United States v. Loya*, 807 F.2d 1483, 1487 (9th Cir. 1987). In any event, PPN was given all of the procedural due process required: notice and opportunities to be heard. This is the process given in any post-judgment enforcement injunctive relief proceeding.

PPN also asserts in a footnote that JW Gaming was required under Civil Local Rule 65-1 to attach a copy of the Complaint to its motion. Oppo. 1 n.3. The Rule, which is clerical, is aimed at *ex parte* motions for TROs, because they are often filed simultaneously with the filing of the case. In any case, PPN was not prejudiced: it already has a copy of the Complaint from years of litigating.

14

a result, district courts routinely issue orders on enforcement of the judgment after a notice of appeal has been filed. Doing so does not offend the divestiture rule, *Stein*, 127 F.3d at 1189, nor does it undermine the purposes of that rule. If district courts could not enforce judgments effectively just because appeal is taken, it would mean that every appeal would give the judgment debtor free reign to avoid the judgment without the risk of the court taking remedial or protective action.

### iii. Whether the Injunction is "Preliminary"

PPN asserts that the requested relief is "simply unavailable" because JW Gaming requests essentially *permanent* relief through a *preliminary* injunction even though there will be no trial to determine whether a permanent injunction should issue. Oppo. 7. It appears to believe that a jury trial is necessary. *See id.*

As an initial matter, this issue is not jurisdictional. On the merits of the argument, I take PPN's point that the requested relief would be an injunction that would remain in place not to preserve the status quo pending a later, final determination but instead as a complete bar on the Tribal Court Action. Although that point is true as far as it goes, PPN draws a wholly unsupported conclusion from it: that no relief can be had. That result does not follow from the premise. I can issue a preliminary injunction now to protect the judgment. Because this preliminary injunction would be an equitable act to protect and effectuate the judgment already entered, there is no reason that it would need a jury. *Tull v. United States*, 481 U.S. 412, 417 (1987).

Neither party has set out what procedures they believe need to be applied to litigate making the injunction permanent, other than PPN's entirely unsupported assertion that a jury trial is needed. Accordingly, PPN is **ORDERED TO SHOW CAUSE** why this preliminary injunction should not be converted into a permanent injunction. It will file a brief within 21 days; JW Gaming may file a response 14 days after that; if it does, PPN may file a reply 7 days after that. I will set a hearing if necessary. The initial and response brief are limited to 10 pages; the reply is limited to 5. PPN must **only** address any reasons that the injunction should not be made permanent, such as the procedures that must be followed.

### iv. Conclusion on Jurisdiction

For the reasons explained, it is jurisdictionally (and procedurally) proper to issue an injunction that enjoins the Tribal Court Action to the extent it seeks to invalidate, or interfere with the enforcement of, the judgment entered in this matter. I therefore turn to the test for whether an injunction is warranted.

### C. Success on the Merits

The first prong of the test for a preliminary injunction is whether the moving party has shown a likelihood of success on the merits or, in appropriate case, serious questions going to the merits. *Wild Rockies*, 632 F.3d at 1132. A likelihood of success on the merits, for present purposes, requires showing that the Tribal Court Action undermines or interferes with the federal judgment. *See Peacock*, 516 U.S. at 357 (explaining that the goal of enforcement proceedings is to effectuate "attempts to execute, or to guarantee eventual executability of, a federal judgment").

This has been shown. The existence of the Tribal Court Action casts a pall over the judgment in this case, and if it were litigated, it would seek to invalidate and interfere with the judgment and enforcement here. Federal-court judgments cannot be invalidated by a state or tribal court declaring it is so.[8] *See, e.g.*, *Nevada v. Hicks*, 533 U.S. at 368 n.8 (holding that a prior decision was "federal law to the contrary" of a tribal court action and, consequently, superseded it); *id.* at 402–03 (Stevens, J., concurring) (agreeing that contrary federal law overcomes tribal court decisions); *Donovan v. City of Dallas*, 377 U.S. 408, 413 (1964) ("[W]here the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court."); *Gen. Atomic Co. v. Felter*, 436 U.S. 493, 495 (1978) (same); *Nat'l Farmers*, 471 U.S. at 851 ("Today, however, the power of the Federal Government over the Indian tribes is plenary."); *Escondido Mut. Water Co. v. La*

