EDUARDO G. ROY (State Bar No. 146316)
PROMETHEUS PARTNERS L.L.P.
555 Montgomery Street, Suite 708
San Francisco, CA 94111
Tel.: 415.527.0255
Eduardo.roy@prometheus-law.com

Attorneys for Pinoleville Pomo Nation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLAINTIFF GAMING DEVELOPMENT, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY,<br><br>          Plaintiff,<br>   v.<br><br>ANGELA JAMES; LEONA L. WILLIAMS; MICHAEL R. CANALES; MELISSA M. CANALES; JOHN TANG; PINOLEVILLE POMO NATION, A FEDERALLY-RECOGNIZED INDIAN TRIBE; PINOLEVILLE GAMING AUTHORITY; PINOLEVILLE GAMING COMMISSION; PINOLEVILLE BUSINESS BOARD;PINOLEVILLE ECONOMIC DEVELOPMENT, LLC; A CALIFORNIA LIMITED LIABILITY COMPANY; LENORA STEELE; KATHY STALLWORTH; MICHELLE CAMPBELL; JULIAN J. MALDONADO; DONALD WILLIAMS; VERONICA TIMBERLAKE; CASSANDRA STEELE; JASON EDWARD RUNNING BEAR STEELE; ANDREW STEVENSON; CANALES GROUP, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; LORI J. CANALES; KELLY L. CANALES; AND DOES 1 THROUGH 20,<br><br>          Defendants. | CASE NO. 3:18-cv-02669-WHO (RMI)<br><br>**DEFENDANT AND JUDGMENT DEBTOR PINOLEVILLE POMO NATION'S OPENING EVIDENTIARY HEARING BRIEF RE CLAIMS OF EXEMPTION**<br><br><br>Date: July 1, 2021<br>Time: 11:00am<br>Magistrate Judge Robert M. Illman |

///

///

///

## I. INTRODUCTION

Defendant and Judgment Debtor Pinoleville Pomo Nation ("Tribe") hereby submits this Opening Brief ("Brief") in support of its claims of exemption set for an evidentiary hearing on July 1 at 11:00a.m. under California Code of Civil Procedure ("CCP") section 703.580. For the reasons to follow, Tribe respectfully submits that the Court should order the bulk of the funds in the subject six accounts at WestAmerica Bank immediately released. Quite simply, these monies are not Tribe's—they are being held in trust and belong to the federal government until distributed by Tribe in accordance with the terms of the various garnts. The rest of the funds should be released due to Plaintiff's failure to comply with governing state law in failing to file a proper notice of motion challenging Tribe's exemption claims and for additional reasons to follow.

## II. FACTUAL/PROCEDURAL BACKGROUND

On January 22, 2021, the Court entered a final Judgment [Dkt. No. 279] in favor of Plaintiff as to the first cause of action for breach of contract only, and that dismissed all of Plaintiff's remaining claims, including the second cause of action for fraud and the third through sixth causes of action for RICO violations against all parties pursuant to Plaintiff's request.

On March 12, 2021, Tribe received a Notice of Levy dated March 11, 2021 that levied six of its bank accounts at WestAmerica Bank. Those six accounts contain monies deposited by the Tribe solely from federal grants which are being held in trust by the Tribe for the benefit of others who have interests in these federal grant and public assistance monies.

On March 17, 2021, Tribe timely served the U.S. Marshals Service with the statutory form Claim of Exemption ("1st COE") under California law. *See* Claim of Exemption [Dkt. No. 308-2]. This Exemption Claim meets all of the California statutory requirements. *Ibid*.

On April 1, 2021, JW filed a Notice of Hearing [Dkt. No. 308] for April 28, 2021 and the Claim Opposition [Dkt. No. 308-1]. The 1st COE form and the Notice of Opposition thereto constitute the pleadings regarding this claim that must be received in evidence. CCP section 703.580.