---

[8] Indeed, state courts, unlike tribal courts, are protected from the vast majority of federal-court injunctions by the Anti-Injunction Act. *See* 28 U.S.C. § 2283. Even in that context, however, a federal court possesses the authority to enjoin state court proceedings "to protect or effectuate its judgments." If this framework applied here—which I do not hold it does—then this would be an easy case for an injunction because "preclusion is clear beyond peradventure." *Smith v. Bayer Corp.*, 564 U.S. 299, 307 (2011).

*Jolla, Rincon, San Pasqual, Pauma, & Pala Bands of Mission Indians*, 466 U.S. 765, 787 n.30 (1984) ("[I]t is clear that all aspects of Indian sovereignty are subject to defeasance by Congress."); *cf.* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."); *Philip Morris*, 569 F.3d at 944 (applying supremacy of federal law to tribal law).

The attempt here to invalidate this federal judgment is not subtle or masked. As explained in detail above, the express terms of the complaint in the Tribal Court Action ask for declaratory relief that the writ of execution and abstract of judgment are invalid because the judgment itself is invalid. It also seeks to interfere with the execution proceedings by limiting what can be executed upon and imposing liability for going beyond that. Although the reasons PPN offers are irrelevant to the reality that the Tribal Court lacks authority over this claim, I note that the reasons in the Complaint boil down to PPN's assertion that I got it wrong on the merits of this case. It argues that my interpretation of the contract at issue was incorrect. The Tribal Court Complaint not only seeks to invalidate a federal-court judgment, it seeks to relitigate the same basic arguments made and rejected in federal court. The proper place to make those arguments is in the Ninth Circuit.

Still more, PPN has reeled in WestAmerica, a third party that did nothing more than comply with a valid levy by a U.S. Marshal. It is bad enough that PPN tried to invalidate the judgment this way, but its attempt to bind a third party with ersatz court orders—forcing it to choose which order to violate—is beyond the pale.

Accordingly, JW Gaming has shown that certain claims in the Tribal Court Action do, and would continue to, interfere with, threaten, and (if successful) purport to invalidate a valid federal-court judgment and the enforcement thereof.

### D. Irreparable Injury and Adequacy of Remedies Available at Law

JW Gaming has shown a "likelihood of irreparable injury." *Wild Rockies*, 632 F.3d at 1132. Relatedly, it lacks adequate remedies at law. *See eBay Inc. v. MercExchange, L.L.C.*, 547

17

U.S. 388, 391 (2006).

There are several such harms.  First, JW Gaming would be forced to litigate in an improper forum for the primary purpose of invalidating a properly obtained and issued judgment.  *Cf. AT&T Mobility LLC v. Bernardi*, No. C 11-03992 CRB, 2011 WL 5079549, at *10 (N.D. Cal. Oct. 26, 2011) ("[B]eing forced to defend an improper arbitration demand requires expending human and monetary capital for which there is no adequate remedy at law."); *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1363 (Fed. Cir. 2011) (upholding finding that party that agreed to forum selection clause "would likely be irreparably harmed in the absence of a preliminary injunction because it would be deprived of its bargained-for forum and because it would likely be forced to litigate the same issues on multiple fronts at the same time").  It would be forced to spend the time and resources to do so despite a clear lack of authority of that court to offer the relief requested.  It would allow an obviously improper proceeding to cloud its entitlement to the federal judgment.  The Tribal Court Action has also attempted to rope in WestAmerica Bank, exposing a third-party to ostensible liability, despite its only involvement being complying with subpoenas.