On May 4, 2021, the Court issued an Order regarding the following:

1. It appointed the Magistrate Judge Illman to preside over discovery and collection proceedings in this case;
2. It specifically recognized Tribe's right to an evidentiary hearing;
3. It acknowledged the law respecting grants and trust arrangements along with the potential impact Tribe's evidence could have on Plaintiff's ability to collect is Judgment from monies in Tribal accounts; and

4. It acknowledged that further development of the evidentiary record was warranted regarding the grants summarized in the Order.

Order [Dkt. No. 332] at 1, 5-8.

On May 6, 2021, Tribe received a Notice of Levy that levied one of its bank accounts at the Bank. Tribe timely served the U.S. Marshals Service with the statutory form Claim of Exemption ("2d COE") under California law. 2d COE [Dkt. No. 350-2]. This 2d COE meets all of the California statutory requirements. *Ibid*.

On June 2, 2021, Magiatrate Judge Illman set the evidentiary hearing for the 1st COE on July 1, 2021 at 11:00 a.m. Order [Dkt. No. 348] at 1.

On June 3, 2021, Plaintiff filed a Notice of Hearing [Dkt. No. 350] for July 1, 2021 and the Notive of Opposition [Dkt. No. 350-1] to the 2d COE. The 2d COE and Notice of Opposition constitute the pleadings regarding this claim that must be received in evidence. CCP section 703.580.

## III. LEGAL ARGUMENT

The Court has already determined that California state law applies to Plaintiff''s enforcement proceedings except where expressly governed by federal law. Order on Motions to Reconsider and Recall or Quash Writ of Execution [Dkt. No. 306] at 6. Tribe knows of no federal law regarding the leving of bank accounts that are the subject of its 2d COE. California law therefore applies. *See* Fed. R. Civ. P. 69(a)(1).

California statutory law, found in the Code of Civil Procedure ("CCP"), on levies and claims of exemption includes the following relevant provisions—section 703.510 (exempt property that has been levied upon may be claimed to be exempt), section 703.520 (the claimant may make a claim of exemption by following the specific procedures and providing specific information), section 703.540 (procedures to be followed by levying officer regarding notice of the claim and release levies if not followed), section 703.550 (procedures for judgment creditor to challenge the claim of exemption and release of the levies if not followed), section 703.560 (further requirements for judgment creditor to challenge the claim of exemption), section 703.570 (further procedures to be followed by the judgment creditor before the hearing on the claim of exemption), and section 703.580 (the procedures to be followed by the courts regarding the evidentiary hearing on the claim of exemption).

///

### A. Tribe's Exemption Claim is Sufficient Under California Law.

As noted above, CCP section 703.520 provides the procedural mechanism for serving a claim of exemption as to levied assets. Subpart (a) thereof contains the timing of the claim, and no assertion of

untimeliness has been made by Plaintiff. Subpart (b) of section 703.520 contains six requirements. Notably, Plaintiff does not assert that any of them have not been satisfied by Tribe. This is because the California Judicial Council form utilized by Tribe was fully and properly filled out by Tribe's counsel to satisfy these six requirements.

Moreover, the Claim form, which follows section 703.520, merely requires the applicable statutes to be cited along with the factual basis for the claim, which Tribe's form includes. Plaintiff does not assert otherwise. Tribe's 1st COE and 2d COE are therefore legally sufficient.

### B. Tribe Will Show That Plaintiff Improperly Levied Upon Federal Grant Monies That are Assets of the Federal Government That may not be Used to Collect a Judgment Against the Recipient of those Funds.

In addition to that which the Court has already acknowledged regarding federal grant monies, trusts, etc., as noted above, there is a well-established body of federal law that prohibits Plaintiff from executing its Judgment against federal grant funds held by the recipient for grant purposes. This law will follow.