PPN responds that the only harm JW Gaming faces is the money necessary to defend the Tribal Court Action and that monetary harm is never irreparable.  Oppo. 9.  PPN misunderstands the law.  Pure economic harm is usually not irreparable *because it can be compensated through damages*.  *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).  For example, if one party breaches a contract, the other party can often (but not always) be made whole through the legal remedy of a damages award without a court ordering the breaching party to perform.  Restatement (Second) of Contracts § 359(1).  But it is not at all clear all economic expenditure *here* could be recompensed.  This is not a tortious or contractual economic harm but money spent *in litigation*.  The rules that the Tribal Court has adopted only provide for fee-shifting for what would be, in federal court, violations of FRCP 11 or bad-faith summary judgment affidavits, so it appears ordinary fee-shifting is not possible in that court.  *See* Dkt. No. 347-2 at 13, 33.  All this aside, I have identified injuries above that go well beyond expenditure of money, so even if PPN were correct in its assessment of the compensability of the

18

economic harm, its argument would still not carry the day.

Finally, it is worth underscoring that all of the work, money, time, uncertainty, and confusion caused by this portion of the Tribal Court Action would be for nothing: the Tribal Court lacks the authority to invalidate or interfere with the enforcement of a federal court's judgment.

### E. Balance of Harms

The equities tilt in JW Gaming's favor. I incorporate the discussion above about the harm to JW Gaming, third parties, and this Court's authority. The harm of not issuing an injunction is, accordingly, high. Failing to enter injunctive relief would lead to litigation that would waste time and resources and put a cloud over a valid federal-court judgment. Given PPN's casual attempt to bring WestAmerica—a third party not involved in the underlying lawsuit—into tribal court, the Tribal Court Action risks sowing uncertainty about the consequences that individuals or entities will face simply from complying with valid court orders and subpoenas. It goes against all principles of efficiency, respect for court judgments, and prudence to permit this to continue.

On the other hand, the harm to PPN in issuing the injunction is simply that it would stop facially improper claims from proceeding—claims that are inevitably doomed anyway. There is no more harm in doing so than in enjoining a similar state-court proceeding, which federal courts must do from time to time. PPN's lone counterargument is an appeal to the principle of respect for tribal sovereignty. As noted, I am highly conscious that I enjoin a sovereign nation's court. But, as a general matter, respect for sovereignty and comity with tribal courts are accounted for by the exhaustion doctrines.

Strikingly, PPN also claims that "Plaintiff is also actively pursuing collection and enforcement of the Judgment without interference by the Tribal Court meaning there is no real harm to Plaintiff here." Oppo. 2. This attempt to muddy the waters is entirely unpersuasive: were litigation not stayed temporarily, the harms above would either occur, be likely, or cloud the judgment. The entire point of these claims in the Tribal Court Action is to interfere with enforcement of this one.

On top of this balance of the concrete harms, it is worth noting that more general notions of equity favor JW Gaming. PPN's actions in bringing at least this part of the Tribal Court Action

19

smack of bad faith. It conspicuously does not utter one word in its brief in defense of the merits of the Tribal Court Action. Asking a tribal court to declare a federal judgment invalid and take steps to thwart its enforcement is vexatious on its face. The suspicious timing involved in activating the Tribal Court so that it could accept the Tribal Court Complaint as its first case is also troubling.

### F. Public Interest

The public interest favors an injunction as well. *Wild Rockies*, 632 F.3d at 1132. There is an undoubted, compelling public interest in ensuring that valid judicial judgments are enforced. There is also great public interest in ensuring that third parties do not hesitate to comply with valid federal court orders and subpoenas under fear that they are exposing themselves to liability in another sovereign's court. Courts routinely issue injunctions against state court proceedings that seek to, essentially, undo federal judgments (provided the Anti-Injunction Act is satisfied), which necessarily entails a public-interest finding in favor of injunctions.