It has been long recognized that the federal government retains a "property interest" in grant funds until they are actually spent by the grantee for *authorized purposes*; this property interest may take the form of an "equitable lien," stemming from the government's right to ensure that the funds are used only for authorized purposes, or a "reversionary interest" (funds that can no longer be used for grant purposes revert to the federal government). *See In re Alpha Center, Inc.,* 165 B.R. 881, 884–85 (Bankr. S.D. Ill. 1994). By virtue of this retained property interest, grant funds are not subject to judicial process without the government's consent. *Palmiter v. Action, Inc.*, 733 F.2d 1244 (7th Cir. 1984), *In re Joliet-Will County Community Action Agency*, 847 F.2d 430 (7th Cir. 1988); *Henry v. First National Bank of Clarksdale*, 595 F.2d 291, 308–09 (5th Cir. 1979), cert. denied, 444 U.S. 1074 (1980); *In re Southwest Citizens' Org. for Poverty Elimination*, 91 B.R. 278, 287 (Bankr. D.N.J. 1988); *In re Madison County Economic Opportunity Comm'n*, 53 B.R. 541, 544 (Bankr. S.D.Ill. 1985).

Likewise, in *Department of Housing and Urban Development v. K. Capolino Construction Corp.,* No. 01 Civ. 390 (JGK) (S.D.N.Y., May 7, 2001), the court held:

> HUD has also demonstrated a likelihood of success on the merits. HUD argues that it is entitled to an injunction enjoining the disbursement and collection of Federal Funds because Federal Funds may not be used to satisfy the Capolino judgment. The Supreme Court held in Buchanan v. Alexander, 45 U.S. (4 How.) 20-21, (1846), that federal funds in the hands of a grantee remain the property of the federal government unless and until expended in accordance with the terms of the grant and are not subject to attachment or garnishment. That decision, despite its age, remains the law today. See In re Joliet-Will County Community

Action Agency, 847 F.2d 430, 432 (7th Cir. 1988); City of New York v. Sullivan, No. 91 Civ. 2959, 1993 WL 8184, at *11 (S.D.N.Y. Jan. 4, 1993); Sobol v. Haitian Academy, No. 88 Civ. 1372, 1990 WL 37901, at *1 (N.D.N.Y. March 23, 1990). Unless the federal government consents, sovereign immunity prevents federal funds from being subject to attachment or garnishment proceedings. See e.g., Neukirchen v. Wood County Head Start Inc., 53 F.3d 809, 812-14 (7th Cir. 1995). The United States has an interest in federal funds disbursed to a non-governmental entity for a federal purpose and such interest is not subject to state judicial process without the consent of the United States. See Palmiter v. Action Inc., 733 F.2d 1244, 1247-48 (7th Cir. 1984); Henry v. First Nat'l Bank of Clarksdale, 595 F.2d 291, 308-09 (5th Cir. 1979). In determining whether the United States has an interest in particular funds, that have been disbursed to a grantee, courts have considered whether the funds were dispensed according to conditions, whether the United States retains a reversionary interest in the funds, and whether the United States employs accountability procedures to ensure that the grants are being spent as directed. See. e.g., Henry, 595 F.2d at 308-09.

*U.S. Dept. of Housing v. K. Capolino Const.* at *1 (S.D.N.Y. May 7, 2001)

This concept is illustrated in the two cases cited above from the U.S. Court of Appeals for the Seventh Circuit. In *Palmiter v. Action, Inc.*, the court rejected the argument that grant funds lose their federal character when placed in the grantee's bank account, and held that federal grant funds in the hands of a grantee are not subject to garnishment to satisfy a debt of the grantee. *Id*. at 1249. The court considered a similar issue in the context of a bankruptcy petition filed by a grantee under Chapter 7 of the Bankruptcy Code. In re *Joliet-Will County Community Action Agency*, 847 F.2d 430 (7th Cir. 1988). The issue there was whether grant funds in the hands of the grantee, as well as personal property purchased with grant money, were assets of the bankrupt and therefore subject to the control of the trustee in bankruptcy. Directing the trustee to abandon the assets, the court held that they remained the property of the federal government. *Id*. at 433–35.