Of course, there is also great public interest in protecting tribal sovereignty, showing comity to tribal courts, and in fostering the development of tribal self-government. But on these facts, those interests are either not truly threatened or do not overcome the strong interests going the other way. As an overarching matter, the first line of defense of these interests is the tribal court exhaustion doctrine, but PPN exercised its sovereign prerogative to explicitly waive that protection. And while PPN frequently suggests tribal sovereignty would be impinged by an injunction, a closer analysis of the facts shows it is not. PPN still retains full authority to govern its members, the essence of sovereignty. But it, as a sovereign, chose to enter into a commercial contract for millions of dollars—a contract that waived sovereign immunity, tribal court exhaustion, and range of other powers, protections, and defenses. It did not pay, was sued, and was adjudicated to be in breach. Just like the federal government and state governments, PPN is therefore subject to a liability. And just like the federal government and state governments, PPN cannot escape that liability by bringing a facially improper claim in its own courts.

Accordingly, JW Gaming has met the test for preliminary injunctive relief.

### G. Scope of Injunction

For the preceding reasons, issuing an injunction on this portion of the Tribal Court Action

is warranted.  The precise terms of that injunction are at the end of this Order.  PPN argues in two sentences that I cannot enjoin the proceeding to the extent it is against non-parties.  Oppo. 6.  The Tribal Court defendants that are not parties here are JW Gaming's attorneys in this matter and WestAmerica (the bank at which PPN maintains several accounts that have been levied upon).  PPN misunderstands the issue.  This injunction runs against PPN itself, which is a party here.  It also enjoins the Tribal Court, an instrumentality of PPN.  The injunction imposes no duties on WestAmerica.[9]  It is proper to enjoin proceedings *against* WestAmerica because those proceedings seek to invalidate and thwart the judgment here.  It happens that PPN has attempted to thwart that judgment by bringing in third parties.  But enjoining proceedings against them does not place any duties on them, it simply prevents *PPN or the Tribal Court* from interfering with the judgment through them.  Were it otherwise, parties could interfere with court judgments merely by naming the other party's attorneys or third parties that have been subpoenaed in a second proceeding.  PPN cites no authority for that illogical view.

To the extent just described, the motion for a preliminary injunction is GRANTED.

## II.  INJUNCTION AGAINST REMAINING CIVIL CLAIM

The second aspect of the Tribal Court Action is the fraud claim that seeks to impose liability on JW Gaming (alone) through the claim for fraud.  Tribal Court Compl. ¶ 62.  The fraud claim alleges that JW Gaming made fraudulent representations that led it to enter into the Promissory Note.  *Id.*  (I previously denied PPN leave to amend its complaint to add, a year after adjudicating the breach claim, counterclaims that essentially tracked this theory because the alleged evidence supporting them was pretextual.  Dkt. No. 278).

When it comes to the fraud claim, I agree with PPN that I lack the authority to enjoin it.  I possess jurisdiction and authority to protect and enforce the judgment.  But this claim does not seek to declare the judgment invalid, to prohibit anyone from enforcing it, or to otherwise thwart its enforcement.  Jurisdiction, accordingly, cannot be premised on that theory.  Judgment here has been entered on one claim and all other claims have been dismissed with prejudice.  The case is in

---

[9] Even under PPN's erroneous view, JW Gaming's attorneys can be bound by an injunction.  *See* Fed. R. Civ. P. 65(d)(2)(B).

enforcement. Some issues are up on appeal. To be sure, the fraud claim is related to this case. But that alone does not mean it threatens or undermines my judgment. JW Gaming is required—as parties do in these tribal court injunction proceedings—to file a complaint that seeks this relief.[10]