A case discussing both *Palmiter* and *Joliet-Will* extensively as well as *Henry* and *Buchanan*, and reaching a similar result is *In re Southwest Citizens' Organization for Poverty Elimination*, 91 B.R. 278 (Bankr. D.N.J. 1988). A grantee, which had purchased a number of motor vehicles with Head Start grant funds, filed a Chapter 11 bankruptcy petition. The Department of Health and Human Services sought return of the property, contending that the bankrupt's title was subject to the government's right to require transfer to another grantee under the program legislation and regulations. The trustee argued that the motor vehicles were property of the bankruptcy estate, and that the trustee's interest superseded any interest of the government. After a detailed review of precedent, the court directed the trustee to return the vehicles to the federal grantor, concluding that the government's rights amounted to a reversionary interest. *Id.* at 287.

Another applicable theory used by the courts to protect grant funds is that a grantee holds grant funds, and property purchased with those funds, in the capacity of a trustee. For example, in *Joliet-Will*, 847 F.2d at 432, the court held that the grantee was essentially "a trustee, custodian, or other intermediary, who . . . is merely an agent for the disbursal of funds belonging to another," and that the grantee's "ownership" was nominal, like that of a trustee. The trust concept finds support in an early Supreme Court decision, *Stearns v. Minnesota*, 179 U.S. 223, 249 (1900), a land grant case in which the Court discussed the grant in trust terms.

The terms of the grant agreements between the United States and the Tribe, as well as the requirements of 2 CFR Part 200, impose sufficient restrictions on the Tribe's use of the grant funds such that the Tribe is, "by analogy, in the role of a trustee of the funds, lacking the freedom to dispose of the funds beyond the requirements set forth in the agreements and the regulations." *In re 28th Legislative Dist. Cmty. Dev. Corp.*, No. 10-14804, 2011 WL 5509140, at *4 (Bankr. E.D. Tenn. Nov. 10, 2011) (citing *In re: West Central Housing Development Organization*, 338 B.R. 482, 488 (Bankr.D.Colo.2005) (holding that the judgment debtor holds federal grant funds in trust and is bound by federal regulations to act in the role of a trustee of the federal grant funds, and holds no beneficial interest in the funds)).

Where this is true, at least in the bankruptcy context, the federal grant funds are not considered property of the debtor and cannot be turned over to any creditor. The application here is clear. *In West Central Housing*, the fight was over ownership of about $1.9 million of "Revolving Loan Assets." 338 B.R. at 485. The debtor, a non-profit company providing loans for low-income housing projects and residential rehabilitation, held the Revolving Loan Assets. But, the State of Colorado claimed the Revolving Loan Assets because they were "derived from block grant monies given to the State by the federal government for the purpose of supporting housing rehabilitation and home ownership." *Id*. The State argued that the Revolving Loan Assets were held in trust by the debtor and never became property of the debtor's bankruptcy estate. The Bankruptcy Court agreed and ruled that "an express trust has been created by contract provisions and federal regulations with respect to the bulk of the Revolving Loan Assets. Those funds are very clearly excluded from the bankruptcy estate." *Id*. at 490.

Another area in which grant funds in the hands of a grantee continue to be treated as federal funds is the application of federal criminal statutes dealing with theft of money or property belonging to the federal government. There are numerous cases in which the courts have applied various provisions of the Criminal Code, such as 18 U.S.C. § 641, to the theft or embezzlement of grant funds or grant property in the hands of grantees. Examples involving a variety of grant programs are *Hayle v. United States*, 815 F.2d 879 (2nd Cir. 1987) (violation of 18 U.S.C. § 641); *United States v. Harris*, 729 F.2d