JW Gaming does not separate its response on this issue into the categories I have, so most of its argument on this point is not relevant to this claim because it concerns jurisdiction to enforce judgments. Its relevant counterargument is that there is a "causal nexus" between this relief and the case. Reply 10–11. It overreads the law; when courts say that they may enjoin actions with a "nexus" with the underlying complaint, they mean that "the preliminary injunction would grant relief of the same character as that which may be granted finally." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (internal quotation marks and citation omitted). JW Gaming also argues that I have authority under the All Writs Act, but I have already rejected the argument that enjoining this claim is necessary to protect my jurisdiction, the standard under the Act. And it cites *Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020). In that case, the district court enjoined an immigration regulation that had not been specifically challenged in the complaint. *Al Otro Lado*, 952 F.3d at 1006 n.6. The Ninth Circuit held that preliminarily enjoining the regulation was a proper exercise of authority because the regulation "would interfere with the [district] court's jurisdiction" as the regulation would "extinguish some provisional class members' asylum claims while they sought access to the asylum process through their" legal challenge. *Id.* Here, the judgment is fully enforceable even if the fraud claim proceeds, so there would be no similar extinguishment. To this limited extent, the motion for an injunction is DENIED.

None of this, however, should be understood as approval of the fraud claim. To the contrary, the evidence tends to indicate it was brought in bad faith. Even aside from issues of preclusion doctrines, it is far from clear that the Tribal Court has jurisdiction over the claim. But I will not determine whether any of this is so, as it would require rendering an advisory opinion.

---

[10] At the initial TRO hearing, I indicated that it was unsettled whether a new complaint would need to be filed or whether a motion could be brought in this case.

1   If PPN continues with the suit and JW Gaming decides to file a new complaint seeking

2   relief, that case would be related to this one within the meaning of Civil Local Rule 3-12.  If JW

3   Gaming files such a case, it is ORDERED to file notice in this matter that it has done so.

## III.   DISCOVERY DISPUTE

5   The day before the hearing on the preliminary injunction, PPN filed a motion that seeks

6   relief from an order entered by Magistrate Judge Illman, to whom I referred enforcement

7   discovery.  *See* Motion for Relief ("Relief Mot.") [Dkt. No. 360].[11]  In this motion, PPN argues for

8   the first time that Judge Illman was without jurisdiction to enter an order settling a recent dispute

9   over the scope of discovery between the parties.  When I referred this matter to Judge Illman, I

10  noted that it was not yet settled whether he could make final rulings or whether he would make

11  reports and recommendations that I would then review.  *See* Dkt. No. 323 n.5.  PPN separately

12  argues the order erred in several respects.

### A.  Magistrate Judge Jurisdiction

14  Magistrate judges are given their authority by statute, not Article III of the Constitution,

15  and their jurisdiction is constrained by the Federal Magistrates Act, 28 U.S.C. § 631 *et seq*.

16  Section 636 deals with their jurisdiction and powers.  The first subsection permits district courts to

17  appoint magistrate judges to perform certain statutorily specified tasks, like sentencing petty

18  offenses.  28 U.S.C. § 636(a).  The second subsection contains the core of modern magistrate

19  judge jurisdiction.  Section 636(b)(1)(A) permits referral to magistrate judges of pretrial matters

20  except certain dispositive or important motions, which district judges then review for clear error or

21  if they are contrary to law.  This is commonly called an appeal to the district judge.  Section

22  636(b)(1)(B) permits magistrates to issue reports and recommendations to district judges of most

23  of those dispositive or important motions, which district judges review de novo.

24  Relevant here, 28 U.S.C. § 636(b)(3) provides that "[a] magistrate judge may be assigned

25  such additional duties as are not inconsistent with the Constitution and laws of the United States."

26  It is common in this District and Circuit to delegate all or parts of post-judgment enforcement—

---

[11] PPN's motion to stay Judge Illman's order until I rule, Dkt. No. 359, is DENIED AS MOOT.