441 (7th Cir. 1984) (violation of 18 U.S.C. § 657); *United States v. Hamilton*, 726 F.2d 317 (7th Cir. 1984) (violation of 18 U.S.C. § 665(a)); *United States v. Montoya*, 716 F.2d 1340 (10th Cir. 1983) (violation of 18 U.S.C. § 287); *United States v. Smith,* 596 F.2d 662 (5th Cir. 1979) (violation of 18 U.S.C. § 641); *United States v. Rowen*, 594 F.2d 98 (5th Cir.), cert. denied, 444 U.S. 834 (1979) (violation of 18 U.S.C. § 641). In each of these cases, the court rejected the argument that the statute did not apply because the funds or property were no longer federal funds or property. It makes no difference whether the funds are paid to the grantee in advance or by reimbursement (*Montoya*, 716 F.2d at 1344), or that the funds may have been commingled with nonfederal funds (*Hayl*e, 815 F.2d at 882). The holdings are based on the continuing responsibility of the federal government to oversee the use of the funds. *Ibid.* at 882; *Hamilton*, 726 F.2d at 321.

      Lastly, the presence of federal grant funds had an important impact on an age discrimination case brought against a federally-funded private organization. The plaintiff in *Neukirchen v. Wood County Head Start, Inc.*, 53 F.3d 809 (7th Cir. 1995), had obtained a money judgment for age discrimination against a local Head Start organization. She attempted to collect the judgment by executing against personal property the organization owned, including items of property purchased with grants funds that had a unit acquisition cost of less than $1,000. The then applicable regulations provided that once such property was no longer needed for grant purposes, it could be retained or disposed of by the grantee with no further obligation to the federal government. The plaintiff argued that the federal government retained no interest in property subject to this provision. The argument proved unavailing. Citing *Joliet-Will, supra*, the court stated: "It is clear in this circuit that property purchased with federal grant funds constitutes federal property. . . . It is also axiomatic that the doctrine of sovereign immunity prevents a judgment creditor from attaching federal property, absent consent by the United States." *Neukirchen,* 53 F.3d at 811–12. Thus, even though the grantee had violated federal law in discriminating against the plaintiff, the majority of the grantee's assets were immune from execution since they had been purchased with federal funds. *Id*. at 814.

      The evidence that Tribe will present during the hearing will prove that the bulk of the monies in its six accounts at WestAmerica Bank are directly from federal grants that were awaiting disbursement according to the terms of the grants, thereby satisfying its burden of proof. Conversely, Plaintiff, who has not joined the federal government in this proceeding, will be unable to prove the federal government's consent that its grant funds be used to pay an unrelated judgment for casino development. Nor will Plaintiff be able to prove that the grants finds are Tribe's property. Tribe's claims of exemption must therefore be allowed and the levies released.

### C. The Federal Regulatory Scheme Aapplicable to the Tribe's Grant Funds are in Accord With Federal Law.

The regulations governing the Tribe's use and management of federal grant funds are contained in 2 C.F.R Part 200. Specific sections of Part 200 restrict the use of these funds from satisfying the civil judgment in this case. And the regulations, read as a whole, prohibit any and all such unauthorized use.

Specifically prohibiting the use of federal funds to satisfy the civil damages award and related costs here, Sections 435 and 441 state as follows:

> §200.441 Fines, penalties, damages and other settlements.
> Costs resulting from non-Federal entity violations of, alleged violations of, or failure to comply with, Federal, state, tribal, local or foreign laws and regulations are unallowable, except when incurred as a result of compliance with specific provisions of the Federal award, or with prior written approval of the Federal awarding agency.

> §200435(b) Costs. (1) Except as otherwise described herein, costs incurred in connection with any criminal, civil or administrative proceeding (including filing of a false certification) commenced by the Federal Government, a state, local government, or foreign government, or joined by the Federal Government (including a proceeding under the False Claims Act), against the non-Federal entity, (or commenced by third parties or a current or former employee of the non-Federal entity who submits a whistleblower complaint of reprisal in accordance with 10 U.S.C. 2409 or 41 U.S.C. 4712), are not allowable if the proceeding:
> …(ii) Results in any of the following dispositions:
> …(B) In a civil or administrative proceeding involving an allegation of fraud or similar misconduct, a determination of non-Federal entity liability.