especially discovery—to magistrate judges. *See, e.g.*, *Est. of Brown v. Lambert*, 2020 WL 3606392, at *2 (S.D. Cal. July 2, 2020); *Retamco Operating, Inc. v. Carone*, 2007 WL 9752775 (C.D. Cal. Aug. 17, 2007); *Govan v. Sec. Nat'l Fin. Corp.*, 2013 WL 12212366 (D. Ariz. May 1, 2013), *report and recommendation adopted*, 2013 WL 12212367 (D. Ariz. June 19, 2013). Some courts in this Circuit even assign portions of enforcement to magistrate judges by default in their Local Rules. *See* C.D. Cal. Civ. L.R. 69.1 (assigning judgment debtor examinations and post-judgment discovery to magistrates); S.D. Cal. Civ. L.R. 69.1(a) (same). This referral procedure does not offend Article III or the parties' rights because "[a] magistrate exercising 'additional duties' jurisdiction remains constantly subject to the inherent supervisory power of the district judge and the judge retains the ultimate responsibility for decision making in every instance." *Colorado Bldg. & Const. Trades Council v. B.B. Andersen Const. Co.*, 879 F.2d 809, 811 (10th Cir. 1989) (some internal quotation marks and alterations omitted) (quoted with approval in *Est. of Conners by Meredith v. O'Connor*, 6 F.3d 656, 659 n.2 (9th Cir. 1993)).

PPN asserts that *Estate of Conners* rendered Judge Illman without authority to resolve the parties' discovery dispute, but its argument is incorrect for several reasons. *Estate of Conners* dealt with Section 636(b)(1), not Section 636(b)(3). As noted, the former contemplates only *pretrial* orders by its plain text; *Estate of Conners* consequently held that a magistrate judge lacked authority to enter a post-judgment order on attorney's fees under that subsection. *Est. of Conners*, 6 F.3d at 659. Section 636(b)(3) contains no textual limitation to "pretrial" matters. Still more, *Estate of Conners* asked whether a magistrate judge could enter a *dispositive, final, appealable* order (there, attorney's fees). Under Section 636(b)(1), such orders can *only* be entered when the parties consent to magistrate judge jurisdiction.[12] *Id.* Absent some extraordinary circumstance not present here, discovery disputes are not dispositive. *Thomas E. Hoar, Inc. v.*

---

[12] By not objecting at the hearing when I indicated I would refer the matter to Judge Illman, not objecting when I issued an order to that effect, not objecting when appearing before Judge Illman, affirmatively submitting a discovery dispute to Judge Illman without contesting his jurisdiction, and only raising this after it was unsuccessful there (on the day discovery was due, no less), PPN may well have consented to magistrate judge jurisdiction for at least this part of the dispute under Supreme Court precedent. *See Roell v. Withrow*, 538 U.S. 580, 587–91 (2003). There is no need to dive into that issue because I resolve the dispute on the grounds discussed.

*Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) ("Matters concerning discovery generally are considered 'nondispositive' of the litigation."); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991) (holding even discovery *sanctions* nondispositive). And in any event, *Estate of Conners* held that any error in a magistrate purporting to enter an order "was cured by the district court's later de novo review of the magistrate's findings and conclusions, and the court's entry of its own order." *Est. of Conners*, 6 F.3d at 659. Accordingly, even if PPN were right that the order was dispositive, it would not mean that order was issued without authority and required vacatur, it would just mean the issue then must come before me.

As the Seventh Circuit has said in a passage that *Estate of Conners* relied on and quoted in full, "[n]o provision expressly authorizes the judge to assign a magistrate to post-judgment proceedings, although we can think of no good reason not to allow such assignments and the statute does have a catch-all section: [Section 636(b)(3)]." *King v. Ionization Int'l, Inc.*, 825 F.2d 1180, 1185 (7th Cir. 1987). More than "no good reason *not* to allow," there are often affirmatively good reasons to place enforcement, or at least enforcement discovery, into magistrate judges' capable hands. The core purpose of the Act is to "increas[e] the scope of the responsibilities that can be discharged by [magistrate judges] to establish a system capable of increasing the overall efficiency of the Federal judiciary." *Mathews v. Weber*, 423 U.S. 261, 268 (1976) (internal quotation marks and alterations omitted). The Act expressly contemplates that they may handle *pretrial* discovery in the first instance, so they are well-positioned to do the same thing post-judgment.