In addition, Part 200, read as a whole, prohibits such unauthorized use. The following regulatory controls dictate use and provide for penalties for unauthorized use:

> §200.208 Specific conditions.
>
> (a) Federal awarding agencies are responsible for ensuring that specific Federal award conditions are consistent with the program design reflected in §200.202 and include clear performance expectations of recipients as required in §200.301.
> (b) The Federal awarding agency or pass-through entity may adjust specific Federal award conditions as needed, in accordance with this section, based on an analysis of the following factors:
> (1) Based on the criteria set forth in §200.206;
> (2) The applicant or recipient's history of compliance with the general or specific terms and conditions of a Federal award;
> (3) The applicant or recipient's ability to meet expected performance goals as described in §200.211; or
> (4) A responsibility determination of an applicant or recipient.
> (c) Additional Federal award conditions may include items such as the following:
> (1) Requiring payments as reimbursements rather than advance payments;
> (2) Withholding authority to proceed to the next phase until receipt of

evidence of acceptable performance within a given performance period;
(3) Requiring additional, more detailed financial reports;
(4) Requiring additional project monitoring;
(5) Requiring the non-Federal entity to obtain technical or management assistance; or
(6) Establishing additional prior approvals.

§200.209 Certifications and representations.

Unless prohibited by the U.S. Constitution, Federal statutes or regulations, each Federal awarding agency or pass-through entity is authorized to require the non-Federal entity to submit certifications and representations required by Federal statutes, or regulations on an annual basis. Submission may be required more frequently if the non-Federal entity fails to meet a requirement of a Federal award.

§200.302 Financial management.
(a) Each state must expend and account for the Federal award in accordance with state laws and procedures for expending and accounting for the state's own funds. In addition, the state and the other non-Federal entity financial management systems, including records documenting compliance with Federal statutes, regulations, and the terms and conditions of the Federal award, must be sufficient to permit the preparation of reports required by general and program-specific terms and conditions; and the tracing of funds to a level of expenditures adequate to establish that such funds have been used according to the Federal statutes, regulations, and the terms and conditions of the Federal award. See also §200.450.
(b) The financial management system of each non-Federal entity must provide for the following (see also §§200.334, 200.335, 200.336, and 200.337):
(1) Identification, in its accounts, of all Federal awards received and expended and the Federal programs under which they were received. Federal program and Federal award identification must include, as applicable, the Assistance Listings title and number, Federal award identification number and year, name of the Federal agency, and name of the pass-through entity, if any.
(2) Accurate, current, and complete disclosure of the financial results of each Federal award or program in accordance with the reporting requirements set forth in §§200.328 and 200.329. If a Federal awarding agency requires reporting on an accrual basis from a recipient that maintains its records on other than an accrual basis, the recipient must not be required to establish an accrual accounting system. This recipient may develop accrual data for its reports on the basis of an analysis of the documentation on hand. Similarly, a pass-through entity must not require a subrecipient to establish an accrual accounting system and must allow the subrecipient to develop accrual data for its reports on the basis of an analysis of the documentation on hand.
(3) Records that identify adequately the source and application of funds for federally-funded activities. These records must contain information pertaining to Federal awards, authorizations, financial obligations, unobligated balances, assets, expenditures, income and interest and be supported by source documentation.
(4) Effective control over, and accountability for, all funds, property, and other assets. The non-Federal entity must adequately safeguard all assets and assure that

they are used solely for authorized purposes. See §200.303.
    (5) Comparison of expenditures with budget amounts for each Federal award.
    (6) Written procedures to implement the requirements of §200.305.
    (7) Written procedures for determining the allowability of costs in accordance
with subpart E of this part and the terms and conditions of the Federal award.