Based on everything just said, Magistrate Judge Illman has jurisdiction to enter orders that are appealable to me. But, out of an abundance of caution and to help streamline these proceedings, I will review Magistrate Judge Illman's resolution of the discovery dispute as a report and recommendation and consider PPN's objections de novo.

**B. Judge Illman's Order is Affirmed**

Reviewing Judge Illman's order de novo, I ADOPT it as my own. *See* Order Re: Discovery Dispute ("Discovery Order") [Dkt. No. 357]. In that Order, the parties fought over the scope of discovery that JW Gaming could propound to determine the extent and nature of PPN's

assets. Judge Illman's order is thorough, well-reasoned, and persuasively addresses the objections to discovery that PPN raised before him. PPN's objections, which I also review de novo, are OVERRULED.

First, PPN argues that it is protected by sovereign immunity but, as it admits, it "recognizes the Court previously ruled that Tribe waived its sovereign immunity." Relief Mot. 4. It is correct; it waived sovereign immunity. *See* JOP Order at 10–12.

PPN's other objections all go to the scope of the discovery. As Judge Illman explained, the scope of *post-judgment* discovery is extremely broad because its object is to determine what assets the judgment debtor has and how they may be collected upon. Discovery Order 5; *see also, e.g.*, *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, No. C 06-3219 JWRS, 2009 WL 5114077, at *4 (N.D. Cal. Dec. 18, 2009) ("As several federal courts have noted, Rule 69 discovery can indeed resemble the proverbial fishing expedition, but a judgment creditor is entitled to fish for assets of the judgment debtor." (internal quotation marks and citations omitted) (collecting authorities)). Even so, there are real limits to this discovery based on proportionality, harassment, and whether the discover is reasonably calculated to lead to relevant information.[13]

PPN asserts that the Discovery Order erred by ordering production of request for production ("RFP") No. 1, which sought communications between PPN and its creditors from January 1, 2020 to the date of production. Discovery Order 4–5. Here, PPN argues that requiring *all* communication is overly broad, but it offers no narrowing criteria—indeed, it offers no argument beyond repeating this nebulous assertion several more times. Relief Mot. 5. This aside, communications with creditors, as Judge Illman found, are likely to reveal much about the scope of PPN's assets. And, in all events, the scope is limited to a year-and-a-half of information that is discoverable.[14]

Next, PPN objects to the resolution of RFP Nos. 5, 6, and 13, which sought all resolutions

---

[13] PPN seems to argue the order erred by relying on out-of-circuit precedent. It should go without saying that courts may rely on persuasive but nonbinding authority so long as it is in line with the rules that do bind them.

[14] Judge Illman rightly noted that the case is governed by a protective order, minimizing the risk of improper use of the information.

of PPN from January 1, 2017; all of its laws and ordinances; and minutes from Tribal Council meetings from January 1, 2019. Discovery Order 6. While PPN takes issue with the Order's purported lack of analysis, the Order explained that PPN's objections were largely "boilerplate," devoid of real development. *Id.* In any event, this information is discoverable. PPN is a sovereign and these public sovereign acts and records are likely to shed light on how PPN acquires its funds, how it spends those funds, and what it has saved. The minutes are the most onerous to produce, but they have been limited to the most recent two-and-a-half years. PPN compares it to ordering Congress to produce its laws to execute a judgment against the United States. But U.S. treasury funds are generally traceable, public laws are publicly available, and the federal government generally pays judgments when they are entered. If the Government of the United States did not pay a federal judgment, it would be subject to discovery of its assets too.

PPN objects to resolution of RFP Nos. 7, 8, 9, and 10, which sought documents related "to two particular 'reconveyances' including the associated escrow files, communications with the creditor(s), all associated billing statements, and evidence of payment of the debt(s) affiliated with that transaction" and those same documents related to one "grant deed transaction and a short form deed of trust and assignments of rents transaction." Discovery Order 6. The basis of the objection is again how broad it is, but this request is actually narrowly drawn: documents related to several *specific* transactions. These transactions appear to be prototypical examples of discoverable information because it is necessary to determine what interests, if any, PPN has in them.