The foregoing regulations expressly and implicitly support the Court's finding that Plaintiff's Judgment may not be collected from federal grant monies. Tribe's grant monies should therefore be released from the levies.

### D. Tribe Will Further Demonstrate That the Levied Bank Accounts are Exempt From Levy Under California Law.

It of course axiomatic that only assets of the judgment debtor may be levied upon by the judgment creditor. Indeed, "…Code of Civil Procedure section 695.040 provides that "[p]roperty that is not subject to enforcement of a money judgment may not be levied upon or in any other manner applied to the satisfaction of a money judgment."" *Krolikowski v. San Diego City Employees' Ret. Sys.*, 24 Cal.App.5th 537, 563 (2018) (quoting CCP section 695.040, which is cited by Tribe in its 1st and 2d COEs). However, Plaintiff has improperly caused bank accounts to be levied upon that contain federal grant monies that are not for the Tribe's personal use, but are held in trust for federal program recipients and beneficiaries.

Furthermore, CCP section 695.030 provides: "(a) Except as otherwise provided by statute, property of the judgment debtor that is not assignable or transferable is not subject to enforcement of a money judgment. California Welfare & Institutions Code section 11002 provides very simply that "[a]ll aid given under a public assistance program shall be absolutely inalienable by any assignment, sale, or otherwise." Federal law naturally makes grant monies subject to being used only for their intended purposes as well. *See, e.g.,* Part 2 of the Code of Federal Regulations, §§200.201, 200.302, 200.441.

Thus, the grant monies in the subject account are inalienable, non-transferable public assistance monies that are not subject to enforcement of judgment or levy proceedings. These monies must therefore be released.

### D. Plaintiff Failed to Timely File a Notice of Motion Seeking a Court Determination of Both Claims of Exemption Which Requires the Levied Funds to be Released.

CCP section 703.550 provides:

> (a) Within 15 days after service of the notice of claim of exemption, a judgment creditor who opposes the claim of exemption shall file with the court a notice of opposition to the claim of exemption **and a notice of motion for an order determining the claim of**

**exemption** and shall file with the levying officer a copy of the notice of opposition **and a copy of the notice of motion**. Upon the filing of the copies of the notice of opposition **and notice of motion**, the levying officer shall promptly file the claim of exemption with the court. If copies of the notice of opposition **and notice of motion are not filed with the levying officer within the time allowed, the levying officer shall immediately release the property to the extent it is claimed to be exempt**.

(Emphasis added.)

In this case, Plaintiff filed Notice of Hearing [Dkt. Nos. 308, 350] and Notices of Opposition to Claim of Exemption [Dkt. Nos. 308-1, 350-1] with the Court. However, Plaintiff did not file the required "notice of motion for an order determining the claim of exemption" under section 703.550. Plaintiff's Notices of Hearing are not notices of motion nor do they seek an order determining the claims of exemption. A motion seeking a specific court order and determination is not a hearing, and notice of a hearing is not the same thing as a notice of a motion. The required notices of motion were therefore not timely filed with the Court requiring an order directing the levying officers to release the levied funds. And given that the statutes must be favorably construed for the Tribe, as noted above, Plaintiff has failed to meet these statutory requirements

## IV.  CONCLUSION

Based on the foregoing, the Court is respectfully requested immediately release the funds held in the six subject accounts for the reasons stated herein, and as further demonstrated by Tribe prior to and during the evidentiary hearing. These funds need to be immediately released so they may be immediately distributed to the intended recipients/beneficiaries of these public assistance monies that are in desperate need for them.

Respectfully Submitted,

Dated: June 30, 2021                                        PROMETHEUS PARTNERS L.L.P.


By: ___/s/__Eduardo G. Roy_____

Eduardo G. Roy, Attorneys for Pinoleville Pomo Nation