Finally, PPN objects to resolution of RFP No. 12, which sought "all documents relating to "financial progress reports" submitted to the federal government by the Tribe in connection with the Tribe's receipt of funds under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act")." *Id.* 7. Judge Illman found that because the CARES Act was passed relatively recently, the scope was not overbroad. *Id.* PPN objects that "[t]he Order ignores the fact that the category seeks reports between two sovereign nations without regard to the subject of those reports. In other words, the category does not seek those aspects of the reports that might list assets, as opposed to any number of other topics that could be included within those reports to the government." Relief Mot. 6. I take seriously the need to protect PPN's sovereignty, even as it is

1    collected against.  If PPN had argued that something in the documents was protected by a

2    privilege or that agreements it signed with the United States required the communications stay

3    confidential, that would be another matter.  But PPN offers no such objection, and it has had its

4    chance to do so twice now.  If PPN concludes that other discovery going forward is shielded by

5    privileges (again, it cannot now assert it for these documents), then it must be prepared to defend

6    that issue—including with *in camera* production if appropriate.  Regardless, the mere assertion

7    that documents relate to communications between sovereigns is not sufficient on its own.  When

8    PPN waived sovereign immunity in the Note, it opened itself to this type of discovery.

9    At the hearing, PPN's counsel asked for an extension on this discovery.  As I told its

10    counsel, Judge Illman is supervising this discovery and such a request must be made to him.

### PRELIMINARY INJUNCTION

12    This preliminary injunction applies to the following individuals and entities: the Pinoleville

13    Pomo Nation; the Pinoleville Pomo Nation Tribal Court; any officers, agents, servants, employees,

14    and attorneys of those entities; and any other persons or entities in active concert or participation

15    with any of the foregoing individuals or entities.

16    This preliminary injunction is effective immediately upon this Order's issuance.  It will

17    remain in place until I address the dispute over whether it should be made permanent.

18    The individuals and entities identified are **PRELIMINARILY ENJOINED,** in the civil

19    case filed against JW Gaming and others in the Tribal Court (captioned *Pinoleville Pomo Nation*

20    *v. JW Gaming Development, LLC et al.*, Case No, PPNTC-CIV-21-0001), from taking or

21    attempting to take any action in furtherance of the following: (1) invalidating or purporting to

22    invalidate the judgment or orders entered in this suit; (2), interfering with enforcement of that

23    judgment; (3) limiting, controlling, or purporting to limit or control the scope or conduct of the

24    enforcement of that judgment; (4) enjoining or restraining any person or entity from attempting to

25    enforce or enforcing the judgment; (5) enjoining or restraining any person or entity from

26    attempting to comply or complying with court orders or subpoenas issued to enforce the judgment;

27    and (6) punishing any person or entity for enforcing or complying with the judgment and orders

28    enforcing it.

1    "Actions in furtherance of" the foregoing include (but are not limited to) noticing or

2 holding hearings, serving documents, discovery, entering default, holding a party in contempt,

3 imposing liability, issuing orders, and enforcing or attempting to enforce existing orders.

4    Although the injunction applies regardless of how the claims or requests for relief are

5 structured or pleaded in the Tribal Court Action, as that case is currently structured, the injunction

6 prohibits litigation of Counts One, Two, Three, Four, and Six, and entering any relief premised on

7 them.

8    This preliminary injunction does not apply to litigation of the claim for fraud (Count Five)

9 against JW Gaming.

10    The parties are **ORDERED** to serve the Tribal Court and WestAmerica Bank with this

11 Order and file a copy of it on the docket of the Tribal Court proceeding without delay.

12    PPN is **ORDERED TO SHOW CAUSE** why the preliminary injunction should not be

13 converted into a permanent injunction according to the terms specified in this Order.

14    **IT IS SO ORDERED.**

15 Dated: June 21, 2021

16

17    _____
      William H. Orrick
18    United States District Judge

19

20

21

22

23

24

25

26

27

28